SULLIVAN & WORCESTER LLP
Michael T. Sullivan (MS 3158)
Karin Klapper Orenstein (KO 1274)
1290 Avenue of the Americas, 29th Floor
New York, New York 10104
(212) 660-3000

*Attorneys for Defendant*
*T.C. Ziraat Bankasi A.S.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
Theresa Guirlando,                          :
                                            :        07 Civ. 10266 (RJS)
                    Plaintiff,              :
                                            :
            - against -                     :
                                            :
T.C. Ziraat Bankasi A.Ş.                    :
                                            :
                    Defendant.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................1

FACTS .........................................................................................................................2

ARGUMENT ..............................................................................................................3

I.    The Complaint Should be Dismissed on the Grounds of Forum Non Conveniens ...............3

        A.    Plaintiff's choice of forum should receive diminished deference .................................4

        B.    Turkey's courts constitute an acceptable alternative forum .........................................7

                1.    Turkey is an available forum ........................................................................7

                2.    Turkey is an adequate forum.........................................................................8

        C.    The private and public interest factors weigh in favor of trial in Turkey ...................10

                1.    Private Interest Factors ...............................................................................11

                2.    Public Interest Factors................................................................................14

II.    The Complaint Should be Dismissed Pursuant to the Foreign Sovereign Immunities Act ..19

III.    The Complaint Should be Dismissed for Failure to State a Claim under Rule 12(b)(6) ......21

        A.    Plaintiff fails to state a claim under New York law....................................................21

        B.    Plaintiff fails to state a claim under Turkish law .......................................................24

CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

## Federal Cases

Aguinda v. Texaco, Inc., 303 F.3d 470 (2d Cir. 2002).............................................................4, 7

Allianz Versicherungs-Aktiengesellschaft Munich Reinsurance Co. v. S. S. Eskisehir,
  353 F. Supp. 84 (S.D.N.Y. 1972) ...........................................................................9

Almog v. Arab Bank, PLC, 471 F. Supp. 2d 257 (E.D.N.Y. 2007) ...............................................19

Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank,
  57 F.3d 146 (2d Cir. 1995).....................................................................................22

Base Metal Trading SA v. Russian Aluminum, 253 F. Supp. 2d 681 (S.D.N.Y. 2003).................8

BFI Group Divino Corp. v. JSC Russian Aluminum,
  481 F. Supp. 2d 274 (S.D.N.Y. 2007).................................................................6, 15

BlackRock, Inc. v. Schroders PLC, 2007 WL 1573933 (S.D.N.Y. May 30, 2007) ..... 15-16, 17-18

Bohn v. Bartels, 2007 WL 4334667 (S.D.N.Y. Dec. 12, 2007) ....................................................15

Carey v. Bayerische Hypo-Und Vereinsbank AG, 370 F.3d 234 (2d Cir. 2004) ............... 6-7, n.13

Conte v. Flota Mercante Del Estado, 277 F.2d 664 (2d Cir. 1960)................................................17

Corporacion Tim, S.A. v. Schumacher, 418 F. Supp. 2d 529 (S.D.N.Y. 2006)........................6, 8

Crosstown Songs U.K. Ltd. v. Spirit Music Group, Inc.,
  513 F. Supp. 2d 13 (S.D.N.Y. 2007)........................................................................n.7

Elliott v. British Tourist Auth., 986 F. Supp. 189 (S.D.N.Y. 1997) .............................................20

Erickson v. Pardus, 127 S. Ct. 2197 (2007)........................................................................21, n.1

Fagan v. Deutsche Bundesbank, 438 F. Supp. 2d 376 (S.D.N.Y. 2006) ................................. 20-21

Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro, 961 F.2d 1052 (2d Cir. 1992)....... 22-23

First Union Nat'l Bank v. Paribas, 135 F. Supp. 2d 443 (S.D.N.Y. 2001)................................4, 18

Garb v. Republic of Poland, 440 F.3d 579 (2d Cir. 2006)............................................................20

Geler v. Nat'l Westminster Bank USA, 770 F. Supp. 210 (S.D.N.Y. 1991)................................24

Gilstrap v. Radianz Ltd., 443 F. Supp. 2d 474 (S.D.N.Y. 2006) ...........................................5, 8, 19

Great N. Ins. Co. v. Constab Polymer-Chemie GmbH & Co.,
    2007 WL 2891981 (N.D.N.Y. 2007) ...........................................................................................18

Gross v. BBC, 386 F.3d 224 (2d Cir. 2004) ......................................................................................n.7

Guidi v. Intercontinental Hotels, 224 F.3d 142 (2d Cir. 2000).................................... 5, 14-15, n.3

Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947) ....................................................... 10, 15-16, 19

Henderson v. Metropolitan Bank & Trust Co., 470 F. Supp. 2d 294 (S.D.N.Y. 2006),
    reconsidered and rev'd on other grounds, 502 F. Supp. 2d 372 (S.D.N.Y. 2007)....................6

Human Rights in China v. Bank of China,
    2003 WL 22170648 (S.D.N.Y. Sept. 18, 2003)...................................................................20

In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of
    Ukraine, 311 F.3d 488 (2d Cir. 2002)................................................................................3, n.7

In re Sharp Int'l Corp., 403 F.3d 43 (2d Cir. 2005)......................................................................22

Indus. Mar. Carriers (Bahamas), Inc. v. Barwil Agencies A.S.,
    2004 WL 1950322 (E.D. La. 2004) .........................................................................................9

Iragorri v. United Techs. Corp., 274 F.3d 65 (2d Cir. 2001).............................4-5, 18-19, n.3, n.7

Jones v. Commerce Bancorp, Inc., 2006 WL 1409492 (S.D.N.Y. May 23, 2006) ......................23

LaSala v. Bank of Cyprus Pub. Co. Ltd., 510 F. Supp. 2d 246 (S.D.N.Y. 2007)...................24, n.4

LaSala v. TSB Bank, PLC, ---, F. Supp. 2d ----,
    2007 WL 2758759 (S.D.N.Y Aug. 15, 2007).......................................................................n.4

LaSala v. UBS, AG, 510 F. Supp. 2d 213 (S.D.N.Y. 2007)..............................6, 13-14, 16-19, n.4

Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345 (1st Cir. 1992).................................................9, 17

Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco, PLC,
    2003 WL 21180421 (S.D.N.Y. May 20, 2003) ....................................................................16

New York Marine & Gen. Ins. Co. v. Tradeline, 266 F.3d 112
    (2d Cir. 2001).......................................................................................................................24

Norex Petroleum Ltd. v. Access Indus., 416 F.3d 146 (2d Cir. 2005) ................................. *passim*

Nwachukwu v. Chem. Bank, 1997 WL 441941 (S.D.N.Y. Aug. 6, 1997)..............................22, 24

Piper Aircraft v. Reyno, 454 U.S. 235 (1981) ........................................................8, 10

Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64 (2d Cir. 2003) ........................ *passim*

PT United Can Co. v. Crown, Cork & Seal Co., 138 F.3d 65 (2d Cir. 1988) .................................3

Rahl v. Bande, 328 B.R. 387 (S.D.N.Y. 2005)..............................................................16

Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 112 S. Ct. 2160 (1992)..........................20

Romano v. SLS Residential Inc., 246 F.R.D. 432, 2007 WL 3145076
    (S.D.N.Y. Oct. 10, 2007) ............................................................................24

Rothman v. Gregor, 220 F.3d 81 (2d Cir. 2000)..........................................................21

Saud v. PIA Investments Ltd., 2007 WL 4457441 (S.D.N.Y. Dec. 14, 2007) ...........................n.7

Saudi Arabia v. Nelson, 507 U.S. 349, 113 S. Ct. 1471 (1993) ..........................................20

Tevdorachvili v. Chase Manhattan Bank, 103 F. Supp. 2d 632 (E.D.N.Y. 2000)...................21-24

Travelers Indem. Co. v. S/S Alca, 713 F. Supp. 129 (S.D.N.Y. 1989) ....................................8

Turedi v. Coca Cola Co., 460 F. Supp. 2d 507 (S.D.N.Y. 2006) .......................................... *passim*

Twombly v. Bell Atlantic, 127 S. Ct. 1955 (2007)........................................................25

Varnelo v. Eastwind Transp., Ltd., 2003 WL 230741 (S.D.N.Y. 2003) ...................................15

Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88 (2d Cir. 2000)....................................3-5, 7

## State Cases

Bank Leumi Trust Co. of New York v. Block 3102 Corp., 180 A.D.2d 588,
    580 N.Y.S.2d 299 (1st Dep't 1992) .................................................................22

Bauer v. Mellon Mortgage. Co.,
    178 Misc. 2d 234, 680 N.Y.S.2d 397 (N.Y. Sup. New York County 1998) ...........................23

Bouquet Brands Div. of J & D Food Sales, Inc. v. Citibank, N.A.,
    97 A.D.2d 936, 470 N.Y.S.2d 733 (3d Dep't 1983)................................................22

Howell v. New York Post Co., Inc., 81 N.Y.2d 115 (1993)............................................24

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chem. Bank, 57 N.Y.2d 439 (1982)..................21

New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308 (1995)............................................24

Yanoscik v. North Fork Bank, Misc. 3d 1111, 2005 WL 2290580
(N.Y. Sup. Ct. Queens County Jul. 5, 2005)...........................................................22

## Federal Statutes

28 U.S.C. § 1330............................................................................................19

28 U.S.C. § 1332(c).........................................................................................20

28 U.S.C. §§ 1602-11 ......................................................................................19

28 U.S.C. § 1603(b).........................................................................................20

28 U.S.C. § 1604............................................................................................20

28 U.S.C. § 1605(a)(2)......................................................................................20

## Federal Rules

Fed. R. Civ. P. 12(b)(1).................................................................................1, 19

Fed. R. Civ. P. 12(b)(2).................................................................................1, 21

Fed. R. Civ. P. 12(b)(6)........................................................................... 1, 19, 21, 23-24

## Other Authorities

Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters,
1972 WL 122493, T.I.A.S. No. 7444, 23 U.S.T. 2555...............................................12

Wright, Miller & Cooper, 14D Fed. Prac. & Proc. § 3828.4 (2007) ("Forum Non
Conveniens—Cases Illustrating the Balancing of the Private Interests and Public
Interests").................................................................................................n.7

Defendant T.C. Ziraat Bankasi A.Ş. ("Ziraat Bankasi" or the "Bank") submits this memorandum of points and authorities in support of its motion to dismiss the Complaint under the doctrine of forum non conveniens, lack of subject-matter and personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and (2), and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## Preliminary Statement

Plaintiff's story is a sympathetic one:  a trusting widow, she remarried at the age of 67 to a swindler.  When her husband (whom she claims was already married) urged her to sell her belongings and move to Turkey to be with him, she did so.  But when they opened a joint bank account in Turkey to deposit the check representing her life savings, she claims he once again took advantage of her trust and withdrew most of the money.

Plaintiff's story, if true, might well support a claim against the man who took her trust and her savings.  But Plaintiff seeks such redress from another, the Bank.  Plaintiff's case against the Bank, however, cannot proceed for three reasons.  First, because the operative facts arose entirely in Turkey and involve the conduct of a Turkish bank regulated by Turkish banking laws, the doctrine of forum non conveniens requires that the case be dismissed and brought in Turkey.  Second, the Court lacks jurisdiction over the Bank under the Foreign Sovereign Immunities Act because the Bank is wholly owned by the Republic of Turkey.  And third, the Complaint fails to state a claim under either New York or Turkish law.

**Facts**

The Complaint alleges the following facts, which are assumed to be true for purposes of a motion to dismiss.[1]  In October 2006 Plaintiff Theresa Guirlando, a 67 year old widow and United States citizen residing in New York, married Mevlut Cicek, a Turkish national and illegal immigrant, in Port Jefferson, New York.  (Compl. ¶¶ 2, 7.)  Five months later Mr. Cicek disappeared from Long Island.  (Id. ¶ 8.)  He soon surfaced in Turkey where he called Ms. Guirlando and told her he had been deported.  (Id.)  Mr. Cicek urged Ms. Guirlando to sell her house and car and join him in Turkey.  (Id.)  By May 2007 she had done so.  (Id.)  She arrived in Mr. Cicek's hometown of Adana, Turkey with a check for $251,156.63 representing the proceeds of those sales as well as her life savings.  (Id. ¶¶ 8-9.)

After she arrived in Adana, Mr. Cicek escorted Ms. Guirlando to the local branch of Ziraat Bankasi.  (Id. ¶ 9.)  Ms. Guirlando explained to the Adana branch personnel that she wished to open a bank account and deposit her check, which was made payable to her.  (Id. ¶¶ 8-9.)  The branch personnel advised her that she could not open a bank account without "the Turkish equivalent of a social security number."  (Id. ¶ 9.)  The branch manager suggested that she open a joint account with Mr. Cicek, using Mr. Cicek's "Turkish tax identification number." (Id.)  The manager promised to contact Ms. Guirlando as soon as the check cleared.  (Id.)[2]  Ms. Guirlando opened the joint account with Mr. Cicek and deposited her check.  (Id.)

When the check cleared, the branch personnel contacted Mr. Cicek.  (Id. ¶ 10.)  Mr. Cicek "promptly went to Ziraat Bank and withdrew more than $200,000."  (Id.)  Around this

---

[1]     See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

[2]     The Complaint is silent as to whether Ms. Guirlando instructed the Bank to only contact her and not Mr. Cicek.

time, Mr. Cicek's deception began to unravel.  Ms. Guirlando learned from Mr. Cicek's adult daughter that he "had gone to the bank to steal her money."  (Id.)  When she went to the bank, she discovered that Mr. Cicek had indeed withdrawn most of the funds she deposited.  (Id.)  The next day, she returned with a United States consular officer and withdrew the remaining funds from the account.  (Id.)

Ms. Guirlando claims that the bank is responsible for Mr. Cicek's successful swindle because he was "well known to the [Adana branch] Manager and other executive level personnel" and they knew him to be "a criminal and a swindler" whose marriage to her was void because he was already married to a Turkish woman when he married Plaintiff.  (Id. ¶¶ 9, 11.)

## Argument

I.    The Complaint Should be Dismissed on the Grounds of Forum Non Conveniens

A federal court has the discretion to dismiss a complaint for forum non conveniens "even if the court is a permissible venue with proper jurisdiction over the claim."  Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 100 (2d Cir. 2000) (quoting PT United Can Co. v. Crown, Cork & Seal Co., 138 F.3d 65, 73 (2d Cir. 1988).  Accordingly courts may bypass a determination of jurisdictional issues and proceed directly to the forum non conveniens analysis.  See In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine, 311 F.3d 488, 498 (2d Cir. 2002) (finding that the court was "not first required to pass on the question of jurisdiction"); Turedi v. Coca Cola Co., 460 F. Supp. 2d 507, 511-21 (S.D.N.Y. 2006) (finding that jurisdictional issues should be still bypassed despite a growing circuit split).

There are three parts to a forum non conveniens inquiry:  (1) determine the level of deference to be given to the plaintiff's choice of forum, (2) "consider whether an adequate

alternative forum exists", and if so, (3) balance the private and public interest factors to ascertain the forum in which the case should be adjudicated. Iragorri v. United Techs. Corp., 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc); see also Norex Petroleum Ltd. v. Access Indus., 416 F.3d 146, 153 (2d Cir. 2005) (following Iragorri); Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 70 (2d Cir. 2003) (following Iragorri and noting that the decision "comprehensively explained" the three-stage analysis).[3]   The defendant bears the burden of both establishing the existence of an adequate alternative forum and showing that "the pertinent factors tilt strongly in favor of trial" in that forum. Wiwa, 226 F.3d at 100 (alterations and quotation marks in original omitted); see Aguinda v. Texaco, Inc., 303 F.3d 470, 476 (2d Cir. 2002).

A forum non conveniens determination is "intensely practical and fact-bound" and "there is no algorithm that assigns precise weights to the factors" on which it is based. First Union Nat'l Bank v. Paribas, 135 F. Supp. 2d 443, 448 (S.D.N.Y. 2001), aff'd, 48 Fed. Appx. 801 (2d Cir. 2002).  As set forth in the following legal discussion, the task of balancing those factors in this case is facilitated by the fact that every pertinent factor favors dismissal of the Complaint.

A.    Plaintiff's choice of forum should receive diminished deference

The starting point of a forum non conveniens analysis is determining the degree of deference to accord a plaintiff's choice of forum.  The level of deference "moves on a sliding scale depending on several relevant considerations." Iragorri, 274 F.3d at 71.  As a general rule, "a plaintiff's choice of forum is entitled to substantial deference." Wiwa, 226 F.3d at 101.  Such

---

[3]    As the Court acknowledged at the January 4, 2008 conference, Iragorri is the "seminal case" on forum non conveniens in the Second Circuit.  Plaintiff's reliance on the standard set out in Guidi v. Intercontinental Hotels, 224 F.3d 142 (2d Cir. 2000), in her pre-conference letter to the court and at the conference itself is misplaced.  Iragorri was decided en banc a year after Guidi to clarify the Second Circuit's position on deference to the Plaintiff's choice of forum. Iragorri, 274 F.3d at 69.  While Plaintiff makes much of Guidi's "oppressiveness and vexation" standard, that language is conspicuously absent from Iragorri and should play no part in the Court's analysis.

4

deference is appropriate when the plaintiff's choice is motivated by "genuine convenience" rather than less meritorious factors such as obtaining a tactical advantage under the forum's law, benefiting from the habitual generosity of the forum's juries or causing inconvenience or expense to the defendant. Norex Petroleum, 416 F.3d at 155 (listing factors associated with convenience and others indicative of "forum shopping"). When a plaintiff chooses her home forum, "that choice is generally entitled to great deference." Pollux Holding, 329 F.3d at 71.

For purposes of this analysis, the Southern District of New York is considered Plaintiff's home forum because she is a United States citizen. See Guidi v. Inter-Continental Hotels Corp., 224 F.3d 142, 146-47 & n.4 (2d Cir. 2000) (noting that when the alternative court is in a foreign country, a U.S. plaintiff's "home forum" is any federal district court). The court may therefore presume that her choice of forum was "motivated by convenience." Pollux Holding, 329 F.3d 74. In this case, the presumption appears to be a fair one. Plaintiff resides in New York State. (Compl. ¶ 2.) Therefore the Southern District of New York is likely a more convenient forum for her than the Republic of Turkey. See, e.g., Gilstrap v. Radianz Ltd., 443 F. Supp. 2d 474, 479 (S.D.N.Y. 2006) (noting that litigating in the Southern District of New York was "likely more convenient" and "would also likely prove less expensive" for a Houston resident than an English court); see also Iragorri, 274 F.3d at 72-73 (deference should not be withheld where a United States resident chooses to sue in a neighboring district where the defendant is amenable to suit).

The selection of a U.S. forum by an American citizen does not, however, have "talismanic significance," nor does it prevent the dismissal of a complaint for forum non conveniens. Pollux Holding, 329 F.3d at 73 (quoting Alcoa S.S. Co., Inc. v. M/V Nordic Regent, 654 F.2d 147, 154 (2d Cir. 1980)). It is merely a factor to consider in assessing the degree of

5

deference to accord the forum.

A plaintiff's choice of forum, including the selection of one's home forum, receives "reduced emphasis" when "the operative facts upon which the litigation is brought bear little material connection to the chosen forum." LaSala v. UBS, AG., 510 F. Supp. 2d 213, 224 (S.D.N.Y. 2007) (quotation marks omitted)[4]; see also Corporacion Tim, S.A. v. Schumacher, 418 F. Supp. 2d 529, 534 (S.D.N.Y. 2006), aff'd, 223 Fed. Appx. 37 (2d Cir. 2007). In this case, there is less than "little material connection" between this forum and the operative facts; there is no connection. All of the alleged facts relating to the Bank's conduct took place in Turkey.

When an American plaintiff "voluntarily enters into a transaction outside the United States, and the cause of action does not have significant ties to the plaintiff's home forum," the plaintiff's choice of forum merits "diminished deference." Henderson v. Metropolitan Bank & Trust Co., 470 F. Supp. 2d 294, 302-03 (S.D.N.Y. 2006) (internal quotation marks omitted), reconsidered and rev'd on other grounds, 502 F. Supp. 2d 372 (S.D.N.Y. 2007) (finding that foreign forum's $5 million filing fee changed the balance of factors); see BFI Group Divino Corp. v. JSC Russian Aluminum, 481 F. Supp. 2d 274, 280 (S.D.N.Y. 2007) (finding that "where an American plaintiff chooses to invest in a foreign country and then complains of fraudulent acts occurring primarily in that country, the plaintiff's ability to rely upon citizenship as a talisman against forum non conveniens dismissal is diminished"; citations, alterations and quotation marks omitted); see also Carey v. Bayerische Hypo-Und Vereinsbank AG, 370 F.3d

---

[4]    Three cases brought by LaSala were decided on the same day by Judge Haight in lengthy opinions that contain substantially identical discussions of forum non conveniens. See LaSala v. UBS, AG, 510 F. Supp. 2d 213 (S.D.N.Y. 2007); LaSala v. Bank of Cyprus Pub. Co. Ltd., 510 F. Supp. 2d 246 (S.D.N.Y. 2007); LaSala v. TSB Bank, PLC, --- F. Supp. 2d ----, 2007 WL 2758759 (S.D.N.Y Aug. 15, 2007). For the court's convenience, we cite the LaSala decision with the earliest Federal Supplement citation, LaSala v. UBS, AG, unless there is more fitting language in one of its companion cases.

234, 237 (2d Cir. 2004). In this case, Plaintiff sold her American assets and traveled to Turkey with the intention of depositing her savings in a Turkish bank. When she opened the joint account she was voluntarily entering into an indefinitely long banking relationship with a Turkish bank on Turkish soil. Thus her interaction with the bank "g[a]ve rise to the expectation on all sides that any litigation arising from [it would] be conducted in [Turkey]." Carey, 370 F.3d at 237-39 (dismissing case in favor of German forum where U.S. plaintiff voluntarily entered into the disputed bank transaction while living in Germany). Under these circumstances, Plaintiff's selection of the Southern District of New York should be accorded diminished deference.[5]

      B.        Turkey's courts constitute an acceptable alternative forum

A proposed alternative forum is acceptable "if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." Norex Petroleum, 416 F.3d at 157 (quoting Pollux Holding, 329 F.3d at 75). More concisely, defendants must show the forum's "availability and adequacy." Turedi v. Coca-Cola Co., 460 F. Supp. 2d 507, 521 (S.D.N.Y. 2006). Defendant's proposed alternative forum, the Republic of Turkey, meets both requirements.

      1.        Turkey is an available forum

As stated in the accompanying Declaration of Yurdagül Rüzgar, First Legal Counsel to the Bank, Ziraat Bankasi is amenable to suit in Turkey and will not challenge the appropriateness of Turkey as the forum for litigating this action. Courts have found that such representations satisfy the availability requirement. See, e.g., Norex Petroleum, 416 F.3d at 157 ("[D]efendants

---

          [5]      Even if the Court were to assign "substantial deference" to Plaintiff's choice of forum, such deference would still be overcome by the "compelling" factors in favor of trial in Turkey. Wiwa, 226 F.3d at 101; see Point I.C. below.

satisfied the first prong of this test by representing that they would all submit to the jurisdiction of Russian courts in any comparable action filed against them by plaintiff."); <u>Base Metal Trading SA v. Russian Aluminum</u>, 253 F. Supp. 2d 681, 698 (S.D.N.Y. 2003) (citing declarations as evidence that "all twenty defendants have explicitly consented to jurisdiction in the Russian courts"), <u>aff'd</u>, 98 Fed. Appx. 47 (2d Cir. 2004).  The Bank has therefore satisfied the first prong of the alternate forum inquiry.

2.     <u>Turkey is an adequate forum</u>

As noted above, a foreign court is adequate if it "permits litigation of the subject matter of the dispute."  <u>Pollux Holding</u>, 329 F.3d at 75.  It need not offer identical causes of action or identical remedies.  <u>Norex Petroleum</u>, 416 F.3d at 158.  Nor need the foreign law be as favorable to the plaintiff as U.S. law would be.  <u>See</u> <u>Piper Aircraft v. Reyno</u>, 454 U.S. 235, 254-55 (1981); <u>Norex Petroleum</u>, 416 F.3d at 158.  It is therefore a rare case in which a U.S. court will find a foreign legal system inadequate.  <u>See</u> <u>Gilstrap v. Radianz Ltd.</u>, 443 F. Supp. 2d 474, 481 (S.D.N.Y. 2006) ("It is only in 'rare circumstances . . . where the remedy offered by the other forum is clearly unsatisfactory' that such a forum may not be considered adequate."; quoting <u>Piper Aircraft</u>, 454 U.S. 235, 255 n.22 (1981)); <u>see also</u> <u>Corporacion Tim</u>, 418 F. Supp. 2d at 533 (warning that finding foreign courts' substance or procedures to be deficient "risk[s] imposing on our judicial system the burden of serving as courtroom to the world for the adjudication of essentially foreign disputes with only nominal connections with the United States").

United States courts have long recognized the adequacy of their Turkish counterparts in forum non conveniens determinations.  <u>See</u> <u>Turedi v. Coca Cola Co.</u>, 460 F. Supp. 2d 507, 524-26 (S.D.N.Y. 2006) (finding that "Turkey would provide an adequate alternative forum for the adjudication of this litigation"); <u>Travelers Indem. Co. v. S/S Alca</u>, 713 F. Supp. 129, 132 (S.D.N.Y. 1989) (finding that Turkish courts were "best equipped to resolve" a dispute involving

8

negligence and breach of contract claims); <u>Allianz Versicherungs-Aktiengesellschaft Munich Reinsurance Co. v. S. S. Eskisehir</u>, 353 F. Supp. 84, 85-86 (S.D.N.Y. 1972) (finding that plaintiff's arguments challenging Turkey's adequacy lacked support); <u>see also</u> <u>Mercier v. Sheraton Int'l, Inc.</u>, 981 F.2d 1345 (1st Cir. 1992) (affirming dismissal of action in favor of bringing the case in Turkey and adding condition that defendant make evidence available there that would have been available to plaintiff in the U.S.); <u>Indus. Mar. Carriers (Bahamas), Inc. v. Barwil Agencies A.S.</u>, 2004 WL 1950322, *9 (E.D. La. 2004) (finding that Turkey was an "adequate alternative forum" in admiralty case involving breach of agency contract, breach of fiduciary duty and negligence).  Indeed, we are aware of no case where a federal court found Turkey to be an inadequate forum.

    The Court should follow these precedents and find that Turkey is an adequate forum to address Plaintiff's claims.  As set forth in the accompanying Declaration of Prof. Ergun Özsunay ("Özsunay Decl."), Turkish courts have jurisdiction over the parties and subject matter of this dispute.  (Özsunay Decl. ¶¶ 49-53, 86.)  There are no statute of limitations or other obstacles that would prevent Plaintiff from bringing her claims in a Turkish court or otherwise restrict her access to the courts or available remedies.  (<u>Id.</u> ¶¶ 57-59, 87.)  Further, Turkish law provides for compulsory process to ensure the testimony of witnesses and availability of documentary evidence.  (<u>Id.</u> ¶¶ 67-69, 73-74.)

    In addition, Turkish commercial courts are competent to handle the subject matter of this dispute. (<u>Id.</u> ¶¶ 49-52, 86.)  As a bank depositor, Plaintiff may sue the Bank under Turkish law for breach of contract (breach of duty of care) and negligence (failure to exercise ordinary care).[6]

---

[6]    As noted above, the Turkish claims and remedies need not match those in the Complaint.  <u>See</u> <u>Norex Petroleum</u>, 416 F.3d at 158.

(Id. ¶¶ 54-55, 88.)  If Plaintiff succeeds on these claims, the remedies available to her under Turkish law include compensatory damages in the amount of her loss with interest and damages for pain and suffering if she is able to prove such damages.  (Id. ¶¶ 55, 88.)  For all of the foregoing reasons, Turkish courts are competent to hear and resolve Plaintiff's claims.

    C.    The private and public interest factors weigh in favor of trial in Turkey

Courts balancing private and public interest factors in the third part of the forum non conveniens analysis continue to rely on the factors enumerated in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947), and followed in Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981).[7]

Gilbert recognized the following considerations as private interests of the litigant:  "[1] relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; [3] possibility of view of premises, if view would be appropriate to the action; and [4] all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to [5] the enforcibility of a judgment if one is obtained."  330 U.S. at 508.

As to public interest factors, Gilbert listed:  (1) the administrative burden of docket congestion in a forum that is not the origin of the litigation, (2) imposing the burden of jury duty "upon the people of a community which has no relation to the litigation", (3) holding the trial in a location where affected persons can access the trial, (4) the "local interest in having localized controversies decided at home", and (5) "having the trial of a diversity case in a forum that is at

_____

[7]    See, e.g., Gross v. BBC, 386 F.3d 224, 232-34 (2d Cir. 2004); Pollux Holding, 329 F.3d at 74-76; Aguinda v. Texaco, Inc., 303 F.3d 470, 479-80 (2d Cir. 2002); In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine, 311 F.3d 488, 500 (2d Cir. 2002); Iragorri, 274 F.3d at 73-74; Saud v. PIA Investments Ltd., 2007 WL 4457441, *4-5 (S.D.N.Y. Dec. 14, 2007); Crosstown Songs U.K. Ltd. v. Spirit Music Group, Inc., 513 F. Supp. 2d 13, 16 (S.D.N.Y. 2007); see generally, Wright, Miller & Cooper, 14D Fed. Prac. & Proc. § 3828.4 (2007) ("Forum Non Conveniens—Cases Illustrating the Balancing of the Private Interests and Public Interests").

home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." 330 U.S. at 508-09.

        1.   <u>Private Interest Factors</u>

The private interest factors heavily favor of trial in Turkey. We discuss each in turn.

<u>(1) Relative ease of access to sources of proof.</u>  Apart from Plaintiff's own testimony, all evidence concerning this matter is located in Turkey. At the January 4, 2008 conference, counsel for the parties identified the following sources of testimonial and documentary evidence:

- Theresa Guirlando (located in the Eastern District of New York)

- A U.S. consular officer (currently located in Turkey, but subject to transfer), who we understand will testify on matters concerning meetings with Bank personnel

- Three to four witnesses from the Adana branch (located in Turkey), who we expect will testify concerning the opening and operation of the relevant account and the Bank's practices generally

- Turkish police officers who allegedly questioned and released Mevlut Cicek (located in Turkey) and documents relating to that event

- Mevlut Cicek (believed to be located in Turkey), who, as the principal antagonist in Plaintiff's story, has relevant evidence concerning his relationship with the Plaintiff, his discussions with her concerning the establishment and operation of the bank account, and his entitlement to the funds he withdrew

Other relevant witnesses, also based in Turkey, come to mind. They include:

- the "other woman," to whom Plaintiff alleges her husband was simultaneously married, who we expect will testify that there was no concurrent marriage, and, as significant, that Plaintiff lived with her during her stay in Turkey

- Mevlut Cicek's "adult daughter", who will testify as to her conversation with Plaintiff about Cicek's withdrawal

- Experts on Turkish contract and banking law

In contrast, Plaintiff identifies herself as the only US-based witness. [8]

---

[8]    Plaintiff's counsel also suggested Guirlando's daughter who was in the United States at the time of the events would testify for Plaintiff, but did not explain how her testimony would be relevant and non-hearsay.

For purposes of this analysis, we presume that the documents in the custody of these individuals and the Bank are located in the same jurisdiction as their custodians. We also presume that the documents in Turkey are in Turkish, with the exception of American identification documents presented to the Bank to open the joint account.

With the exception of Plaintiff and any documents she may have in her possession (of which she has identified none), the sources of proof are entirely in Turkey. Thus, access to these sources will naturally be easier in Turkey than in the United States. Further, some documentary evidence in these witnesses' possession, such as documents in the custody of the Turkish police or Mevlut Cicek, are "beyond the reach of this Court's power to compel production." Turedi, 460 F. Supp. 2d at 526. A Turkish court, however, can compel production of those documents. (Öszunay Decl. ¶¶ 4, 66-69, 74.)

(2) Availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses. Turkish courts can compel unwilling Turkish witnesses to appear at trial. (Özsunay Decl. ¶¶ 4, 68-69, 74.) If the case remains in the United States, however, such witnesses will only be available through the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, 1972 WL 122493, T.I.A.S. No. 7444, 23 U.S.T. 2555 (listing the United States and Turkey as signatories). The Convention does not permit the taking of U.S.-style depositions in Turkey. Rather, it authorizes only Letters of Request pursuant to which a judge propounds previously approved questions. (Özsunay Decl. ¶¶ 75-76.) It can take a year or more for a Turkish court to fulfill a Letter of Request. (Id. ¶ 77.) Thus, as to unwilling witnesses, proceeding in the United States would result in a long, expensive wait for testimony of limited value. See Turedi, 460 F. Supp. 2d at 526 (noting the

costs and delays involved in obtaining evidence from Turkish witnesses).[9]  As to witnesses who are willing to appear in the United States for depositions and trial, the cost of their flights, hotel rooms and incidentals will far exceed the cost of bringing both willing and compelled witnesses to trial in Turkey.[10]  See Turedi, 460 F. Supp. 2d at 526.

(3) Possibility of view of premises, if view would be appropriate to the action.  We do not anticipate that a view of the premises in Turkey will be necessary to a resolution of this action.

(4) All other practical problems that make trial of a case easy, expeditious and inexpensive.  The native language of all but two potential witnesses in this case is Turkish and almost all of the documents will be in Turkish.  Additionally, as argued below in point I.C.2., this case is governed by Turkish law and much of the source material for legal analysis by the parties and the Court has not been translated to English.  (Özsunay Decl. ¶ 24.)  As a practical matter, it would relatively "easy, expeditious and inexpensive" to litigate the case in Turkey, as compared to the United States.  To litigate the case in the United States would require certified translations and interpreters for almost the entire body of evidence and much of the applicable law, as well as extensive expert evidence.  This would add time and expense to pre-trial and trial proceedings.

Another consequence of relying on continuous translation of testimony is that it will be more difficult for an English-speaking factfinder to judge the credibility of witnesses whose words come through an interpreter.  See LaSala, 510 F. Supp. 2d at 228 ("Even putting aside the

---

[9]     The ability to obtain documents from governmental officials such as the police via the Hague Convention, will be constrained at best.  In any event, it will be time consuming and expensive.  (Öszunay Decl. ¶ 75-77.)

[10]     As a matter of equity, the fact that Plaintiff, a party-witness, would have to fly to Turkey to attend and testify at trial should not be held against the Bank in light of the fact that this case arose out of her own voluntary trip to Turkey in 2007.

question of cost, the difficulties presented to a court's assessment of witness credibility are considerable."). The credibility of Bank witnesses with regard to what they knew about Cicek, their conversations with Plaintiff and Cicek, and their conduct is a key issue in this case. Regardless of whether the Bank would be able to produce its personnel to testify in New York, a Turkish tribunal would be better able to judge the credibility of Turkish-speaking witnesses.

Last, statistically speaking, this case can be more "expeditiously" handled by a Turkish court than the Southern District of New York. According to the Federal Court Management Statistics the median amount of time between filing a case and trial in the Southern District of New York was 25.7 months for year ending in September 2006 and 26.3 months for the year ending March 31, 2007. See 2006 Federal Court Management Statistics Judicial Caseload Profile Report, Southern District of New York (available at http://www.uscourts.gov/cgi-bin/cmsd2006.pl); 2007 Federal Judicial Caseload Statistics, Table C-5 (available at http://www.uscourts.gov/caseload2007/tables/C05Mar07.pdf). By comparison, a case filed in Turkey can expect to be tried within one and a half years and any appeals can be decided within an additional six months to one year. (Özsunay Decl. ¶ 72.) Thus, this case is likely to have a speedier resolution in Turkey than in New York.

(5) The enforceability of a judgment if one is obtained. Turkish courts will enforce judgments in favor of successful plaintiffs in Turkish lawsuits. (Özsunay Decl. ¶ 63.)

2.    Public Interest Factors

The public interest factors in this case also weigh heavily in favor of dismissal.

(1) The administrative burden of docket congestion in a forum that is not the origin of the litigation. This factor is generally disregarded in the Southern District in light of the Second Circuit's statement in Guidi that despite the district being "heavily overburdened", this factor is insignificant while the district has a "full complement of judges". Guidi, 224 F.3d at 147 n.5;

see, e.g., <u>Bohn v. Bartels</u>, 2007 WL 4334667, at *10 n.12 (S.D.N.Y. Dec. 12, 2007); <u>BFI Group Divino Corp. v. JSC Russian Aluminum</u>, 481 F. Supp. 2d 274, 284-85 (S.D.N.Y. 2007).[11]

(2) <u>Imposing the burden of jury duty "upon the people of a community which has no relation to the litigation."</u>  It is neither necessary nor appropriate for this case to be heard by Southern District jurors because this district has no connection to the facts of this case and the United States does not have a significant interest in resolving the matter.  <u>See</u> <u>Pollux Holding</u>, 329 F.3d at 76 ("With small local interest in the dispute, it would be burdensome for a New York jury to hear and decide this case."); <u>Varnelo v. Eastwind Transp., Ltd.</u>, 2003 WL 230741, *32 (S.D.N.Y. 2003) ("This action's connection to this forum is far too attenuated to justify burdening our citizens with jury duty."; collecting cases).

(3) <u>Holding the trial in a location where affected persons can access the trial.</u>  This is not a case which "touch[es] the affairs of many persons." <u>Gilbert</u>, 330 U.S. at 509.  While Plaintiff may have family and supporters in New York, there is no one in the United States other than Plaintiff herself whose affairs are affected by the case.  Indeed, besides the Bank and its personnel in Turkey, the only other person whose affairs could be affected by the case is Mevlut Cicek, who may find himself sued by whichever party does not prevail.  This factor therefore supports trial in Turkey.  <u>See, e.g.</u>, <u>Bohn v. Bartels</u>, 2007 WL 4334667, *11 (S.D.N.Y. Dec. 12, 2007) ("To the extent this case touches on the affairs of other people, those people are in Portugal, not New York."); <u>BlackRock, Inc. v. Schroders PLC</u>, 2007 WL 1573933, *10 (S.D.N.Y. May 30, 2007) ("[T]o the extent this case touches on the affairs of other people, those

---

[11]    We submit that the parties' interest in a speedy trial should nonetheless be considered as both a private and public interest.  We discuss the relative speed of dispute resolution in the Southern District and Turkey above in Point I.C.1. under the heading, "All other practical problems that make trial of a case easy, expeditious and inexpensive."

people are in Germany, not New York, further supporting trial in Germany rather than in the Southern District of New York.").

(4) The local interest in having localized controversies decided at home. In considering the forum with the greater local interest in the dispute, "the appropriate inquiry here is whether the United States as a whole, not just New York, has an interest in adjudicating the dispute." Rahl v. Bande, 328 B.R. 387, 408 (S.D.N.Y. 2005) (quoting Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco, PLC, 2003 WL 21180421, at *9 n.8 (S.D.N.Y. May 20, 2003)). The interest of the United States in a U.S. citizen's banking relationship that was created in Turkey with a Turkish bank "pales in comparison with that of" Turkey. LaSala, 510 F. Supp. 2d at 229 (discussing the interest of Switzerland in its banking relationships). Turkey has "a strong interest in regulating the conduct of banks within its borders." Id.

The facts of this case resemble those of LaSala v. UBS, 510 F. Supp. 2d 213 (S.D.N.Y. 2007). Like the instant case, LaSala involved a bank account opened in a foreign country, Switzerland, and "transfers alleged to have been improperly permitted by the Bank [which] were authorized by personnel there." 510 F. Supp. 2d at 229. The court there found that "at its heart" the case was "a dispute involving what Swiss banking representatives did and what they knew when they did these things." 510 F. Supp. 2d at 229. Accordingly, the defendant bank's knowledge of its legal obligations and the transfers themselves "reside[d] in the minds of Bank representatives in Switzerland." 510 F. Supp. 2d at 229-30. The court in LaSala concluded, "If, to quote Gilbert, it is preferable that 'localized controversies' be 'decided at home,' Switzerland is home for the controversies generated by plaintiff's complaint." 510 F. Supp. 2d at 230. Replacing Swiss references with Turkish ones, each of the foregoing observations applies equally to the facts of this case and leads to the same result. This dispute is inherently a local

16

Turkish controversy, a factor which weighs in favor of trial in Turkey.

(5) Trying a diversity case in a forum "that is at home with the state law that must govern the case." Because Plaintiff entered into a banking relationship with a Turkish bank in Turkey and Turkey has the greater interest in regulating its banking relationships, Turkish law governs this dispute. LaSala, 510 F. Supp. 2d at 225-28 (applying Swiss law under similar circumstances). The Court will be substantially burdened if called upon to apply Turkish law. As the First Circuit noted in Mercier v. Sheraton International, Inc.:

> Although applicable Turkish law is patterned on familiar European models, notably the Swiss Code of Obligations, and has been translated into English, it is still subject to Western judges' general lack of familiarity with civil law principles. Moreover, practical difficulties are likely to be encountered in applying Turkish law to a dispute in American courts by reason of the fact that many treatises on Turkish law are unavailable in English translation, and that almost no Turkish court decisions are available in English translation.

981 F.2d 1345, 1357 n.10 (1st Cir. 1992) (modifying and affirming dismissal on forum non conveniens grounds) (citations and quotation marks omitted); accord Özsunay Decl. ¶¶ 19, 24.

Application of a foreign law is not only an administrative burden; it is attended by the risk of simply getting the wrong result through "misunderstanding or misapplication of the foreign law." BlackRock, Inc. v. Schroders PLC, 2007 WL 1573933, *10 (S.D.N.Y. May 30, 2007). As Judge Friendly wrote in Conte v. Flota Mercante Del Estado, 277 F.2d 664 (2d Cir. 1960):

> [T]ry as we may to apply the foreign law as it comes to us through the lips of the experts, there is an inevitable hazard that, in those areas, perhaps interstitial but far from inconsequential, where we have no clear guides, our labors, moulded by our own habits of mind as they necessarily must be, may produce a result whose conformity with that of the foreign court may be greater in theory than it is in fact.

277 F.2d at 667; <u>BlackRock</u>, 2007 WL 1573933, at *10-11 (quoting <u>Conte</u>); <u>see also</u> <u>Great N.</u> <u>Ins. Co. v. Constab Polymer-Chemie GmbH & Co.</u>, 2007 WL 2891981, *14 (N.D.N.Y. 2007) ("Although this Court is able to apply German law when necessary, it makes no pretense that it could do so as knowledgeably or as efficiently as a German tribunal."; dismissing suit in favor of adjudication in Germany). This warning is especially appropriate where, as here, the foreign law is based on civil law, rather than common law. Accordingly, the need to apply foreign law also also supports dismissal.

*    *    *

Plaintiff decided to relocate to Turkey and engage in a banking transaction there with a Turkish bank. While she has since decided to return home to New York, her convenience cannot trump the fact that the locus of the entire course of conduct, and, therefore, most of the evidence and witnesses, is in Turkey. The three-part forum non conveniens analysis set forth by the Second Circuit in <u>Iragorri</u> compellingly favors dismissal of this case in favor of suit in Turkey.

First, despite Plaintiff's choice of her home forum, the fact that the United States has no connection to the alleged operative facts requires that the Court accord a reduced level of deference to her choice. When courts begin their analysis with this lesser degree of deference for the plaintiff's forum, it is more likely "that defendants attacking the plaintiff's choice of a U.S. forum will be able to marshal a successful challenge to that choice." <u>First Union Nat'l Bank v.</u> <u>Paribas</u>, 135 F. Supp. 2d 443, 448 (S.D.N.Y. 2001).

Second, the Bank has met its burden of showing that Turkey is an available and adequate alternative forum. Courts have reasoned that "[t]here is little sense to allowing a U.S. citizen to haul a group of foreign defendants into a U.S. court on transactions having little or nothing to do with this country where there is an available foreign forum significantly better suited to handling the litigation in a prompt, efficient and effective manner." <u>LaSala</u>, 510 F. Supp. 2d at 228

18

(quoting <u>First Union</u>, 135 F. Supp. 2d at 448); <u>Gilstrap v. Radianz</u>, 443 F. Supp. 2d 474, 480 (S.D.N.Y. 2006) (same).

Third, the Bank has demonstrated that all of the relevant private and public interest factors enumerated by the Supreme Court in <u>Gilbert</u> favor trial in Turkey; thus there is no need to balance competing factors.  Dismissal is especially compelled by the following facts:  this is a localized dispute which should be decided by a local court; the evidence is primarily located in Turkey and in the Turkish language; and Turkish courts are better equipped to apply Turkish law.  <u>See</u> <u>LaSala</u>, 510 F. Supp. 2d at 225 ("Where alleged misconduct is centered in the foreign forum and the majority of evidence resides there, dismissal is favored.").

Applying these factors, as required after <u>Iragorri</u>, it is clear that the case should be dismissed on the grounds of forum non conveniens.[12]

II.    <u>The Complaint Should be Dismissed Pursuant to the Foreign Sovereign Immunities Act</u>

The next issue for the Court's consideration is dismissal for lack of jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602-11.  <u>See</u> <u>Almog v. Arab Bank, PLC</u>, 471 F. Supp. 2d 257, 265 (E.D.N.Y. 2007) ("When reviewing a motion to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), a court should decide the jurisdictional question first.").  The FSIA applies in this case because the Bank is wholly owned by the Republic of Turkey.  (Rüzgar Decl. ¶ 2.) It was formed as a joint stock entity under Turkish law and is

---

[12]    Contrary to Plaintiff's position at the January 4, 2008 conference, the fact that Plaintiff is an individual located in the United States and Defendant is a foreign corporation does not require a different result.  Although courts are sensitive to the costs of litigating actions abroad, the fact that a United States forum is more convenient to a United States citizen and resident is not dispositive, even where an individual claims to be "of modest means."  <u>Carey v. Bayerische Hypo-Und Vereinsbank AG</u>, 370 F.3d at 238-39 (individual U.S. plaintiff entered into a loan-and-mortgage agreement with German bank).

headquartered in Turkey.  (Id.)  See 28 U.S.C. §§ 1603(b), 1332(c).  Accordingly, the Bank

qualifies as an "agency or instrumentality" of a foreign state under 28 U.S.C. section 1603(b).

The FSIA "provides the 'sole basis' for obtaining jurisdiction" over foreign states in the

United States.  Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 611, 112 S. Ct. 2160,

2164 (1992) (citing Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434-39

(1989)).  This rule applies to the instant case even though the Bank maintains an office in New

York.  See, e.g., Elliott v. British Tourist Auth., 986 F. Supp. 189, 191-92 (S.D.N.Y. 1997)

(analyzing jurisdiction over an employment dispute in the New York office of a foreign agency

or instrumentality under the FSIA); Human Rights in China v. Bank of China, 2003 WL

22170648, *4-5 & n.7 (S.D.N.Y. Sept. 18, 2003) (considering only the disputed conduct in ruling

on the commercial activity exception, not the bank's general commercial activity in the United

States or the presence of a New York branch).

As a foreign agency or instrumentality, the Bank is "presumptively immune from the

jurisdiction of United States courts" unless an exception exists.  Saudi Arabia v. Nelson, 507

U.S. 349, 355, 113 S. Ct. 1471, 1476 (1993); see 28 U.S.C. § 1604.  No such exceptions apply in

this case.  We note that a commonly cited exception -- the commercial activity exception -- is

inapplicable because the parties' dispute is not "based upon" commercial activity "in the United

States" or "caus[ing] a direct effect in the United States."  See 28 U.S.C. § 1605(a)(2).  Because

no exception applies, the Court lacks subject matter jurisdiction over the litigation.  See Garb v.

Republic of Poland, 440 F.3d 579, 581-82 (2d Cir. 2006).  Without subject matter jurisdiction,

under the FSIA the Court also has no personal jurisdiction over the Bank.  See Fagan v.

Deutsche Bundesbank, 438 F. Supp. 2d 376, 391 (S.D.N.Y. 2006) ("Under the FSIA, personal

jurisdiction equals subject matter jurisdiction plus valid service of process.").  Thus dismissal

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2) is proper.[13]

III.    The Complaint Should be Dismissed for Failure to State a Claim under Rule 12(b)(6)

On a motion to dismiss "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007). The court may also consider documents incorporated into the Complaint by reference and documents that Plaintiff knew of and relied on in bringing this lawsuit. Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000). To inform the Court's analysis and Prof. Özsunay's expert opinion, copies and translations of the documents used to open Plaintiff's deposit account with the Bank are attached to the accompanying Declaration of Michael T. Sullivan ("Sullivan Decl.").

Before the Court can determine whether the Complaint fails to state a claim, it must identify the forum under whose law the claim should be analyzed. We submit that a choice of law analysis is unnecessary because Plaintiff's Complaint fails to state a claim under both New York and Turkish law.

A.    Plaintiff fails to state a claim under New York law

The Complaint lists four causes of action: (1) negligence, (2) breach of covenant of good faith and fair dealing, (3) breach of fiduciary duty and (4) infliction of emotional distress. None of these are valid causes of action by a depositor against a bank under New York law. Plaintiff also seeks attorney's fees and punitive damages, neither of which are appropriate remedies.

Under New York law, the relationship between a bank and its depositor is the "contractual relationship of debtor and creditor." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chem. Bank, 57 N.Y.2d 439, 444 (1982). Accordingly, a depositor may sue to recover funds that were improperly disbursed by a bank under a contract theory of recovery. Tevdorachvili v.

---

[13]    But for the FSIA, the Bank would not object to jurisdiction.

Chase Manhattan Bank, 103 F. Supp. 2d 632, 640 (E.D.N.Y. 2000). The only duty arising under the contractual debtor-creditor relationship, is the bank's duty of ordinary care in the handling of its depositor's accounts. See Yanoscik v. North Fork Bank, 9 Misc. 3d 1111, 2005 WL 2290580, at *3 (N.Y. Sup. Ct. Queens County Jul. 5, 2005); Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank, 57 F.3d 146, 158 (2d Cir. 1995) ("Generally, banking relationships are not viewed as special relationships giving rise to a heightened duty of care."). In particular, a bank has "no affirmative duty under New York law to inform" a customer of a fraud being perpetrated against the customer. In re Sharp Int'l Corp., 403 F.3d 43, 52 n.2 (2d Cir. 2005). Plaintiff's non-contractual claims therefore have no basis in law.

(1) Negligence. New York does not recognize a claim for negligent breach of contract. Tevdorachvili, 103 F. Supp. 2d at 643-44. As an independent tort claim, Plaintiff's negligence claim fails to state a cause of action because tort claims may only accompany breach of contract claims "where the contract creates a relation out of which springs a duty, independent of the contract obligation, and that independent duty is breached." Bouquet Brands Div. of J & D Food Sales, Inc. v. Citibank, N.A., 97 A.D.2d 936, 937, 470 N.Y.S.2d 733, 734 (3d Dep't 1983); see Bank Leumi Trust Co. of New York v. Block 3102 Corp., 180 A.D.2d 588, 589, 580 N.Y.S. 2d 299 (1st Dep't 1992); Nwachukwu v. Chem. Bank, 1997 WL 441941, at *4 (S.D.N.Y. Aug. 6, 1997). Plaintiff has alleged no independent duty arising from her contractual relationship with the bank.

(2) Breach of covenant of good faith and fair dealing. A claim for breach of a covenant of good faith and fair dealing presupposes a breach of the express terms of a contract and does not provide an independent basis for recovery. Tevdorachvili, 103 F. Supp. 2d at 642; see Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992)

("Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract."; internal quotation marks omitted).  Here, Plaintiff opened a joint bank account with Cicek.  As a joint-account holder, Cicek was entitled to withdraw funds unilaterally.  (Sullivan Decl., Ex. B-C; showing account holders' selection of "unilateral" option.)  Therefore the bank did not breach its contractual duty by releasing funds held in the account to Cicek.  See Tevdorachvili, 103 F. Supp. 2d at 642 (a bank may only disburse funds in conformity with the terms of the contract of deposit).

(3) Breach of fiduciary duty.  The contractual relationship between depositor and bank does not give rise to a fiduciary duty.  See Tevdorachvili, 103 F. Supp. 2d at 642 ("[T]he bank-depositor agreement standing alone creates no fiduciary relationship between the parties").  Nor does Plaintiff allege additional facts demonstrating a "special relationship apart from the ordinary debtor/creditor relationship" from which a fiduciary relationship could arise.  Bauer v. Mellon Mortgage. Co., 178 Misc.2d 234, 240, 680 N.Y.S.2d 397, 401 (N.Y. Sup. New York County 1998); see Jones v. Commerce Bancorp, Inc., 2006 WL 1409492, *3 (S.D.N.Y. May 23, 2006) ("[A] fiduciary duty arises, even in a commercial transaction, where one party reposed trust and confidence in another who exercises discretionary functions for the party's benefit or possesses superior expertise on which the party relied.").  Rather, Plaintiff's deposit of a cashier's check with the Bank represents ordinary banking conduct and did not create a special relationship outside of the account agreement.  Therefore Plaintiff has not stated a claim for breach of fiduciary duty.

(4) Infliction of emotional distress.  Although Plaintiff does not indicate whether her claim is for intentional or negligent infliction of emotional distress, the facts fail to state a claim

for either tort.  Plaintiff's allegations about the Bank's conduct do not meet the "rigorous" requirement of showing that the Bank's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Howell v. New York Post Co., Inc., 81 N.Y.2d 115, 122 (1993); see Romano v. SLS Residential Inc., 246 F.R.D. 432, 2007 WL 3145076, *5 (S.D.N.Y. Oct. 10, 2007) (applying "extreme and outrageous conduct" standard to both claims).

Other relief.  Punitive damages are not available because Plaintiff does not allege that the Bank was engaged in a "pattern [of conduct] directed at the public generally."  New York Marine & Gen. Ins. Co. v. Tradeline, 266 F.3d 112, 130 (2d Cir. 2001); Nwachukwu, 1997 WL 441941, at *4.  Further, the alleged conduct does not rise to the level of being "gross and morally reprehensible, and of such wanton dishonesty as to imply a criminal indifference to civil obligations."  New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 315-16 (1995) (internal quotation marks omitted).

An award of attorney's fees is similarly unavailable because it would contradict the "American rule" that litigants are not awarded the cost of successfully prosecuting their claims. See Geler v. Nat'l Westminster Bank USA, 770 F. Supp. 210, 213 (S.D.N.Y. 1991).  There is no statute or rule endorsing the shifting of legal fees in a lawsuit by a depositor against a bank, nor did the parties agree to such an arrangement.  See Tevdorachvili, 103 F. Supp. 2d at 644.

B.    Plaintiff fails to state a claim under Turkish law

If the Court finds that the likely application of Turkish law "is a factor in [the Court's] dismissal on the basis of forum non conveniens, it would not be appropriate for the Court to conduct a Rule 12(b)(6) analysis on the basis of [Turkish] law."  LaSala v. Bank of Cyprus Pub. Co. Ltd., 510 F. Supp. 2d 246, 279 (S.D.N.Y. 2007).  We therefore discuss Turkish law briefly.

As Prof. Özsunay states in his expert declaration, a bank customer may bring a claim

under Turkish law for breach of contract (breach of the duty of care) or negligence against a bank for wrongful disbursement of funds.  (Özsunay Decl. ¶¶ 54-55, 85, 88.)  However, under the facts presented in the Complaint and reflected in the bank account agreement, Plaintiff has not stated a claim under Turkish law.  The Bank was not obligated to inform her, as Cicek's spouse, of his bad reputation or criminal past.  (Id. ¶ 38-39, 42-43, 83.)  Further, because Plaintiff selected the "unilateral" withdrawal option on the joint account agreement, the Bank did not violate her instructions by permitting Cicek to withdraw funds unilaterally.  (Id. ¶ 47, 80-81; Sullivan Decl. Ex. B-C)  With regard to Plaintiff's claim that the Bank acted improperly by contacting Cicek first, there is no allegation in the Complaint that she instructed them not to contact Cicek.  Absent such an allegation, the "plausible" inference to draw from the fact that the Adana branch personnel contacted Cicek is that they were more comfortable conversing with a native Turkish speaker.  Twombly v. Bell Atlantic, 127 S. Ct. 1955, 1965-66 (2007).

### Conclusion

For the reasons stated above, we respectfully request that the court grant the Bank's motion to dismiss on the grounds of forum non conveniens, lack of personal and subject-matter jurisdiction, and failure to state a claim and dismiss the Complaint with prejudice.

Dated:        New York, New York
              February 11, 2008

                              Respectfully submitted,
                              SULLIVAN & WORCESTER LLP


                    By:    _s/ Michael T. Sullivan _____
                              Michael T. Sullivan (MS 3158)
                              Karin Klapper Orenstein (KO 1274)
                              1290 Avenue of the Americas, 29th Floor
                              New York, New York 10104
                              (212) 660-3000

                              Attorneys for Defendant T.C. Ziraat Bankasi A.Ş.

25

Violet Elizabeth Grayson (VEG-2792)
888 Seventh Avenue – 45th Floor
New York, N.Y 10106
(646) 406-1512

Attorney for Plaintiff



RECEIVED
NOV 19 2007
U.S.D.C. S.D. N.Y.
CASHIERS

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JUDGE SULLIVAN

-------------------------------------------------X

Theresa Guirlando,

          Plaintiff,

     -against-

T.C. Ziraat Bankasi A.S.,

          Defendant.

-------------------------------------------------X

07 CV 10266

ECF Case
No.

COMPLAINT

JURY TRIAL DEMANDED

### Introduction

1. This is a diversity action brought by an American widow against a Turkish bank, which is, as set forth below, legally responsible for loss of the widow's life savings.

### Parties. Jurisdiction and Venue

2. Plaintiff, Theresa Guirlando,  is a natural person, and a citizen and resident of the State of New York

3. Defendant T.C. Ziraat Bankasi A.S. ("Ziraat Bank") is a bank organized under the laws of the nation of Turkey, and a citizen of Turkey. Ziraat Bank is the largest Turkish bank and maintains a fully operational branch in Manhattan.

4. Plaintiff invokes this Court's diversity jurisdiction as there exists diversity of citizenship between plaintiff and defendant, and the amount in controversy exceeds $75,000.

5. This Court has personal jurisdiction over Ziraat Bank because Ziraat Bank is present and doing business in Manhattan.

6. Southern District of New York venue is proper because Ziraat Bank is found within the Southern District.

<u>Facts</u>

7. In October of 2006, Theresa Guirlando married Mevlut Cicek in Port Jefferson, Long Island, New York. Mrs. Guirlando was a 67 year old widow and United States citizen. Mr. Cicek was over 50 years of age, a Turkish national and illegal immigrant to the United States.

8. In March of 2007, Cicek disappeared from Long Island. Not long thereafter, Cicek telephoned Guirlando from Turkey and told her that he had been deported. Cicek implored Guirlando to sell her house and car and join him in Turkey. She did so, and in May of 2007, flew to Turkey with a Citibank, New York certified check for $251,156.63, representing the proceeds from the sale of her house and car, as well as the entire balance her bank account; i.e. her life savings. The check was payable to "Theresa Guirlando."

9. After Mrs. Guirlando arrived in Cicek's home town of Adana, Turkey, Cicek took her to the Adana branch of Ziraat Bank, where Cicek was well known to the Manager and other executive level personnel. Mrs. Guirlando explained that she wished to open an account and deposit the check. She was told that she could not open an account because she lacked the Turkish equivalent of a social security number. The

2

manager then suggested that she open a joint account with Cicek, using Cicek's Turkish

tax identification number, and deposit the check into that account. The manager further

promised to contact Guirlando as soon as the check cleared. Guirlando agreed to the

arrangement.

10. Ziraat Bank did not contact Mrs. Guirlando when the deposited funds became

available. Instead, they contacted Cicek. Cicek promptly went to Ziraat Bank and

withdrew more than $200,000. While Cicek was at Ziraat Bank withdrawing the funds,

Cicek's adult daughter informed Guirlando that Cicek had gone to the bank to steal her

money. Guirlando then went to Ziraat Bank and was informed that the money had been

withdrawn by Cicek. The following day, she returned to Ziraat Bank with a United States

Consular Officer, and was allowed to withdraw the approximately $50,000 which

remained on deposit.

11. Ziraat Bank has failed and refused to take any action to make Mrs. Guirlando

whole. Additionally, Mrs. Guirlando is informed and believes that at the time when she

opened her Ziraat Bank account, the manager and executive personnel at Ziraat Bank

knew that Cicek was a criminal and a swindler, and that his marriage to Guirlando was

bigamous and void because Cicek was already married to a Turkish woman when he

married Guirlando.

## First Cause of Action for Negligence

12. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1-11 herein.

13. Defendant Ziraat Bank owed a duty of care to Guirlando because it accepted her check for deposit.

14. When Ziraat Bank accepted Guirlando's check for deposit, it was aware that the check was Guirlando's separate property which she wished to deposit in a separate bank account. Defendant was also aware that Guirlando opened a joint account with Cicek only because Ziraat Bank personnel advised her that using Cicek's national identity number was the only way to open an account and deposit the check. When Cicek appeared at Ziraat Bank alone and withdrew more than $200,000 from the account immediately upon its becoming available, defendant knew or should have known that Cicek was stealing Guirlando's savings.

15. Ziraat Bank was negligent in failing to warn Guirlando of the risk associated with opening a joint account with Cicek, in telephoning Cicek rather than Guirlando to say that the funds had become available, in permitting Cicek to withdraw more than $200,000 from the bank account without Guirlando's knowledge and consent, and in failing to take any steps whatsoever to recover the funds after they were wrongfully withdrawn.

16. As a consequence of Ziraat Bank's negligence as set forth above, Guirlando has been injured in an amount exceeding $200,000 plus applicable interest.

4

## Second Cause of Action for Breach of Covenant of Good Faith and Fair Dealing

17. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1-16 herein.

18. The contract of deposit between Guirlando and Ziraat Bank contained a covenant of good faith and fair dealing implied by law.

19. Defendant Ziraat Bank breached this covenant of good faith and fair dealing by, *inter alia,* suggesting that she open a joint checking account with a known swindler and bigamist, failing to inform her when the funds became available and informing Cicek instead, permitting Cicek to withdraw more than $200,000 without Guirlando's knowledge or consent, and making no effort to restore the funds to Guirlando.

20. As a consequence of Ziraat Bank's breach of the covenant of good faith and fair dealing, Guirlando has been damaged in an amount not less than $200,000 plus applicable interest.

## Third Cause of Action for Breach of Fiduciary Duty

21. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1-20 herein.

22. As a consequence of accepting Guirlando's check for deposit, Ziraat Bank placed itself in a fiduciary relationship with Guirlando.

23. Ziraat Bank breached its fiduciary duty to Guirlando by, *inter alia,* failing to inform her when the funds became available and informing Cicek instead, permitting Cicek to withdraw more than $200,000 without Guirlando's knowledge or consent, and making no effort to restore the funds to Guirlando.

5

24. As a consequence of this breach of fiduciary duty, Guirlando has been damaged in an amount not less than $200,000 plus applicable interest.

<u>Fourth Cause of Action for Infliction of Emotional Distress</u>

25. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1-24 herein.

26. Ziraat Bank's conduct in recklessly or deliberately permitting and enabling Cicek to steal Guirlando's life savings as set forth above, subjected Guirlando to intolerable emotional distress.

27. Ziraat Bank is accordingly liable to Guirlando for compensatory and punitive damages in an amount subject to proof at trial.

WHEREFORE PLAINTIFF PRAYS FOR JUDGMENT AGAINST DEFENDANT AS FOLLOWS:

On the First, Second, and Third Causes of Action:

Awarding compensatory and punitive damages to Plaintiff according to proof in an amount not less than $200,000 plus applicable interest;

On the Fourth Cause of Action:

3) Awarding compensatory and punitive damages to Plaintiff according to proof in an amount not less than $300,000;

As to All Causes of Action:

Awarding attorney's fees and costs, if and as allowed by law, and such other and further relief as this Court may deem just and proper.

6

Dated: November 10, 2007

Respectfully submitted,

By:    _V Elizabeth Ghac_

Violet Elizabeth Grayson (VG-2792)
888 Seventh Avenue – 45th Floor
New York, New York 10106
(646) 406-1512

Attorney for Plaintiff

7