SULLIVAN & WORCESTER LLP
Michael T. Sullivan (MS 3158)
Karin Klapper Orenstein (KO 1274)
1290 Avenue of the Americas, 29th Floor
New York, New York 10104
(212) 660-3000

*Attorneys for Defendant*
*T.C. Ziraat Bankasi A.S.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| | | |
|---|---|---|
| THERESA GUIRLANDO, | : | |
| | : | 07 Civ. 10266 (RJS) |
| Plaintiff, | : | |
| | : | **DECLARATION OF** |
| - against - | : | **ERGUN ÖZSUNAY, PH.D.** |
| | : | **IN SUPPORT OF DEFENDANT'S** |
| T.C. ZIRAAT BANKASI A.Ş., | : | **MOTION TO DISMISS** |
| | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

I, Prof. Dr. ERGUN ÖZSUNAY, hereby declare as follows:

A.    **Introduction**

1.    I am professor of civil law and comparative law. I retired from the Istanbul

University Law School in 2002. Then I joined the faculty of the Istanbul Kültür University Law

School where I teach EU Law and Competition Law.  In addition, I practice law as legal counsel

and international arbitrator for commercial disputes.

2.    I have been retained by Sullivan & Worcester LLP on behalf of T.C. Ziraat

Bankasi as an expert in certain issues of Turkish law, in particular certain aspects of Turkish

banking law and law of obligations.

3.    My opinion is based on my experience and personal knowledge; my familiarity

with applicable provisions of Turkish law, including the Turkish Banking Law, No. 5411, the

Turkish Civil Code, Turkish Code of Obligations, the Turkish Code of Civil Procedure, and Law

on Private International Law and Procedural Law, No. 2675 and new Law on Private International

Law and Procedural Law, No. 5718; and my review of certain materials relevant to this case,

including the Complaint, documents used to open the bank account in question, and relevant

banking circulars.  Certified English translations of the relevant provisions in these laws are

attached as Appendix A.

**B.      Summary of Opinion**

      4.      Based on my review of certain documents that I identify below, and based on facts

I have been asked to assume, which I also identify below, my opinion is as follows.

- o    Turkish law permits bank customers to bring claims against banks for breach of contract (duty of care) and negligence.

- o    The Joint Account Agreement (the "Joint Account Agreement" or the "Agreement") executed by the plaintiff, her husband and Ziraat Bank, Adana Branch (the "Bank" or "Ziraat") complies fully with the requirements of Turkish law.

- o    Plaintiff's challenges to the effectiveness of the Agreement (based on the form of identification that she presented to the Bank, the Bank's failure to disclose information concerning her husband or the Bank's failure to inform her that her husband could operate the Joint Account singly, without her) are ineffective under Turkish law.

- o    Under the facts alleged in the complaint, Plaintiff has not established a viable claim under Turkish law.

- o    The plaintiff has access to the courts in Turkey where the Bank is amenable to suit for damages and where she can compel evidence, both testimony and documents, from persons resident in Turkey.

- o    Should this action continue in this Court, Turkish courts will offer limited assistance to the parties.  Pursuant to the Hague Convention, Turkey's courts will not compel Turkish residents to give evidence via US styled depositions; and will only allow the limited gathering of documents and limited questioning – by a judge – of witnesses.

C.    **Qualifications**

Educational Background

5.       I graduated from the Istanbul University School of Law in 1957. As research

assistant I translated the lectures of Professor Alfred F. Conard (University of Michigan, School

of Law, visiting professor of law at Istanbul Law School) on Anglo-American Law. Then I

attended Harvard Law School (LL.M. 1960). When I came back I was assigned to assist Professor

E. Allan Farnsworth (Columbia University, School of Law, visiting professor of law at Istanbul

Law School) and I translated his lectures on American Private Law (1961). From 1962 to1963, I

attended the *Faculté Internationale pour l'Enseignement de Droit Comparé* in Strasbourg, France.

From 1964-65, I studied at the *Max-Planck Institut für auslaendisches-und internationales*

*Privatrecht* in Hamburg, Germany. I was appointed as an Associate Professor of Law in 1965 and

became a full Professor in 1973. I also served as the Director of the *Institute of* Comparative Law

of Istanbul University from 1978-85.

Relevant Professional Experience

6.       I taught Civil Law and Comparative Law at the Istanbul University Law School

more than forty years. I taught also contracts, torts and specific contracts as a part of Civil Law

within the framework of the law of obligations. I intensively dealt with the issues of contracts and

torts as I worked on competition law, product liability, arbitration law, law of legal entities,

medical liability, and EU private law. (Appendix B, curriculum vitae and publication list).

7.       As a practitioner of law (attorney at law and legal counsel) I dealt with also

commercial law, company law, trade mark law and intellectual property law, antitrust and unfair

competition law before commercial courts and courts for intellectual and industrial property law.

8.       I am the Vice President of the International Association of Legal

Science/*Association Internationale de Science Juridique* (I.A.L.S./A.I.S.J.) (Paris), Chairman for

Middle East and African Law Group at the International Academy of Comparative Law/*Academie Internationale de Droit Comparé* (Paris), a member of the International Association of Procedural Law (Ghent), a corresponding member of *Deutsche Gesellschaft für Rechtsvergleichung* (Freiburg/Br.) and collaborating member of *UNIDROIT* (Institut international pour l'unification du droit privé/International Institute for the Unification of Private Law (Rome).

9.      I represented Turkey at the Diplomatic Conference for the Convention on Agency in International Sale of Goods in Geneva in 1983; the Convention on the Law Applicable to Contracts for the International Sale of Goods at the Hague in 1985; and the Convention on International Factoring and Financial Leasing in Ottawa in 1988.

10.      I serve as an international arbitrator in commercial disputes, mostly as an ICC arbitrator.  I also serve as the Turkish delegate in the CDBI (Steering Committee on Bioethics) of the Council of Europe (Strasbourg) and in the Commission on Competition and Commission on E- Business, Telecoms and IT (EBITT) at the ICC as the representative of the Turkish National Committee to ICC.

Relevant Publications

11.      I am the author of several books, including the Introduction to Civil Law, Law of Obligations, Legal Status of Persons, Legal Entities, Introduction to Comparative Law and Cartel Law.  I am also the author of numerous articles on civil law.  I have engaged in research in several fields of law including liability law, competition law, arbitration law, medical law. The details of my research and a list of articles I have authored are attached to my curriculum vitae.  (Appendix B)

Prior experience as Turkish law expert in litigation (in Turkey & US)

12.      I represent some U.S. and E.U. companies before Turkish court as their counsel. I have experience on commercial disputes between U.S. and Turkish companies as an arbitrator. I

served also as an expert on Turkish law in some disputes between Turkish and foreign companies including U.S. companies.  I gave information about Turkish law before some arbitration courts (including ICSID arbitration) and foreign courts (Germany, United Kingdom).

**D.      Overview of Turkish Legal System**

<u>Turkish Law is a part of the "Civil Law System"</u>

13.      Turkey has a civil law system based on Codes and "written law". As a civil law system, it differs in many ways from common law legal systems, such as that in the United States.

14.      A "law revolution" occurred in Turkey after the foundation of the Republic of Turkey in 1923.  At that time, Turkey left the Islamic legal sphere to which it had belonged and joined the Continental civil law system.  In doing so, it adopted many codes from the Swiss legal system.

15.      The main Turkish Codes were derived from the Swiss law in the 1920s. The former Turkish Civil Code (*Türk Medeni Kanunu*) and Code of Obligations (Borclar Kanunu) of 1926 were adopted from Switzerland. Swiss Civil Code and Code of Obligations (Zivilgesetzbuch and Obligationenrecht) were adopted totally with some slight alterations and modifications.  Further the Code of Civil Procedure of 1927 (*Hukuk Usulu Muhakemeleri Kanunu*) was modeled upon Swiss Canton Neuchatel's Code on Civil Procedure (*Code de procédure civil*).  The Turkish Code of Enforcement and Bankruptcy Law of 1932 (*Icra ve Iflas Kanunu*) was adopted from the Swiss Federal Law Pursuit for Debt and Bankruptcy (*Schuldbetreibungs-und Konkursgesetz*).

16.      These total adoptions were a "voluntary reception of foreign law" for the purpose of westernization and secularization of Turkish law.  Several amendments were made in the adopted codes based on socio-economic necessities.

17.      Within the framework of Turkey-EU (EEC and EC) relationships several amendments were made in current Turkish law for the purpose of harmonization and

- 5 -

approximation of EU law. New laws were enacted in harmony with the EU legislation (e.g. Governmental Decrees on protection of trade marks [KHK/556], patents [KHK/551], industrial designs [KHK/554]; Law on Protection of Competition, No. 4054; Law on Consumer Protection, 4077; new Law on Associations, No. 5253; Amendments in the Law on Intellectual and Artistic Works, No. 4856; new Turkish Civil Code, No. 4721 of 2001, Law on International Arbitration, No. 4686 of 2001; new Law on Private International Law and Procedural Law, No. 5718 of 2007). The law reform commissions drafted a new Code of Obligations modeled upon recent developments in this field of law and a new Commercial Code modeled upon EU legislation and national laws in the EU. These draft laws are being discussed at present in the related circles.

### 1. Basic Overview of Law of Obligations, Banking Law and Private International Law and Procedural Law

18.     The main areas of Turkish law I plan to address are the Law of Obligations (contracts, torts, unjust enrichment and specific individual contracts), Banking Law and old and new Private International Law and Procedural Law

19.     The main source of our "Law of Obligations" is the current Code of Obligations, No. 818 (*Borclar Kanunu*) of 8 May 1926 (as amended) which was modeled upon the Swiss Federal Code on Obligations (*Obligationenrecht*) of 30 March 1911 (as amended).

20.     The Code of Obligations covers "General Provisions" (Articles 1-181) and "Individual Obligations" (Article 181 et seq.). Under "General Provisions", Formation of Obligations (Contractual Obligations, Torts and Unjust Enrichment) (Articles 1-66), Effects of Obligations (Performance of Obligations, Effects of Nonperformance of Obligations, Specific Relations in Obligations) (Articles 67 et seq.), and Extinction of Obligations (Article 113 et seq.) are regulated.

21.     Banking Law is a branch of "private law and public law" and deals with the principles and procedures of banking transactions, financial markets, efficient functioning of the credit system and protection of the rights and interests of depositors. The deposit banks, development and investment banks, the branches of such institutions established abroad, financial holding companies, Banks Association of Turkey, Participation Banks Associations of Turkey, Banking Regulation and Supervision Agency, Savings Deposit Insurance Fund and their activities are covered by the Banking Law. Its main source is the Banking Law, No. 5411 (*Bankalar Kanunu*). There are other laws and complementary and subordinate legislation (e.g. Tax Procedure Law, No. 213, legislation on tax identity numbers, communiqués on content and framework of deposit account contracts) with regard to banking transactions and activities. Moreover, it should be noted that the provisions of the Turkish Code of Obligations on loan and deposit contracts apply in some banking transactions.

22.     Claims concerning banking transactions are heard by commercial courts in Turkey.

23.     As regards Turkish private international law and procedural law, I can express that it is in harmony with the modern private international law. Its main source was the Law on Private International Law and Procedural Law, No. 2675 of 20 May 1982 (*Milletlerarası Ozel Hukuk ve Usul Hukuku Hakkında Kanun*). It was replaced now by the Law on Private International Law and Procedural Law, No. 5718 of 27 November 2007. The new law was drafted in the light of recent developments in the field of private international law (particularly application of foreign law, intellectual property law, applicable law to contractual obligations, applicable law to contracts concerning immovable property, consumer contracts, labor contracts; product liability, restraints of competition, unfair competition, enforcement of foreign arbitral awards).

24.     There are no official English translations of Turkish laws or Court of Cassation cases, though private translations exist for some laws.  To the extent they are available, a U.S. court or the parties in this case could obtain these translations from private entities or request that they be translated.  Legal treatises discussing Turkish banking law, private law, procedural and bank deposit agreements have not been published in English.

25.     Turkish lawyers usually refer to the decisions of the Court of Cassation (Turkey's highest court of appeals for non-constitutional matters) in their submissions to the courts. Legal scholars cite also the decisions of the Court of Cassation in their works, legal researches or dissertations. Moreover, the courts refer to the decisions of the Court of Cassation in their judgments. In Turkish law only the "decisions of the Court of Cassation for the unification of decisions" (*ictihai birlestirme kararları*) are binding. In some situations the "General Assembly of Civil Chambers" of the Court of Cassation (*Hukuk Genel Kurulu*) can decide to unify the decisions of its chambers (Act on Court of Cassation, No. 2797, [*Yargıtay Kanunu*] Article 15 para. 2). In some cases the "Grand Assembly of All Chambers of the Court of Cassation" (*Yargıtay Büyük Genel Kurulu*) is authorized to decide the unification of the contradictory decisions of the General Assembly of Civil Chambers in similar cases.  Likewise, the contradictory decisions of the Assembly of Civil Chamber (*Hukuk Genel Kurulu*) and Criminal Chamber (*Ceza Genel Kurulu*) are unified by the Grand Assembly (Article 16 No. 5). Moreover, if a decision of one of the Civil Chamber [or Criminal Chamber] contradicts to the decision of the Assembly of Civil Chambers the Grand Assembly decides to unify the decisions. "Decisions relating to unification of decisions" are published at the Official Gazette. As "decisions of principle" they are binding for all Chambers, Assemblies of Civil and Criminal Chambers and courts. (Article 16, last sentence)

Turkey Has a Fair Legal System for Resolving Claims Asserted by Private Foreign Parties

26.      As a professor of comparative law and a practitioner of law in Turkey for more

than 48 years, I believe that the Turkish courts provide a fair legal system for redressing claims

asserted by private parties. Under the Turkish Constitution, and in practice, Turkey's courts are

independent from the legislative and executive branches of the Government. Under the Turkish

Constitution of 1982 no organ, authority, office or individual may give orders or instructions to

courts or judges relating to the exercise of judicial power, or make recommendations or

suggestions (Article 138).[1]

27.      The Turkish courts are staffed with well-trained judges who are law school

graduates. The professional status of judges and public prosecutors is subject to the Law on

Judges and Prosecutors, No. 2802 (*Hakimler ve Savcılar Hakkında Kanun*). Judges are

independent in the exercise of their duties. They render judgment in accordance with the

Constitution, law, and their personal conviction conforming to the law (Constitution, Article 138).

28.      Under the Constitution legislative and executive organs and the administration

shall comply with court decisions. These organs and the administration shall neither alter them in

any respect, nor delay their execution (Article 138).

29.      As the result of Turkey-EU relations several amendments regarding the status of

judges and prosecutors are on the way. The amendments in the Code of Civil Procedure and on

issues of judiciary are being drafted by the law reform commission.

---

[1]      A certified translation of Article 138 of the Turkish Constitution is attached.  I have recently
learned that a translation of the Turkish Constitution is available at the library of the United
Nations in a compilation entitled *Constitutions of the Countries of the World* (Gisbert H Flanz
ed., Oceana Publications, Inc. 2003).

30.     In short, I would like to emphasize that particularly regarding civil claims the Turkish courts are fair and act under the principle of due process of law. In the law of obligations the decisions of the Turkish courts can be compared with the decisions of the Swiss courts. In many cases one can find parallel decisions when the same provisions are applied by courts in both countries.

31.     As I mentioned above the judges are independent under the Turkish Constitution. Therefore the Turkish courts are not biased in favor of any particular group. Nor are the Turkish courts biased against foreign nationals.

**E.     Facts Which I Have Assumed and Documents Upon Which I Rely**

30.     Facts Which I Have Been Instructed to Assume

   a.     The facts alleged in the Complaint

   b.     At the request of the Plaintiff and Mr. Cicek, the Bank established a joint banking account (the "Joint Account") in the name of Mrs. Guirlando and Mr. Cicek

   c.     In connection with the establishment of the Joint Account that the Plaintiff and her husband executed the Joint Account Agreement

   d.     In connection with the establishment of the Joint Account that the Plaintiff and Mr. Cicek provided the Bank with their passports, drivers licenses and marriage certificate at the time they executed the Joint Agreement

   e.     That the Bank will consent to a lawsuit by plaintiff in Turkey

31.     I have reviewed and rely on copies of the following documents:

   a.     The Summons and Complaint

   b.     Joint Account Agreement

   c.     Documents used to open the joint account, including Mrs. Guirlando and Mr. Cicek's marriage certificate, and drivers

licenses, passports, specimen signature and identification
information cards for both Mrs. Guirlando and Mr. Cicek

d.      Mrs. Guirlando and Mr. Cicek's customer bank book for
the joint account

e.      Various banking laws, codes and communiqués, as cited
below

**F.      Analysis of the case**

<u>Whether Mrs. Guirlando Has Alleged a Viable Claim</u>

32.      I have reviewed the Joint Agreement, whose title literally translated is "disjunctive

ownership joint account agreement".

33.      The Joint Agreement conforms with the requirements of Turkish law.  It is a

"deposit account agreement" (*mevduat hesabı sozlesmesi*), the content and framework of which

are regulated by the "Communiqué issued by the Banks' Association of Turkey [*Turkiye Bankalar

Birligi*] on Minimum Content and Format Requirements for Agreements Signed between Banks

and their Individual Customers and on the Principles and Procedures relating to Banking

Transactions to be covered by such Agreements" (Articles II, III and IV). Further see also

Banking Law, No. 5411 Article 76 al. 2 and Communiqué on Terms and Kinds of Deposit and

Participation Funds, No. 2007/1, Article 3.   The Joint Agreement fully conforms to the

requirements of the Communiqué.

34.      Thus, the terms of the Joint Agreement comply with Turkish law.

a.      <u>The Bank's Duty at the Time of Account Opening</u>

35.      I am informed that the plaintiff criticizes the conduct of the Bank at the time of

account opening.  In particular, she asserts that the Bank improperly opened the account even

though the Plaintiff did not have a Turkish national identity number; that the Bank did not warn

her of certain risks associated with the Joint Account, i.e., that her husband could unilaterally

withdraw; or that her husband was "a criminal," "a swindler" and "a bigamist"; and that the Bank did not disclose certain information about the Plaintiff's husband.  In my opinion, these allegations do not support a claim against the Bank

36.     The Bank was not required to seek a national identity number from the Plaintiff. Under the legislation referred to in paragraph 33, banks generally cannot open "deposit ………accounts…for customers that do not document their identities and tax numbers."  The rule, however, is different for foreign nationals:  Turkish law authorizes banks to open accounts for foreign nationals without a tax number under the General Communiqué No. 3 on Tax Identity Numbers (*Vergi Kimlik Numarası Genel Tebligi*) upon presentation of the passport.

37.     The Bank was not required to highlight any particular risk.  Under normal circumstances, a bank employee who is requested to open an account, presents the customer with the "standard contract" (in this case, the Joint Account Agreement) for examination.   The bank employee, of course, must answer questions that the customer asks, but he is under no obligation to interrogate the customer to determine that he or she understands the account opening "standard contract."

38.     When the text of the Joint Account Agreement is read, it is seen that "each of the account owners is entitled to exercise right of disposition unilaterally over the joint account (withdrawal, transaction orders, account closing, transfer of the account to another branch etc.) and exert authority over the account as specified by the present agreement with his/her individual signature. Further under the Joint Account Agreement each of the account owners has accepted and undertaken the liabilities that may result from the use of the account by the other account owner" (Article 1).

39.    Thus, the Joint Account clearly identifies the "risk" that Mrs. Guirlando claims should have been disclosed.

40.    In practice when a foreign national (non-Turkish speaking person) requests to open an account jointly with a Turkish-speaking person there is a presumption that Turkish-speaking person has given the proper information on the account to his partner, particularly if the partner is a spouse.   To this end, when a husband and wife seek to establish a joint account, bank employees will usually ask for a copy of the "Certificate of Marriage Registration".  I am informed that this document was provided at the time the Joint Account was opened.

41.    When the present case is examined, it is observed that the copies of Mrs. Guirlando's passport and driver license, her husband's passport and his driver license and "Certificate of Marriage Registration" were presented to the bank when the joint account agreement was signed.

42.    Beyond the formalities abovementioned under  section B a bank officer who would open a joint account is not under any duty to check or disclose the civil status of the account owners or whether s/he has a bad reputation or a criminal record (*sabıka kaydı*)

43.    Under normal circumstances, when married couples apply for opening a joint deposit account, a bank officer is not expected to disclose the bad reputation of one of the spouses to the other spouse even he has knowledge on the bad reputation. Such a conduct contradicts the "nature of the thing".

        b.    <u>A Bank does not have a "fiduciary" duty toward depositors</u>

44.    Under Turkish law, banks and their personnel must ensure that their activities are performed in compliance with Banking Law, No. 5411 and applicable regulations.  Banks must also ensure that their aims and policies comply with ethical principles that take justice, fairness,

honesty and social responsibility as a basis in their management.  (Article 75 Banking Law, No.

5411).  Plaintiff has not alleged any act on the part of the Bank that violates this standard.

45.     Further, under the "Code of Banking Ethics" prepared by Banks' Association of

Turkey in accordance with Banking Law, No. 5411 (Articles 75, 80 subpara. [c] and [e] and 81

para. 3), banks are required to stick to the honesty principle in their relations with their customers

during their operations. They are under the duty to offer clear, comprehensible and correct

information to their customers. Moreover, banks should inform their customers in an open, easily

understandable and clear way regarding the rights and responsibilities, benefits and risks attached

to the services offered to them (Code of Banking Ethics, Article 3 a, b, c, d: "principles of

honesty, impartiality, reliability and transparency").  The Joint Account Agreement fulfills this

requirement.

46.     Turkish banks have a duty to protect of their customers' rights as reflected in

paragraphs 41 and 42, but a "fiduciary" relationship -- in the sense that term is understood in the

Common Law system -- does not exist between the bank and its customer regarding bank

accounts.

47.     Therefore I am of the opinion that as a consequence of accepting Mrs. Guirlando's

check for deposit, Ziraat Bankası has not placed itself in a fiduciary relationship with Mrs.

Guirlando.  Rather, the Bank became obligated to process that check in accordance with usual

bank procedures and to thereafter conduct itself in accordance with the terms of the Joint

Agreement.    Ziraat Bankası, therefore, owed a duty of care to Mrs. Guirlando with regard to

collecting the funds and depositing them in the joint account.  Consequently I am of the opinion

that Ziraat Bankası has not breached any duty to Mrs. Guirlando by failing to inform her

specifically when the funds became available or by permitting her husband to withdraw  proceeds

without Mrs. Guirlando's knowledge.  In fact, had the Bank refused to permit Mrs. Guirlando's

husband to unilaterally withdraw proceeds, the Bank would have breached its contract in violation

of law as the Joint Agreement provides, at Article 1, that "each one of the owners is entitled to

exercise right of disposition unilaterally over the joint account (withdrawal, transaction orders,

account closing etc)."

48.      In sum, I am of the opinion that Mrs. Guirlando has not alleged a viable claim

under Turkish law respecting either the establishment of the Joint Account, its operation, or the

Bank's communication with her.

c.      An Alternative Forum:  The Adana Commercial Courts are Competent
          Courts with Jurisdiction Over This Dispute

49.      Article 13 of the Joint Account Agreement permits parties to designate a competent

court (*yetkili mahkeme*) for the settlement of a dispute arising out of their agreement.  In the

present case, the parties   left the space for this designation blank, thereby failing to specify a

competent court of their choosing.

50.      According to the provisions of the Code of Civil Procedure, No. 1086 on

"competence" of courts (*salahiyet, yetki*), in the absence of agreement to the contrary, an action

shall be brought in the court of the place deemed under the Turkish Civil Code, No.4721 of 2001

to be the domicile of the defendant at the date when the action is initiated. (Article 9)

51.      Nevertheless, in the event that legal entities have branches at different places, a

lawsuit involving transactions of a branch office (with the exception of bankruptcy cases) may be

filed at the place where the branch office is located. (Code of Civil Procedure, Article 17)

52.      Therefore, in the present case the competent court shall be Adana courts as the

Ziraat Bankası Eski Istasyon Branch is located in Adana. Thus, any dispute between the parties

arising from the Joint Agreement shall be handled by Adana courts. However, Mrs. Guirlando can

also initiate a lawsuit before Ankara courts as the headquarters of Ziraat Bankasi is located in

Ankara. (Code of Civil procedure, Article 9)

53.    As regards the jurisdiction, Adana commercial courts have jurisdiction to hear such

a case under the Turkish Commercial Code, No. 6762 (Article 4, No. 6) as banking transactions

are "commercial transactions" subject to the jurisdiction of commercial courts.

        d.    <u>Turkish Courts Would Apply Turkish Law to this Case</u>

54.    If this case would be brought before a commercial court in Adana, the court would

apply substantive Turkish law (banking legislation, Code of Obligations, Code of Civil Procedure

etc.) to the case.  Claimant may assert breach of the Joint Account Agreement as a contract claim

or lack of ordinary care by Bank employees as a tort claim.

55.    If claimant asserts and proves the breach of Joint Account Agreement by the Bank

she can request compensation plus legal interest and damages for pain and suffering (Code of

Obligations, Articles 96 et seq.; for immaterial damages Article 49). In such a case the Bank

employee is an auxiliary with regard to the performance of the Joint Account Agreement (Code of

Obligations, Article 100). If her claim is based on tort (lack of ordinary care by the Bank

employees) the same remedies are available. In such a case the Bank's employee and the Bank are

jointly liable (Code of Obligations, Articles 41 and 55).

56.    As mentioned above, however, it is my opinion that the facts alleged and known

would not establish a viable claim under Turkish law.

        e.    <u>No Statute of Limitations or Other Obstacles Bar Plaintiff From Bringing a</u>
           <u>Case in Adana's Commercial Courts</u>

57.    If this case would be initiated in Turkey the claims to be asserted by Mrs.

Guirlando will be based on the "Joint and Several Account Agreement" and the banking

legislation as well as Code of Obligations. Under the Code of Obligations, the statute of

limitations is ten years for such claims (Article 125). The statute of limitations starts to run when

the claim becomes due. However, if a claim is due upon giving notice, the statute of limitations

starts to run on the day for which notice may be given. (Article 128)

58.    If Mrs. Guirlando is the prevailing party, she can collect the amount of

compensation and trial costs from the Bank. "The legal fee as a part of judgment" (ucreti vekalet)

ascertained by the court to be given to the prevailing party's attorney can also be collected by

prevailing party unless otherwise agreed in the "attorney-client agreement". In practice this kind

of legal fee is usually left to the successful attorney.

59.    Thus, the courts in Turkey remain open to Mrs. Guirlando.

   f.    <u>The Remedies Available to Plaintiff is she is Successful in a Turkish Lawsuit</u>

60.    In Joint and Several Accounts (*Teselsüllü Ortak Hesap*)  the account owners are

"joint and several obligees" under the Code of Obligations (Article 148). According to provisions

of Article 148 "joint and several rights among several obligees arise if an obligor (the bank)

declares that he wishes each one of them to be entitled to the whole claim. The performance in

favor of one of the joint obliges releases the obligor with regard to all of them."

61.     Mrs. Guirlando is entitled to compensatory damages (i.e. the amount withdrawn

by Mr. Cicek from the joint and several account) plus legal interest if she proves Ziraat Bankası's

breach of the covenant good faith, due care and fair dealing (negligence on the part of the bank

under the agreement).

62.    As regards "compensation for pain and suffering" (or "immaterial damages") it can

be claimed in cases of death, infringement of personality rights, violation of bodily and moral

integrity, psychological distress caused by the defendant's negligence according to Article 49 of

the Code of Obligations.  To claim immaterial damages (pain and suffering ), the plaintiff has to

prove(1) negligence on the part of the defendant , (2) her immaterial damages (i.e. emotional distress based on medical reports) and (3) the adequate connection between the negligence of the defendant and her immaterial damages (Code of Obligations, Article 49).

63.    Under Turkish law, court judgments are enforced in accordance with the provisions of the Code of Enforcement and Bankruptcy, No. 2004 (as amended) (*Icra ve Iflas Kanunu*) (Article 32 et seq.).  If Mrs. Guirlando is successful in the case, she can enforce her judgment in accordance with these provisions.

64.    In Turkish law the concept of "punitive damages" does not exist as in many Continental jurisdictions.

g.    Evidentiary Means

65.    In civil and commercial cases evidentiary means can be grouped as follows: documents, witness testimony, expert's opinion and site or subject-matter inspections.

66.    Under the Code of Civil Procedure the parties of a lawsuit may present documentary evidence (written agreement, letters, faxes, protocols, account records, written instruments etc.) (Article 287 et seq.).

67.    Documentary evidence is rather preferred in commercial cases. In such lawsuits each party is requested to submit to the court and other party a list of documents upon which it relies.

68.    Witnesses may be compelled to testify.  A subpoena served on a witness contains the names of the parties, the place and time of the testimony, and the subject-matter upon which he or she will be asked to testify.  A witness must appear before the court for testimony.  A witness who fails to obey a subpoena without a good reason may be fined by the court and may be held liable for any costs caused by a delay in the trial. A witness who does not comply with a subpoena may be brought to court by force. (Article 253)

69.     The judge can compel any Turkish citizen to testify as a witness. Nevertheless according to Article 245 of the Code of Civil Procedure, some persons can refuse to testify (e.g. the husband or wife of either party; descendants, ancestors and relatives of either party within third degree by consanguinity or affinity; professional persons who obtain confidential information in the course of a professional relationship, unless the person who gave such information allows to reveal it etc. )

70.     Where a court needs information on issues requiring special and technical knowledge one or more experts can be appointed by the court. The expert's opinion is given to the clerk's office and served upon the parties by the court.  (Article 282)  In practice particularly in commercial cases expert's examination is rather common.

71.     Except where the specifically provided otherwise, the court can weigh the evidence in its discretion. (Article 240)

h.     Length of Time Between Filing This Case in a Turkish Court and Judgment

72.     According to my experience as a practicing lawyer and an expert appointed by the commercial courts such a case needs at least one or one and half years excluding the appeal before the Court of Cassation until the judgment become final (res judicata). The date of hearing before the Court of Cassation (*Yargitay*) is usually six months to one year after the appeal request. Under some circumstances (urgent cases based on just grounds) the appeal hearing can be accelerated. Foreign citizenship is not a ground for acceleration.

i.     Evidence from police officers

73.     I am advised by counsel that Turkish police officers may be called as witnesses or their records subpoenaed because Mr. Cicek was investigated by the police and released.

74.     Under the Turkish Code of Criminal Procedure, No. 5271 (*Ceza Muhakemesi Kanunu*) of 4 December 2004 a person can be arrested only by a warrant of arrest issued by a

criminal justice of peace upon the request of a public prosecutor if one of the grounds of arrest

exists in a concrete case. (Articles 100-101)  In the warrant of arrest the ground for arrest should

be indicated. (Article 101)  Police officers have the power only to carry out arrest warrants (Law

on Duties and Authority of Police Force, No. 2559 [*Polis Vazife ve Selahiyet Kanunu*] as amended

by the Laws, No. 5259 and 588, Additional Article 6 and By-laws on Judicial Police (*Adli Kolluk*

*Yönetmeligi* in Official Gazette No. 25567 of 1 December 2004).  If the police are in possession of

documents relevant to this case, the court can request those documents from police headquarters.

Courts may request any document related to the case before them from any public authority.

Courts may compel police officers to appear as witnesses.

> j.    The Availability of Evidence in Aid of an Action Pending in New York

75.    Turkey is a signatory to the Hague Convention on Taking Evidence Abroad in

Civil or Commercial Matters.  As such, Turkey offers limited assistance to litigants in foreign

proceedings.  In response to a Letter of Request, properly issued, translated and transmitted,

Turkey's courts will assist in the collection of evidence.  It will direct the delivery of documents

and it, that is the Turkish court, will propound questions to witnesses.

76.    Two limitations merit emphasis.  First, Turkish courts will assist in the collection

of evidence, but not in US style discovery.  Thus, documents or testimony sought must be directly

relevant to a case or defense; and documents must be identified with precision.  Second, Turkish

courts will not authorize depositions.  Rather, Turkish Courts will ask witnesses specific questions

that are set out in the Letter of Request; and advocates may not question witnesses, either in direct

or in cross-examination.

77.    In my experience, Turkish courts require a year or more to fulfill a Letter of

Request.

**G.     Conclusion**

78.     As explained above:

79.     The Joint Account Agreement among Mrs. Guirlando, her husband, Mr. Cicek and Ziraat Bankası Adana Branch was concluded according to a "standard agreement" drafted within the framework of the Banks Association of Turkey and complies with the legal requirements under banking legislation.

80.     According to this Joint Account Agreement Mrs. Guirlando and Mr. Cicek are entitled to exercise the right of disposition unilaterally over the account.

81.     Mrs. Guirlando consented to her husband's unilateral disposition right by signing the agreement.

82.     The bank officer who opened this account has exercised the due care by requesting and receiving the necessary documents for such accounts from the account owners (i.e. copies of passports, driver licenses, Certificate of Marriage Registration, signatures of the owners).

83.     A Bank officer is not under a duty to check or comment on the civil status and criminal records of account owners.

84.     Based on the allegations of the Complaint and the facts on which I have been asked to rely, Mrs. Guirlando does not state a claim that a Turkish court would recognized.

85.     Mrs. Guirlando may, however, seek to plead a claim before Turkish courts for compensation if she can prove that Ziraat Bankası's breach of the covenant good faith, due care and fair dealing; nevertheless, "punitive damage" cannot be claimed under Turkish law.

86.     "Competent courts" are Adana courts; nevertheless Mrs. Guirlando can also initiate the lawsuit before Ankara courts as the headquarters of Ziraat Bankasi is located in Ankara.  The courts having jurisdiction" to hear Mrs. Guirlando's case are commercial courts.

87.   No statute of limitation or other obstacles bar Mrs. Guirlando from bringing a case at Turkish courts.

88.   The substantive law to be applied to the case by the court is Turkish banking legislation and provisions of the Code of Obligations.  Under these laws Mrs. Guirlando can bring claims for breach of contract (duty of care) and negligence.  The remedies that can be claimed are compensatory damages plus legal interest, and immaterial damages if its requirements are proved.

89.   The concept of "punitive damages" does not exist in Turkish law.

90.   I prepared this Opinion based upon my personal knowledge and experience and declare under penalty of perjury under the laws of the United States of America that its contents are true and correct.

Dated: February 11, 2008
       Istanbul, Turkey


Signed: _____
        PROF. DR. ERGUN ÖZSUNAY

- 22 -

# EXHIBIT A

The**Turkish**Link

# TRANSLATOR'S CERTIFICATION
# TERCÜME TASDİĞİ

STATE OF NEW YORK

COUNTY OF NEW YORK }SS

Evren Ay, being duly sworn, deposes and says:

I hereby certify that the texts on the attached pages are the exact translations of each other. I further certify I am proficient in both languages and that I have conducted the translation either from the given English text into Turkish or from the given Turkish text into English.

Ekteki sayfalardaki metinlerin birbirinin doğru tercümeleri olduğunu ve her iki lisana vakıf yeminli bir tercüman olduğumu beyan ederim. Ayrıca bu tercümeyi verilen İngilizce metni Türkçe'ye veya verilen Türkçe metni İngilizce'ye bizzat çevirerek yaptığımı da beyan ederim.

Evren Ay
Translator (Tercüman)

*SWORN TO BEFORE ME THIS*
25th day of JANUARY , 2008

Donna A. Harrison
(Notary Public)

DONNA A. HARRISON
Notary Public, State of New York
No. 01HA5062926
Qualified in Kings County
Commission Expires July 8, 2010

*{TRANSLATORS NOTE: Only the marked sections of the attached original Turkish documents have been translated.}*

# TURKISH CONSTITUTION

## A. Independence of the Courts

**Article 138 -** Judges shall be independent in the exercise of their duties; they shall render judgment with the Constitution, law, and their personal conviction conforming to the law.

No organ, authority, office or individual may give orders or instructions to courts or judges relating to the exercise of judicial power, or send them circulars, make recommendations or suggestions.

No questions shall be asked, debates held, or statements made in the Legislative Assembly relating to the exercise of judicial power concerning a case under trial.

Legislative and executive organs and the administration shall comply with court decisions; these organs and the administration shall neither alter them in any respect, nor delay their execution.

## TURKISH CODE OF OBLIGATIONS

| | |
|---|---|
| **Code Number** | **: 818** |
| **Date of Admission** | **: 4/22/1926** |
| **Published in the Official Gazette** | **: Date: 5/8/1926      Number: 366** |
| **Published in Code Book** | **: Design : 3    Volume: 7    Page: 762** |

**Article 41 -** A person who inflicts a damage to another on purpose or with neglect or imprudence in an unlawful manner is liable from the loss occurred.

One who intentionally gives harm to another by an immoral act is also liable for the compensation.

### II – Determination of damages

**Article 42 -** Whoever claims damages must prove the amount of damages sustained. Damages which cannot be established in amounts shall be assessed by the judge in his discretion, having regard to the ordinary course of events and the measures taken by the damaged party.

### III - Determination of compensation

**Article 43 -** The judge shall determine the nature and amount of compensation for the damage sustained, taking into account the circumstances as well as the degree of fault. After the damages sustained has been determined as described above, the compensation due will be collected from the obligor.

### 3 - Infringement of personal interests

**Article 49 – (Amended: 5/4/1988 – 3444/8)** An individual whose personality right has been infringed upon unlawfully may request a sum of money as compensation for his immaterial damage.

The judge in determining the amount of the immaterial damage, takes into consideration the title, position held and other socio-economic conditions of the parties.

The judge may award other kind of satisfaction in lieu of payment of a sum of money or together with satisfaction in money. He may also render a judgment rebuking the infringement and announcement of rebuke judgment through press to the public.

### VI - Joint liability

**Article 50 -** Where several persons have jointly caused damage, whether as instigators, principals, or accessories, they shall be jointly liable to the damaged party. The judge, in his discretion, shall determine whether and to what extent they have a right to recourse against one another.

An abettor shall be liable only if, and only to the extent that, he shall have received a share of the profit or shall have caused damage by his participation.

## 3 - Liability of auxiliary persons

**Article 100 -** If an obligor, even though authorized, has performed an obligation, or exercised a right arising out of an obligation, through an auxiliary person who lives together with him or employed by him, the obligor must compensate the other party for any damages caused by the acts of the auxiliary person during this work.

## 1 – Ten year statute of limitations

**Article 125 -** After ten years all claims are forfeited because of the statute of limitations except where this Code specifically provides otherwise.

## TURKISH CIVIL CODE

**Good faith**

**Article 2** - Everyone is under the duty of good faith when exercising their rights and performing their obligations. An evident abuse of a right is not protected by the law.

# CODE OF CIVIL PROCEDURE

## Jurisdiction

**Article 9** - A case shall be brought in the court of the place deemed under the Civil Code to be the domicile of the defendant at the date when the action is brought. If the domicile of the defendant is not determined, the case is handled by the courts of the last place the defendant was domiciled while in Turkey.

If there is more than one defendant, the case should be brought in the court of any one of these defendants; unless there is a court that has been determined by law, due to the nature of the case, to have jurisdiction over all of the defendants. If the case is determined to have been filed in a court, in order to bring a defendant to a court that the defendant does not belong to, by means of evidence or indications, the court shall separate the case against the said defendant and will rule for lack of jurisdiction.

In divorce or separation cases, the court that has jurisdiction will be the court of the domicile that the plaintiff or their spouse has lived for during the last 6 months of their union.

**Article 17** - In the event that a real or legal entity has branches of business at different places, a lawsuit involving transactions of a branch, with the exception of bankruptcy cases, may be filed at the place where the branch office is located. The cases of firms, institutions and foundations relating to their members and the cases of members against other members, will be handled by the local court that the firm, institution or foundation is located at.

**Article 240** - Except where the law specifically provided otherwise, the judge shall weigh the evidence in his discretion.

**Article 253 – .........**

A judge may decide that a witness who does not comply with a subpoena be brought to court by force.

165

lerine aykırı görürse, yerine getirmez ve bu aykırılığı o emri verene bildirir. Ancak, üstü emrinde ısrar eder ve bu emrini yazı ile yenilerse, emir yerine getirilir; bu hâlde, emri yerine getiren sorumlu olmaz.

Konusu suç teşkil eden emir, hiçbir suretle yerine getirilmez; yerine getiren kimse sorumluluktan kurtulamaz.

Askerî hizmetlerin görülmesi ve acele hallerde kamu düzeni ve kamu güvenliğinin korunması için kanunla gösterilen istisnalar saklıdır.

### ÜÇÜNCÜ BÖLÜM
#### Yargı

##### I. Genel hükümler
###### A. Mahkemelerin bağımsızlığı

Madde 138 – Hakimler, görevlerinde bağımsızdırlar; Anayasaya, kanuna ve hukuka uygun olarak vicdanı kanaatlerine göre hüküm verirler.

Hiçbir organ, makam, merci veya kişi, yargı yetkisinin kullanılmasında mahkemelere ve hakimlere emir ve talimat veremez; genelge gönderemez; tavsiye ve telkinde bulunamaz.

Görülmekte olan bir dava hakkında Yasama Meclisinde yargı yetkisinin kullanılması ile ilgili soru sorulamaz, görüşme yapılamaz veya herhangi bir beyanda bulunulamaz.

Yasama ve yürütme organları ile idare, mahkeme kararlarına uymak zorundadır; bu organlar ve idare, mahkeme kararlarını hiçbir suretle değiştiremez ve bunların yerine getirilmesini geciktiremez.

###### B. Hakimlik ve savcılık teminatı

Madde 139 – Hakimler ve savcılar azlolunamaz, kendileri istemedikçe Anayasada gösterilen yaştan önce emekliye ayrılamaz; bir mahkemenin veya kadronun kaldırılması sebebiyle de olsa, aylık, ödenek ve diğer özlük haklarından yoksun kılınamaz.

Meslekten çıkarılmayı gerektiren bir suçtan dolayı hüküm giymiş olanlar, görevini sağlık bakımından yerine getiremeyeceği kesin olarak anlaşılanlar veya meslekte kalmalarının uygun olmadığına karar verilenler hakkında kanundaki istisnalar saklıdır.

###### C. Hakimlik ve savcılık mesleği

Madde 140 – Hakimler ve savcılar adli ve idari yargı hakim ve savcıları olarak görev yaparlar. Bu görevler meslekten hakim ve savcılar eliyle yürütülür.

Hakimler, mahkemelerin bağımsızlığı ve hakimlik teminatı esaslarına göre görev ifa ederler.

Hakim ve savcıların nitelikleri, atanmaları, hakları ve ödevleri, aylık ve ödenekleri, meslekte ilerlemeleri, görevlerinin ve görev yerlerinin geçici veya sürekli olarak değiştirilmesi, haklarında disiplin kovuşturması açılması ve disiplin cezası verilmesi, görevleriyle ilgili veya görevleri sırasında işledikleri suçlarından dolayı soruşturma yapılması ve yargılanmalarına karar verilmesi, meslekten çıkarmayı gerektiren suçluluk veya yetersizlik halleri ve meslek içi eğitimleri ile diğer özlük işleri mahkemelerin bağımsızlığı ve hakimlik teminatı esaslarına göre kanunla düzenlenir.

*Code of Obligations*

## BORÇLAR KANUNU

**Kanun Numarası        : 818**
**Kabul Tarihi          : 22/4/1926**
**Yayımlandığı R. Gazete: Tarih : 8/5/1926  Sayı : 366**
**Yayımlandığı Düstur   : Tertip : 3  Cilt : 7  Sayfa : 762**

*Bu Kanunun yürürlükte olmayan hükümleri için bakınız*
*"Yürürlükteki Bazı Kanunların Mülga Hükümleri Külliyatı",*
*Cilt:1                    Sayfa:109*

BİRİNCİ KISIM
*Umumi hükümler*
BİRİNCİ BAP
*Borçların teşekkülü*
BİRİNCİ FASIL
*Akitten doğan borçlar*

(A) AKDİN İNİKADI
I – İki tarafın muvafakati
*1 – Umumi şartlar*
**Madde 1 –** İki taraf karşılıklı ve birbirine uygun surette rızalarını beyan ettikleri takdirde, akit tamam olur.

Rızanın beyanı sarih olabileceği gibi zımni dahi olabilir.
*2 – İkinci derecedeki noktaların meskût kalması:*
**Madde 2 –** İki taraf akdin esaslı noktalarında uyuşurlar ise ikinci derecedeki noktalar sükûtun geçilmiş olsa bile akde münakit olmuş nazariyle bakılır.

İkinci derecedeki noktalar hakkında uyuşulamadığı takdirde hakim, işin mahiyetine bakarak onları tayin eyler.

Akitlerin şekillerine müteallik hükümler mahfuzdur.
II – İcap ve kabul
*1 – Kabul için müddet tayini*
**Madde 3 –** Kabul için bir müddet tayin ederek başka kimseye bir akdin yapılmasını teklif eden kimse, bu müddetin hitamına kadar icabından dönemez. Bu müddet bitmeden evvel kabul haberi kendisine yetişmezse, icap ile bağlı kalmaz.
*2 – Kabul için müddet tayin olunmaksızın icap*
*a) Hazırlar beyninde*
**Madde 4 –** Kabul için bir müddet tayin olunmaksızın hazır olan bir şahsa karşı vaki olan icap derhal kabul olunmadığı takdirde, onu yapan bağlı kalmaz. İki taraf yahut vekillerinin bizzat telefon ile yapılkları akitlere hazırlar arasında icra olunmuş nazariyle bakılır.
*b) Gaipler arasında:*
**Madde 5 –** Hazır olmayan bir şahsa karşı müddet tayin olunmaksızın dermeyan olunan icap, zamanında ve muntazam surette irsal olunmuş bir cevabın vusulüne intizar edebileceği dakikaya kadar, onu yapanın hakkında lüzum ifade eder.

KANUNLAR, ARALIK 2005 (Ek-64)

575

III - Mahfuz hükümler

Madde 40 — Şirket mümessili ve memurlarının ve tüccar vekillerinin salâhiyetleri hakkında hükümler mahfuzdur.

İKİNCİ FASIL

*Haksız muamelelerden doğan borçlar*

(A)  UMUMİ KAİDELER

I. Mesuliyet şeraiti

Madde 41 — Gerek kasten gerek ihmal ve tesoyyüp yahut tedbirsizlik ile haksız bir surette diğer kimseye bir zarar ika eden şahıs, o zararın tazminine mecburdur.

Ahlâka mugayir bir fiil ile başka bir kimsenin  zarara uğramasına bilerek sebebiyet veren şahıs, kezalik o zararı tazmine mecburdur.

II - Zararın tâyini

Madde 42 — Zararı ispat etmek müddeiye düşer, zararın hakiki miktarını ispat etmek mümkün olmadığı takdirde hâkim, halin mutat cereyanını ve mutazarrır olan tarafın yaptığı tedbirleri nazara alarak onu adalete tevfikan tâyin eder.

III - Tazminat miktarının tâyini

Madde 43 — Hâkim, hal ve mevkiin icabına ve hatanın ağırlığına göre tazminatın suretini ve şumulünün derecesini tâyin eyler.

Zarar ve ziyan irad şeklinde tâyin olunduğu takdirde borçludan icabeden teminat alınır.

IV - Tazminatın tenkisi

Madde 44 — Mutazarrır olan taraf zarara razı olduğu yahut kendisinin fiili zararın ihdasına veya zararın tezayüdüne yardım ettiği ve zararı yapan şahsın hal ve mevkiini ağırlaştırdığı takdirde hâkim, zarar ve ziyan miktarını tenkis yahut zarar ve ziyan hükmünden sarfınazar edebilir.

Eğer zarar kasden veya ağır bir ihmal veya tedbirsizlikle yapılmamış olduğu ve tazmini de borçluyu müzayakaya maruz bıraktığı takdirde hâkim, hakkaniyete tevfikan zarar ve ziyanı tenkis edebilir.

V - Hususi haller

*I — Adam ölmesi ve cismanizarar*

*A)  Ölüm takdirinde zarar ve ziyan*

Madde 45 — Bir adam öldüğü takdirde zarar ve ziyan, bilhassa defin masraflarını da ihtiva eder. Ölüm, derhal vukubulmamış ise zarar ve ziyan tedavi masraflarını ve çalışmağa muktedir olamamaktan mütevellit zararı ihtiva eder.

Ölüm neticesi olarak diğer kimseler müteveffanın yardımından mahrum kaldıkları takdirde, onların bu zararınıda tazmin etmek lâzımgelir.

*B)  Cismani zarar halinde lâzımgelen zarar ve ziyan*

Madde 46 — Cismani bir zarara düçar olan kimse  külliyen veya kısmen çalışmağa muktedir olamamasından ve ileride iktisaden maruz kalacağı mahrumiyetten tevellüt eden zarar ve ziyanını ve bütün masraflarını isteyebilir.

Eğer hükmün süduru esnasında, kâfi derecede kanaat ile cismani zararın neticelerini tâyin etmek mümkün değil ise; hükmün tefhimi tarihinden itibaren iki sene zarfında hâkimin, tetkik salâhiyetini muhafaza etmeğe hakkı vardır.

**KANUNLAR, HAZİRAN 1988 (EK - 2)**

*Code of Obligations*

576

C) *Manevi tazminat*

Madde 47 — Hâkim, hususi halleri nazara alarak ciamani zarara düçar olan kimsoyo yahut adam öldüğü takdirde ölünün ailesine manevi zarar namiyle adalete muvafık tazminat verilmesine karar verebilir.

8 — *Haksız rekabet*

Madde 48 — Yanlış ilânlar yahut hüsnüniyet kaidelerine mugayir sair hareketler ile müşterileri tenakus eden yahut bunları gaip etmek korkusuna maruz olan kimse bu fiillere hitam verilmesi için faili aleyhinde  dâva ikame ve failin hatası vukuunda sebebiyet verdiği zarara tazminini talep edebilir.

(Ek : 29/8/1956 - 6763/41 md.) Ticari işlere ait olan haksız rekabet hakkında Ticaret Kanunu hükümleri mahfuzdur.

3 — *Şahsî menfaatlerin haleldar olması*

Madde 49 — (Değişik : 4/5/1988 - 3444/8. md.)

Şahsiyet hakkı hukuka aykırı bir şekilde tecavüze uğrayan kişi, uğradığı manevi zarara karşılık manevi tazminat namiyle bir miktar para ödenmesini dava edebilir.

Hâkim, manevi tazminatın miktarını tayin ederken, tarafların sıfatını, işgal ettikleri makamı ve diğer sosyal ve ekonomik durumlarını da dikkate alır.

Hâkim, bu tazminatın ödenmesi yerine, diğer bir tazmin sureti ikame veya ilâve edebileceği gibi tecavüzü kınayan bir karar vermekle yetinebilir ve bu kararın basın yolu ile ilânına da hükmedebilir.

VI - *Müteselsil mesuliyet*

1 — *Haksız fiil halinde*

Madde 50 — Birden ziyade kimseler birlikte bir zarar ika ettikleri takdirde müşevvik ile asıl fail ve feran methali  olanlar, tefrik edilmeksizin müteselsilen mesul olurlar. Hâkim, bunları birbiri aleyhinde rücu hakları olup olmadığını takdir ve iabında bu rücuun şumulünün derecesini tâyin eyler.

Yataklık eden kimse, vakı olan kârdan hisse almadıkça yahut iştirakiyle bir zarara sebebiyet vermedikçe mesul olmaz.

8 — *Muhtelif sebeplerin içtimaı halinde*

Madde 51 — Müteaddit kimseler muhtelif  sebeplere (haksız muamele, akit, kanun) binaen mesul oldukları takdirde haklarında, birlikte bir zarar vukuuna sebebiyet veren kimseler hakkındaki hükümlere göre muamele olunur.

Kaideten haksız bir fiili ile zararı sebebiyet vermiş olan kimse en evvel, tarafından hata vaki olmamış ve üzerine borç alınmamış olduğu halde kanunen mesul olan kimse en sonra, zamân ile mükellef olur.

VII - *Meşru müdafaa, ıztırar ve kendi hakkını vikaye için kuvvet kullanılması*

Madde 52 — Meşru müdafaa halinde mütecavizin şahsına veya mallarına yapılan zarardan dolayı tazminat lâzım gelmez.

Kendisini veya diğerini zarardan yahut derhal vukubulacak bir tehlikeden vikaye için başkasının mallarına halel iras eden  kimsenin borçlu olduğu tazminat miktarını hâkim, hakkaniyete tevfikan tâyin eder.

Kendi hakkını vikaye için cebrî kuvvete müracaat eden kimse hal ve mevkie nazaran zamanında hükûmetin müdahalesini temin edilmediği yahut hakkının ziyaa uğramasını yahut hakkının kullanılması hususunun pek çok müşkül olmasını meni için başka vasıtalar mevcut olmadığı takdirde, bir güna tazminat itasiyle mükellef olmaz.

VIII - *Ceza hukuku ile medeni hukuk arasında münasebet*

Madde 53 — Hâkim, kusur olup olmadığına yahut haksız fiilin faili temyiz kudretini haiz bulunup bulunmadığına karar vermek için ceza hukukunun mesuliyete dair ahkâmiyle bağlı olmadığı gibi, ceza mahkemesinde verilen beraet kararıyle de

ederim

583

odebilir. Tevdii edilen şeyin istirdadı ile beraber, alınacak bütün teferrüatiyle yeniden tevellüt eder.

*ı — Borcun mevzuu bir şey olmadığı suretto*

**Madde 04** — Borcun mevzuu bir aynın teslimini tazammun etmediği suretto eğer alacaklı mütemerrit ise borçlunun temerrüdüne mütaallik hükümlere tevfikan, borçlu akdi feshedebilir.

## (İV) BORCUN İFASINA MANİ OLAN DİĞER SEBEPLER

**Madde 85** — Verilecek şey ve yapılacak iş ne alacaklıya nede alacaklıya mütaallik şahsî diğer bir sebeple ifmünasilline arz edilemez veya borçlunun kusuru olmaksızın alacaklının şahsında tereddüt olunursa borçlu, alacaklının temerrüdü halinde olduğu gibi tevdi etmek veya akdi fesheylemek hakkını haizdir.

### İKİNCİ FASIL

*Borçların Ödenmemesinin neticeleri*

## (A) BORCUN İFA EDİLMEMESİ

### I - Borçlunun mesuliyeti

*J — Umumiyet itibariyle*

**Madde 00** — Alacaklı hakkını kısmen veya tamamen istifa edemediği takdirde borçlu kendisine hiç bir kusurun isnat edilemiyeceğini ispat etmedikçe bundan mütevellit zararı tazmine mecburdur.

*2 — Bir şeyin yapılması veya yapılmaması borçları*

**Madde 97** — Bir şeyin yapılmasına mütaallik borç borçlu tarafından ifa edilmediği takdirde, alacaklı masrafı borçluya ait olmak üzere borcun kendisi tarafından ifasına izin verilmesini talep edebilir. Her türlü zarar ve ziyan dâvası hakkı mahfuzdur.

Bir şeyin yapılmamasına taallük eyleyen borca muhalif surette hareket eden kimse mücerret muhalefet ile zarar ve ziyanı tediyesine mecburdur.

Bundan başka alacaklı taahhüde muhalif olarak yapılan şeyin ref'ini isteyebilir. Alacaklı, masrafları borçluya ait olmak üzere, kendisi tarafından ref'a izin verilmesini de isteyebilir.

### II — Mesuliyetin vüsati

*J — Umumiyet itibariyle*

**Madde 98** — Borçlu, umumiyet itibariyle her kusurdan mesuldur. Bu mesuliyetin vüsati işin hususi mahiyetine göre çok veya az olabilir. Hususiyle iş borçlu için bir faideyi mucip olmadığı suretto, mesuliyet daha az şiddetle takdir olunur.

Hukuku fiillerden mütevellit mesuliyete mütaallik hükümler, kıyasen akde muhalif hareketlerede tatbik olunur.

*2 — Mesuliyetten beraat şartı*

**Madde 99** — Hile veya ağır kusur halinde düçar olacağı mesuliyetten borçlunun iptidaen beraetini tazammun edecek her şart, batıldır.

Hafif kusur halinde, borçlu iptidaen mesuliyetten beraeti tazammun eden şartın dermeyanı sırasında alacaklı borçlunun hizmetinde ise veya mesuliyet hükümet tarafından imtiyaz suretiyle verilen bir sanatin icrasından tevellüt ediyorsa; haiz olduğu takdir salâhiyetine istinat ile hâkim, bu şartı batıl addedebilir.

*3 — Muavin şahısların mesuliyeti*

**Madde 100** — Bir borcun ifasını veya bir borçtan mütevellit bir hakkın kullanılmasını kendisi ile beraber yaşıyan şahıslara veya maiyetinde çalışanlara velev kanuna muvafık surette tevdi eden kimse, bunların işlerini icra esnasında ika ettikleri zarardan dolayı diğer tarafa karşı mesuldür.

*Code of Obligations*

587

(H)  TAKAS :

I - Şartları

*1 — Umumiyet itibariyle*

Madde 118 — İki şahıs karşılıklı bir miktar meblâğı veya yekdiğerine mümasil başka malları birbirine borçlu oldukları takdirde, her iki borç muaccel ise iki taraftan her biri borcunu alacağı ile takas edebilir.

Alacaklardan biri, münazaalı olan bile takas dermeyan olunabilir.

Müruru zamana uğramış bir alacak, takas dermeyan edebileceği zamanda müruru zaman ile sâkit olmuş değil ise onun da takası dermeyan olunabilir.

*2 — Kefalet halinde*

Madde 119 — Asıl borçlunun takası dermeyan etmeğe hakkı oldukça, kefil alacaklıya tediyede bulunmaktan imtina edebilir.

*3 — Üçüncü şahıs lehine taahhüt halinde*

Madde 120 — Bir üçüncü şahıs lehine taahhütte bulunan kimse borcunu, diğer âkidin kendisine borçlu olduğu şey ile takas edemez.

*4 — Borçlunun iflâsı halinde*

Madde 121 — Borçlunun iflâsı halinde alacaklılar, muaccel olmasa bile alacaklarının müflisin kendilerinde olan alacağı ile takas edebilirler.

II - Hükümleri :

Madde 122 — Takas, ancak borçlunun takası dermeyan etmek kastini alacaklıya bildirmesiyle vâki olur.

Bu takdirde iki borç takas edilebilecekleri andan itibaren en az olan borcun miktarı nispetinde sâkit olmuş addolunur.

Hesabı cari meselesinde ticarete mütealilik hususi taammüller bakidir.

III - Takası kabil olmıyan alacaklar :

Madde 123 — Aşağıdaki alacaklar, alacaklıların arzusu hilâfında takas ile ıskat edilemez.

1 — Tevdi edilmiş veya haksız olarak alınmış veya hile ile alıkonulmuş bulunan bir şeyin iadesine veya bedeline taallûk eden mutalebeler.

2 — Nafaka ve iş ücreti gibi borçlunun ve ailesinin iaşesi için mutlak surette zaruri olup hususi mahiyeti itibariyle fiilen alacaklının eline verilmesi icap eden alacaklar.

3 — Devlet ve vilâyet ve köyler lehine olarak hukuku âmmeden neşet eden alacaklar.

IV - Takastan feragat :

Madde 124 — Borçlu, iptidaen takastan feragat edebilir.

(V)  MÜRURU ZAMAN :

I - Müddetler :

*1 — On senelik müruru zaman*

Madde 125 — Bu kanunda başka suretle hüküm mevcut olmadığı takdirde, her dâva on senelik müruru zamana tâbidir.

*2 — Beş senelik müruru zaman*

Madde 126 — Aşağıdaki alacak veya dâvalar hakkında beş senelik müruru zaman cari olur :

The Istanbul Chamber of Commerce
Phone: 90.212.511 41 50 Fax: 90.212...

*Turkish Civil Code*

# TÜRK KANUNU MEDENİSİ

Kanun No. 743

Yayın tarihi : 4 Nisan 1926
Yürürlük tarihi : 4 Ekim 1926

## BAŞLANGIÇ

### A. Kanunu Medenînin tatbiki

MADDE 1 — Kanun, lâfziyle veya ruhiyle temas ettiği bütün meselelerde meridir. Hakkında kanunî bir hüküm bulunmayan meselelerde hâkim örf ve âdete göre, örf ve âdet dahi yoksa kendisi şâride hâkim olsa idi bu meseleye dair nasıl bir kaide vazedecek idiyse ona göre hükmeder.

Hâkim, hükümlerinde ilmî içtihatlardan ve kazaî kararlardan istifade eder.

* ZC51.
* BCK 61 II 96, JAT 1985 I 61; BCE 87 II 355, JAT 19621 354; BCE 68 II 677, JAT 19621 355; BCE 93 II 461, JAT 1967 1232; BCE 95 II 442, JAT 1970 I 464; BCE 100 II 3, JAT 19751 63; BCE 105 II 14, JAT 19791481.

### B. Medenî hakların şümulü. — I. Umumî vazifeler.

MADDE 2 — Herkes haklarını kullanmakta ve borçlarını ifada hüsnüniyet kaidelerine riayetle mükelleftir.

Bir hakkın sırf gayrı izrar eden suiistimalini kanun himaye etmez.

* ZC42; ZC40 742, 157.
* BK 20.2.1950 içn kkz. AK, 67,68; not: BK 92.1955 içn kkz. AK, 154; daki not; IBK 25.1.1958 içn kkz. AK, 62; not. IBK 18.11.1959 içn kkz. AK, 146; daki not; IBK 22.5.1962 içn kkz. BK, m. 161; daki not; IBK 30.9.1958, 2/2, 106; daki not; IBK 13.12.1965 içn kkz. AK, m. 169; daki not; IBK 8.11.1991, 4/4, KG, 21125; içn kkz. AK 3375 a ded.; didi not.

Medenî Kanun—1

---

## ADLİYE ENCÜMENİ MAZBATASI

Adliye Vekâletine evrakı tâm ve iltizastan mürekkep bir komisyonun mahsus sanitesiyle kvcire Kanunu Medenîsinden nukian vücude getirilen işbu lâyiha Encümenimize havale edilmiş olmakla bazı mühim celseler. Başvekil İcmal Paşa Hazretlerinin, beyeti umumiyesi de Adliye Vekili Mahmut Esat Beyefendi ve nezdile komisyonu âzasından Kanunu Medenî müdevvini Velyüddin Bey hazırlıkıyle celseda olundu. Lâyihi mezkûre âyemın menafili müzeamefinde meri lavamini medeniyenin en mükemmeli olan kvcire Kanunu Medenîsinden naklediliniş olmasına ve liburs ettiği tihân esasat eedileden başyın medeniye ve içtimaiye ve beinediyenizde asrı hazır icabatına göre pek mühim ve lazrâ isarı inhilâbâl husule getirecek ve berhalde asrı işbariyle hükümetimizin mesip olan nokta nazarı Encümenimizce de tenvip edildikten sonra maddeler birer birer mütalâa ve ibraz eden izhâlat okunmamış ibmat edilecek aynen kabul edilmiştir.

İşbu lâyihanın silikdrazunca hüsnü telhan ve tarhiki zımnında tezkira eden tecihirin vekâlesi müşarünileyhince şimdiden ibrar edilmekle olduğuna gehir olan Encümen kanunu mevtki tatbika vezma kadar iznar edilmiş müddet zarfında bu babda daha yesi ve müessir tedbirler itibaz edileceği kanaatini ibrar ile lâyihai kanuniyeyi Heyeti umumiyeye hazzıyle.

**Encümen Reisi**
Saruhan
Mustafa Fevzi

| | | |
|---|---|---|
| Kâtip | Âza | Âza |
| Sereian | Denizli | Kastamon |
| Kemal | Necib Ali | Necmeddin |

| | | |
|---|---|---|
| Âza | Âza | Âza |
| Kastamonu | Konya | Konya |
| Hasan Fehmi | Tevfik Fikret | Refik |

| | | |
|---|---|---|
| Âza | Âza | Âza |
| Çorum | Karesi | Sinop |
| Münir | Osman Niyazi | Yusuf Kemal |

İşbu lâyihanın mazbata muharriri
Mardin
Şükrü Kaya

| | |
|---|---|
| Âza | Âza |
| Bozok | Hamdi |

| | |
|---|---|
| Âza | Âza |
| Antalya | Ahmet Saki |

*Code of Civil Procedure*

## 1. BÖLÜM

# HUKUK USULÜ MUHAKEMELERİ KANUNU

Kanun No: 1086

(RG: 2, 3, 4/7/1927, sa. 622, 623, 624;
Düstur: 3 üncü Tertip, Cilt 8, s. 1559 - 1656)

24

| Madde | Fıkra | Değiştiren Kanun No: | Madde | Fıkra | Değiştiren Kanun No: |
|---|---|---|---|---|---|
| 275 | | 2494 | 435 | | 2494 |
| 278 | III | 3156 | 437 | | 2494 |
| 281 | | 2494 | 438 | I | 3156 |
| 286 | II | 5020 | 438 | II | 5219 |
| 288 | | 5219 | 438 | III - IX | 1711 |
| 289 | | 1711 | 440 | | 1711 |
| 290 | | 5219 | 440 | I/1 | 2494 |
| 313 | | 2790 | 440 | I/2 - 4 | 1711 |
| 319 | | 2790 | 440 | II | 1711 |
| 337 | | 3156 | 440 | III | 5219 |
| 377 | | 3156 | 442 | III | 2790 |
| 381 | | 3156 | 442/A | | 2494 |
| 388 | | 3156 | 442/A | | 2611 |
| 391 | | 2661 | 443 | V | 2248 |
| 392 | | 2661 | 445 | I/11 | 4793 |
| 398 | | 2606 | 445 | II | 2494 |
| 400 | | 2606 | 445/A | | 4793 |
| 401 | | 2606 | 448 | III | 4793 |
| 409 | | 3156 | 454 | | 2790 |
| 411 | | 2606 | 458 | | 2606 |
| 412 | | 2790 | 489 | | 3156 |
| 422 | | 2790 | 490 | | 2606 |
| 427 | I, VI - VIII | 2494 | 507 | | 1711 |
| 427 | II - V | 5219 | 547 | | 2606 |
| 429 | | 2494 | 549 | | 2661 |
| 432 | I | 3156 | 566 | I | 5219 |
| 432 | II - V | 2494 | 566 | II | 2494 |
| 433 | | 2494 | 573 | bent 7 | 1539 |
| 434 | | 2494 | 576 | | 27 |

*Code of Civil Procedure*

---

30    Hukuk Usulü Muhakemeleri Kanunu

Hukuk Usulü Muhakemeleri Kanunu    31

## İKİNCİ KISIM
### Salâhiyet

MADDE 9. Her dâva, kanunda aksine hüküm bulunmadıkça açıldığı tarihte dâvalının (karş. MK m.25,V) Türk Medeni Kanunu gereğince (MK m. 19, 21, 51) ikametgâhı sayılan yer mahkemesinde görülür. Dâvalının ikametgâhı belli değilse, dâvaya Türkiye'de son defa oturduğu yer mahkemesinde bakılır.

Dâvalı birden fazla (m. 43) ise, dâva bunlardan birinin ikametgâhı mahkemesinde açılır. Şu kadar ki, kanunda dâva sebebine göre dâvalıların tamamı hakkında ortak yetkiyi taşıyan bir mahkeme belli edilmiş ise, dâvaya o mahkemede bakılır. Ancak dâvanın, sırf dâvalılardan birini kendi mahkemesinden başka bir mahkemeye getirmek amacıyla açıldığı belirtilir veya başka delillerle anlaşılırsa mahkeme onun hakkındaki dâvayı ayırarak yetkisizlik kararı verir.

Boşanma veya ayrılık dâvalarında yetkili mahkeme, dâvacının (karş. MK m. 168) ikametgâhı (MK m. 21) veya eşlerin dâvadan evvel son defa altı aydan beri birlikte oturdukları yer mahkemesidir.

(Karş. CMUK m.8 vd. IVUK m. 32, 33)

Not: UK m. 8

MADDE 10. Dâva, mukavelenin icra olunacağı (BK m. 73) veyahut müddeialeyh veya vekili dâva zamanında orada bulunmak şartiyle akdin vukubulduğu mahal mahkemesinde de bakılabilir.

(Karş. İİK m. 50)

[handwritten text in margin]

---

II- Dâva konusu olan şeyin değerine bakılmaksızın:

1. İcra ve İflâs Kanununun onuncu babında yer alan 269 ve 272 nci ve sonraki maddeleri hükümleri hariç olmak üzere, kira sözleşmesine[10] dayanan her türlü tahliye, akdin feshi yahut tespit davaları, bu davalarla birlikte açılmış kira alacağı ve tazminat davaları ve bunlara karşı dâva olarak (m. 203 - 208) açılan davalara,

2. Taşınır ve taşınmaz mal veya haktan paylaştırılmasına[11] ve ortaklığın giderilmesine (m. 569) ait davalara (m. 566),

3. Taşınır ve taşınmaz mallarda yalnız zilyetliğin korunması ile ilgili davalara[12],

4. Borçlar Kanununun 91, 92 nci maddelerinde mahkemeye veya hâkime verilen işleri[13],

5. Mirasçılık belgesi[14] verilmesi hakkındaki isteklerle, bu belgenin değiştirilmesi veya iptali davalarına[1516]

III- Bu[17] ve diğer kanunların[18] sulh mahkemesi veya hâkimi sıfatıyla görevlendirdiği dâva ve işleri,

görür[19].

---

kesinlik sınırının çok düşük olması davaların gereksiz yer uzamasına ve Yargıtay'ın aşYüklenişi, birazmeye neden olmaktadır. Gönümüzün ekonomik koşulları ve yaparım koşullunda asga nima güne göre önünde mucarak Hukuk Usulü Muhakemeparakanın başka yer alan parasal sınırların artırılmasına uygun olacağı değerlendirilmektedir.

[10] BK m. 248 vd., 270 vd., 6570 s. K. m. 2; m. 12, III.

[11] MK m. 699, m. 642 vd.; HUMK m. 561 vd.

[12] MK m. 982 - 984, 992, II.

09.01.2003 gün ve 4787 s. K. ile değişik.

[13] MK m. 598.

Bkz. ayrıca Kadastro K. m. 25.

[14] 09.01.2003 gün ve 4787 s. K. ile değişik.

HUMK m. 65, 492, 527, 554, 561, 570.

[15] Bkz. madde: Kat Mülkiyeti K. m. 33, 24, 28, III, Ek 1; 1163 sayılı Kooperatifler K. m. 21, III; 1219 sayılı Tababet ve Şuabatı Sanatlarının Tarzı İcrasına Dair K. m. 71; 4081 sayılı Çiftçi Mallarının Korunması Hakkındaki K. m. 26; 18.9.1981 gün ve 2526 sayılı Kanun m. 7. Ayrıca, kaza konusu ve kuruluşunca belirlenecek kira bedellerine karşı itiraz mercii olarak sulh hukuk mahkemesinin görevi için bkz. 2912, 3012, 3151 ve 3204 sayılı Kanunlar.

[16] Bu madde 5.4.1985 tarihinden sonra açılacak davalarda uygulanır (bkz. 3156 s. K. geçici madde). «Yeniden düzenlenen 8 inci maddenin birinci fıkrasında sulh mahkemesinde halledilmesi öngörülmüştür (Hükümet gerekçesi-II).

*Code of Civil Procedure*

## Page 32

**Hukuk Usulü Muhakemeleri Kanunu**

**MADDE 11.** Aşağıdaki davalar müteveffa müteveffa ikametgâhı mahkemesinde görülür (MK m. 576):

1. Terekenin taksimine[20] ve kısmetin butlan ve feshine (MK m. 628) ve mirasçılar arasında terekenin idaresine (MK m. 640) ait iddialar,

2. Terekenin taksimi kabline kadar (MK m. 676 vd.) tereke aleyhine olunan davalar.

Terekeden bir mal hakkında istihkak davası (MK m. 637 vd., 576), terekenin tahriri ve tesbiti (MK m. 589, 590) zamanında mal nerede bulunur ise orada dahi ikame olunabilir.

Veraseta ispatına[21], miras hisselerinin (MK m. 495 vd.) tüylünler müstedai davalar, mirasçıların her birinin bulunduğu mahal mahkemesinde de rüyet olunabilir.

- Niş. UK m. 9       (Bkz. MÖHUK m.39)

**MADDE 12.** Haczi ihtiyatiden (İİK m. 257,268) sonra haciz kararının müstenidi olan alacak davası (İİK m. 264) haciz kararını vera mahkemede (İİK m. 258, 59) de ikame olunabilir.

- Niş. UK m. 10

**MADDE 13.** Gayrimenkule (AKK m. 704) müteallik davalar[22], gayrimenkulün bulunduğu mahal mahkemesinde ikame olunur.

Gayrimenkule müteallik dava sebebi ne olursa olsun gayrimenkulün aynına veya gayrimenkul üzerinde bir hakka veya mocvakkat olsa bile zum zilyedliğine (MK m. 973 vd.) veyahut hakta hapsine (MK m. 950-953) müteallik olunlardır. İrtifak haklarına (MK m. 779 vd.) dair iddialarda, üzerine irtifak hakkı tesislik eden maho bulunduğu mahal mahkemesi salâhiyettardır.

Dava birden ziyade gayrimenkule sit ise gayrimenkullerden birinin bulunduğu mahal mahkemesinde ikame olunur.

- Niş. UK m. 11     (Keş. İYUK m. 34)

20  Bkz. MK m. 642 vd.; HUMK m. 561 vd.
21  Bkz. HUMK m. 8,195; MK m. 598.
22  Buradaki «gayrimenkule müteallik davalar» terimi, «gayrimenkulün aynına ilişkin davalar» olarak anlaşılmalıdır.

## Page 33

**Hukuk Usulü Muhakemeleri Kanunu**                33

**MADDE 14.** Davayı asliyenin ikame olunduğu mahkeme davaya müteakibiyye (m. 203-208) dahi bakmağa salâhiyetardır.

- Niş. UK m. 12

**MADDE 15.** Bir dâva münasebetiyle iki taraf vekillerinin ücret ve masraf iddiaları, miktarı her neye baliğ olursa olsun o dâvaya bakan mahkemede görülür[23].

**MADDE 16.** Türkiye dâhilinde maslın ikametgâhı (MK m. 19, 21, 51) olmayanlar aleyhindeki mal dâvaları Türkiye'de sâkin oldukları mahal mahkemesinde (MK m. 20, II) ve Türkiye'de maslın mezkezi yoksa emvâlinin veya emvâlinin taşınmış şeyin veya teminatı varsa o teminatın bulunduğu mahal mahkemesinde bakılır.

- Niş. UK m. 13

**MADDE 17.** Hakiki veya hükmi bir şahsın müteallif mahaller-de şubeleri[24] bulunduğu takdirde o şubesin muamelesinden doğaya, iflas davası müstena (İİK m. 154, III) olmak üzere, o şubenin bulunduğu mahalde dahi dâva olunabilir. Şirket ve cemiyetlerin ve vakıfların (MK m. 101) kendi işlerine müteallik olmak üzere izası aleyhine ve izazın bu sıfatla yediğeri aleyhlerine ikame edecekleri dâva bu şirket cemiyef ve vakfın ikametgâhı addolunan (MK m. 51) mahal mahkemesinde bakılır.

**MADDE 18.** (Bu hüküm MÖHUK m. 46 ile yürürlükten kaldırılmıştır. Bugün aynı konuyu MÖHUK m. 28 düzenlemektedir).

**MADDE 19.** Sigorta mukavelesinden mütevellit taznimat dâvası sigorta (TK m. 1269 vd.) emvâli gayrimenkuleye veya munyyen bir yerde kalması şart kalınan emvâli menkuleye müteallik ise emvâli mütikürenin bulunduğu ve vaziyeti icabı müstakâr olmayan emvâli müteallik ise, tehlikenin hâdis olduğu ve hayat sigortalarında (TK m. 1321-1333) sigorta olunan şahsın ikametgâhının (MK m. 19 vd.) bulunduğu mahallerde dahi ikame edilebilir.

23  Bu hüküm, Av. K. m 167 ile konusuz kalmıştır.
24  Bkz. TK m. 42, 50, 117, 300, 37.

*Code of Civ. Procedure*

## Page 94

**Hukuk Usulü Muhakemeleri Kanunu**

**MADDE 237.** Kaziyei muhkeme, ancak mevzuunu teşkil eden husus hakkında muteberdir.

Kaziyei muhkeme, mevzuunu teşkil eden hususun münakaşasını önler.

Kaziyei muhkeme, mevzuunu teşkil eden hususun münakaşasını önler.

Kaziyei muhkeme, mevzuunu teşkil eden hususun münakaşasını önler.

Kaziyei muhkeme, mevzuunu teşkil eden hususun münakaşasını önler. Kaziyei muhkeme, mevzuunu teşkil eden hususun iki tarafın ve müddeabihin ve istinat olunan sebebin (m. 179/3) müttehit olması lâzımdır.

- Nâş. UK m. 211

**MADDE 238. Delil** davanın halline tesir edebilecek münazaalı hususları (m. 216, c. 2) ispat için ikame olunur.

Mürafi ve meşhur olan veya ikrar olunan (m. 236) hususlar münazaalı sayılmaz[5].

- Nâş. UK m. 212

**MADDE 239. Delil** ikamesiyle mükellef olan veya aczhur ve müruf bir vakıaya (m. 238, II) istinat eden tarafın iddiası hilâfını ispat için hasım delil ikame edebilir. Fakat mükerrer bu talebiyle beyninin kendisine müterettib olduğunu kabul etmiş addolunmaz.

- Nâş. UK m. 213

**MADDE 240. Bu** kanunun (tâyin ettiği haller[6] müstesna olmak üzere hâkim ikame olunan delilleri serbestçe takdir eder (m. 286).

- Nâş. UK m. 214    (Kar, m. 4285, & MK m. 184)

**MADDE 241. Kanunun** tâyin ettiği istisnalardan maada hallerde delilleri hâkim huzurunda icra ve tetkik olunur (m. 243) ve mahkemede veya haricinde icra olunan tetkikler ve muameleler tafsilen zabıt varakasına (m. 151) yazılır.

Şahit (m. 245 vd.) ve ehlivukufa (m. 275 vd.) müddeasını ispat edecek taraf evvelemirde hangi husus dair bunların isticvap olunacaklarını tâyin eder.

- Nâş. UK m. 215

[5]  Kar, MK m. 184.
    Bkz. HUMK m.236, 237, 288 vd. 344 vd.

## Page 95

**Hukuk Usulü Muhakemeleri Kanunu**

**MADDE 242. İki** taraf istinat ettikleri bilumum vesikaları müfredat pusulası ile beraber mahkeme kalemine verir (m. 180, 200, II). Bunlardan hâkim tarafından tetkike şayan görülenleri dosyanın vaz ile diğerleri iade olunur.

İbrazına karar verilecek vesika, ibraz edecek taraf yedinde bulunuyorsa işbu kanun ahkâmına tevfikan (m. 326 vd.) celp ve tetkik olunur. Tahkikat hâkimi icabına göre vesikanın diğer bir mahkeme marifetiyle tetkikine da karar verebilir.

- Nâş. UK m. 216

**MADDE 243. İki** taraftan her birinin beyan eylediği deliller mümkün olduğu kadar aleni[7] celsede tetkik olunur (m. 149, 241).

Bu surette tetkikatın ikmali kabil olmazsa ikmali için icap eden celseleri hâkim tâyin eder.

- Nâş. UK m. 218

**MADDE 244. İkame** ve beyan olunan delillerin tamamen istima ve tetkikinden sonra 221 nci madde hükmüne tevfikan iycra tahkikat icrasına karar verilmeyen meselelerde (m. 216) iki taraftan her biri yeni delil ibraz ve ikamesini istiyebilir. Hâkim muvafık görürse bu talebi kabul eder (bkz. m. 311).

- Nâş. UK m. 219

### İKİNCİ KISIM
### Şahadet

**MADDE 245. Aşağıdaki** kimseler şahadetten imtina edebilirler:

1. İki taraftan birinin nişanlısı (MK m. 118),

2. Aralarında evlilik rabıtası mürtefi olsa bile iki taraftan birinin karı veya kocası,

[7]  Bu kelime, Kaynak Nöşteü Usul Kanunu'nda (m. 218) olduğu gibi aynı (bir, tefe iyi şilinde anlaşılmalıdır.

*Code of Civil Procedure*

## 98

### Hukuk Usulü Muhakemeleri Kanunu

İstima sebeplerini (m. 245, 246) tahriren beyan eden veya kâtibe zaptettiren şahit muayyen günde mahkemede hazır bulunmayabilir.

Mahkeme yazı işleri müdürü[a], gerek tahriri olsun gerek zaptedilmiş bulunsun şahidin istima hakkındaki beyanını iki tarafa tebliğ eder.

(Kars, CMUK m. 51)

**MADDE 251.** Şahidin istima sebebi (m. 245, 246) hakkında hâkim iki tarafı dinleyip bu haftaki delil tetkik ettikten sonra kararını verir.

**MADDE 252.** Şahadetten istima ettiğini bildirmiş olan (m. 250) şahit muayyen günde gelmezse beyanatı okunarak tetkik olunur.

**MADDE 253.** Yukarıdaki maddelerde gösterilen hükümler mahsuz kalmak şartiyle şahadet için çağrılan herkes gelmeğe mecburdur. Meşru sebep olmaksızın dâvete icabet etmiyen şahit onbeş liraya kadar cezayı nakdiye mahkûm edilir ve gelmemesi mahkemenin talikını mucip olmuş ise talikten mütevellit masarifi muhakemenin de de mahkûm edilebilir.

Hâkim gelmeyen şahidin kuvvel cebriye ile ihzar edilmesine dahi karar verebilir.

- Nös, UK m. 223

(Kars, CMUK m. 45; HK m. 12)

**MADDE 254.** Şahidin dâvada menfaati bulunmak gibi şahadetin doğruluğundan şüpheyi mucip esbab mevcut olursa, bunu iki tarafdan her biri iddia ve ispat edebilir.

(Kars m. 273)

- Nös, UK m. 224

**MADDE 255.** Şahitler tahkikat hâkimi (arafından istima olunur. Hasta veya mahil olmasından dolayı mahkemeye gelemiyen şahidi hâkim ikametgahında dinler (m. 154, Yön. m. 33).

[a] Bkz. şek. m. 34 almdaki dn. 6.
* Bu para cezası zamlılmıştır (Bkz. İle Türk Ceza Kanunu Ek m. 1-5).
* emekahcmenine olmakdır.

## 99

### Hukuk Usulü Muhakemeleri Kanunu

Şahidin istima sırasında mühim bir sebebe binaen hâkim tarafından hilâfına karar verilmiş olmadıkça iki taraf hazır bulunabilir.

- Nös, UK m. 225

**MADDE 256.** Müstesna hallerde, iki tarafın muvafakatları ve hâkimin tensibiyle, tâyin olunacak müddet zarfında ceraplarını tahriren beyan etmek üzere şahide bir sual varakası gönderilebilir. Bu surette muamele yapılması şahidin vereceği cevabın hükme kâfi olup olmadığına hâkimin takdir etmesine mâni olamaz.

- Kars, UK m. 226

**MADDE 257.** Şahidin bulunduğu mahal mahkemesi marifetiyle de istinabesi karar verilebilir (m. 267)[10]. Bu takdirde tâyin olunan gün ve saatte hazır bulunması (m. 253) için şahide tebligat icra olunur. İki tarafa da malûmat verilir (m. 255, II).

- Nös, UK m. 227

**MADDE 258.** Şahitler aleyhsal tebliğ olunacak dâvetiye ile mahkemeye çağrılır (m. 253). Dâvetiyede iki tarafın isimleri ve hangi hususu ispat için mahkemeye çağrıldığı ve hangi gün ve saatte hazır bulunulacağı yazılır.

Tebliğ muhakeme gününden lâakal iki gün evvel icra olunmak lâzımdır.

Müstacel işlerde şahidin daha evvel gelmesine karar verilebilir.

- Nös, UK m. 228

**MADDE 259.** Gayrimenkule (MK m. 704) müteallik hususlarda ve şahidin irae suretiyle şahadetinden hakikatın daha ziyade zâhire çıkacağı mezrun olan diğer hallerde şahitlerin mahallinde istimasına (m. 365) karar verilebilir.

- Nös, UK m. 231

(Bkz. m. 154, Yön. m. 33)

> Büyük şehir belediye sınırları içerisinde davayı görmekte olan mahkeme, kısa zamanlık olmadıkça bu belediye sınırları içerisinde bulunan şahidinin istinabe yolu ile dinlenilmesine karar veremez (3156 sayılı Kanunla HUMK'na ilâve edilen Ek madde 1).

# EXHIBIT B

# Prof. Dr. Ergun Özsunay
# (CV)

Prof. Dr. Ergun Özsunay graduated from the *Istanbul University School of Law*. Then he attended graduate studies at *Harvard Law School* and  received an LL.M. degree from Harvard in 1960. In 1962 and 1963, he attended the *Faculté Internationale pour l'Enseignement de Droit Comparé* in Strasbourg. He studied also in *Max-Plack Institut für auslaendisches-und internationales Privatrecht* in Hamburg (1964-1965).

Drç. Özsunay translated the lectures of Professor Alfred F. Conard (1959) and Professor E. Allan Farnsworth (1961) when they were visiting professors in İstanbul.

Prof. Özsunay was appointed associate professor of law in 1965; he became a full professor in 1973. He served as the Director of the *Institute of Comparative Law of Istanbul University* from 1978-1985.

Professor Özsunay is the author of several books, including the *Introduction to Civil Law, Legal Status of Persons, Legal Entities, Introduction to Comparative Law* and *Cartel Law*. He represented Turkey at the Diplomatic Conferences for the Convention on Agency in International Sale of Goods in Geneva (1983); the Convention on the Law Applicable to Contracts for the International Sale of Goods at the Hague (1985); and the Convention on International Factoring and Financial Leasing in Ottawa (1988).

Prof. Özsunay is at present Vice President of the *International Association of Legal Science* (I.A.L.S./A.I.S.J) (Paris) and Chairman of the Middle East and African Law Group at the *International Academy of Comparative Law* (Paris), member of the *International Association of Procedural Law* (Ghent), corresponding member of *Deutsche Gesellschaft für Rechtsvergleichung* (Freiburg/Br.) and collaborating member of *UNIDROIT* (Rome).

Professor Özsunay is also active as an international arbitrator in commercial disputes mostly as an ICC arbitrator.

Professor Özsunay serves at present as the Turkish delegate in the *CDBI of the Council of Europe* (Strasbourg); in the UNCITRAL Working Groups II (Arbitration) and VI (Security Interests) and in the *Commission on Competition* and *Commission on E- Business, Telecoms and IT* (EBITT) at the ICC as the representative of the Turkish National Committee to ICC

Professor Özsunay has been practicing  law in several fields of law (e.g. corporations, foreign investments, international business law, intellectual and industrial property law, cartel and competition law, medical law, product liability law, enforcement of foreign judgments etc.)

# Prof. Dr. Ergun Özsunay

Cumhuriyet Cad. 239 K. 8
TR-34367 Harbiye İstanbul
Tel.     + 90 (212) 233-6519
Tel.     + 90 (212) 224-0449
Faks    + 90 (212) 246-7327

Ergun Özsunay * Cumhuriyet Cad. 239 K. 8 * TR-34367 Harbiye İstanbul

## YAYIN LİSTESİ

### TEZLER

1. Türk Hukukunda ve Mukayeseli Hukukta İnançlı Muameleler, Doktora Tezi, İstanbul, 1968, XXXII+260 s.

2. Zaruri Geçit Hakkı (Türk Hukukunda ve Mukayeseli Hukukta), Doçentlik Tezi, İstanbul, 1968, XXXIV+251 s.

### KİTAPLAR

1. Ticari İşletmede Kiracılık Hakkının Korunması: TTK m. 11/II Üzerine Bir Araştırma, Ankara, 1962, XVI+96 s.

2. Medeni Hukukumuzda Tüzel Kişiler: Tüzel Kişilerin Genel Teorisi/Dernekler/Vakıflar, 5. Bası, İstanbul, 1982, LVI+478 s.

3. Medeni Hukuk Dersleri, C.I (Prof. Dr. Aytekin Ataay ve Prof. Dr. Selahattin S. Tekinay'la birlikte), İstanbul, 1967-1970 (İktisat Fakültei öğrencileri için hazırlanmış olan bu eserin "Tüzel Kişiler" (s. 167-240/4) ve "Miras Hukuku" (s. 1-80) bölümleri Prof. Dr. Özsunay tarafından yazılmıştır).

4. Gerçek Kişilerin Hukuki Durumu, 5. Bası, İstanbul, 1982, XLIII+261 s.

5. Medeni Hukuka Giriş, 5. Bası, İstanbul, 1986, XXVII+376 s.

6. Medeni Hukuk Pratik Çalışmaları I: Medeni Kanunun Başlangıç Hükümleri/Kişiler Hukuku/Aile Hukuku, İstanbul, 1970, 216 s.

7. Medeni Hukuk Pratik Çalışmaları II: Miras Hukuku/Borçlar Hukuku/Eşya Hukuku, İstanbul, 1970, XVI+424 s.

8. Karşılaştırmalı Hukuka Giriş, İstanbul, 1976, XXXII+370 s.

9. Borçlar Hukuku Dersleri I: Giriş/Hukuki Muamelelerden Doğan Borçlar/Nedensiz Zenginleşme, 2. Bası, İstanbul, 1983, XX+228 s.

10. Bankacılık Yönünden Medeni Hukuk Kuralları, İstanbul, 1978, XXX+436 s.

11. Kartel Hukuku: Çeşitli Ulusal Hukuklarda ve AET'de Karteller, Rekabeti Sınırlayıcı Uygulamalar ve "Pazara Egemen Teşebbüsler"e Yönelik Önlemler ve Bir "Türk Kartel Kanunu" İçin Yönlendirici Öneriler, İstanbul, 1985, XXXII+369 s.

12. New Turkish Trade Mark Law, ITO Publications: 1995-30, İstanbul, 1995, 49 s.

## ETÜD VE MAKALELER

1. Evlilik Dışı Çocuk Adına Kayyım Tarafından Açılan Babalık Davasında Dava Süresinin Başlangıcı, İHFM, C. XXVIII, Sayı: 2, İstanbul, 1962, s. 508-525.

2. Zaruri Geçit Hakkı Kavramı ve Kanuni Şartları, İHFM, C. XVIII, Sayı: 3-4, İstanbul, 1963, s. 751-789.

3. MK 296'daki Bir Yıllık Dava Süresinin Geçirilmesine Rağmen Babalık Davasının İstisnaen Açılabileceği Durumlar, İHFM, C. XXIX, Sayı: 1-2, İstanbul, 1963, s. 218-237.

4. Zaruri Geçit Hakkında "Tazminat" Meselesi, İst.BD, C. XXXVI, Sayı: 11-12, İstanbul, 1963, s. 306-313.

5. Fransız Hukukunda Kredi Teminatı Olarak "Ticari İşletmenin Rehni", BATİDER, C. II, Sayı: 4, Ankara, 1964, s. 567-586.

6. Karayolları Trafik Kanunumuzdaki Büyük Bir Boşluk: Çalınan veya Araç Sahibinin İzni Dışında Kullanılan Motorlu Taşıt Araçlarının Yapmış Oldukları Zararlardan Doğan Hukuki Sorumluluk, İHFM, C. XXX, Sayı: 3-4, İstanbul, 1964, s. 827-860.

7. Araç Sahibinin Hatır İçin Ücretsiz Taşıdığı veya Aracını Hatır İçin Ücretsiz Olarak Kullandırdığı Şahıslara Karşı Sorumluluğu, İHFM, C. XXXII, Sayı: 1, İstanbul, 1966, s. 161-186.

8. 1961 Tarihli "Aile Hukukuna İlişkin Hükümlerin Değiştirilmesi ve Birleştirilmesi Hakkında Kanun"la (FamRAendG) Alman Evlat Edinme Hukukuna Getirilen Yenilikler, İHFM, C. XXXII, Sayı: 1, İstanbul, 1966, s. 191-218.

9. Almanya'da Tahkim, Banka ve Ticaret Hukuku Araştırma Enstitüsü, IV. Ticaret ve Banka Hukuku Haftası, 29 Kasım-4 Aralık 1965, Bildiriler-Tartışmalar, Ankara, 1966, s. 577-619.

10. Trafik Kazasında Zarar Gören Üçüncü Şahsın Sigortacıya Karşı Doğrudan Doğruya Alacak Hakkı, İHFM, C. XXXII, Sayı: 2-4, İstanbul, 1967, s. 906-933.

11. Araç Sahibinin Fiil ve Davranışlarından Sorumlu Olduğu Şahıslar, BATİDER, C. IV, Sayı: 1, Ankara, 1967, s. 1-64.

12. Aynı Trafik Kazasında Birden Fazla Şahsın Zarara Uğraması Halinde Sigorta Bedelinin Zarar Gören Üçüncü Şahıslar Arasında Paylaştırılması, MHAD, Yeni Seri, Yıl 1, Sayı: 1, İstanbul, 1967, s. 109-121.

13. Yugoslav Aile Hukukunda Evlenme ve Boşanma, MHAD, Yeni Seri, Yıl 3, Sayı: 4, İstanbul, 1969, s. 141-163.

14. Yugoslav Hukukunda Evlat Edinme, MHAD, Yeni Seri, Yıl 3, Sayı: 5, İstanbul, 1969, s. 113-124.

15. Student Power in Universities: Turkey, American Journal of Comparative Law, Vol. 17, No. 3, 1969, s. 378-383.

16. İsviçre Hukukunda Demiryollarının İşletilmesinden Doğan Zararlardan Dolayı Sözleşme Dışı Sorumluluk, MHAD, Yeni Seri, Yıl 5, Sayı: 8, İstanbul, 1971, s. 31-49.

17. Trafik Hukukunda Zarar Giderimi Sorumlusu Olarak "İşleten" (Araç Sahibi) Kavramına İlişkin Bazı Sorunlar, BATİDER, C. VI, Sayı: 1, Ankara, 1971, s. 83-110.

18. Türk Hukukunda Zaruri Su Hakkı (MK 683), Ankara Hukuk Fakültesi Özel Hukuk Enstitüsü, "Su Kaynaklarının Kullanılması Hakkında Kanun Tasarısı", 27-29 Ocak 1970, Ankara, 1972, s. 213-245.

19. Lisans Sözleşmelerinde Lisan Bedeline (Royalty) İlişkin Sorunlar, "Cumhuriyet Döneminde Hukuk", 50. Yıl Armağanı, İstanbul, 1973, s. 667-700.

20. Hukukun Birleştirilmesinde İskandinav Denemesi, İHFM, C. XXXIX, Sayı: 1-4, İstanbul, 1974, s. 203-220.

21. Batı Avrupa'da Hukuk İlminin Bağımsız Bir Disiplini Olarak Karşılaştırmalı Hukukun XIX. Yüzyıldan Bugüne Kadarki Gelişimi, "Kubalı'ya Armağan", İstanbul, 1974, s. 67-96.

22. Batı Avrupa'da Karşılaştırmalı Hukukun Başlangıçtan XIX. Yüzyıla Kadarki Gelişimi, İHFM, C. XLI, Sayı: 1-2, İstanbul, 1975, s. 223-234.

23. Legal Science During the Last Century: Turkey (Ed. M. Rotondi: Inchiesti di Diritto Comparato, La science du droit au cours du dernier siecle/La scienza del diritto nell'ultimo secolo), Padova, 1976, s. 693-715.

24. Karşılaştırmalı Hukukun Çeşitli Görünümleri, MHAD, Yeni Seri, Yıl 10, Sayı: 13, İstanbul, 1976, s. 3-15.

25. Karşılaştırmalı Hukukun Görevleri, İHFM, C. XL, Sayı: 3-4, İstanbul, 1976, s. 259-291.

26. Yapımcının Sorumluluğu (Sorunlar/Çözümler/Yönelimler), "Teori ve Uygulama Açısından Mesuliyet Sigortaları, III. Sigorta Semineri", İstanbul, 4-7 Nisan 1977, Ankara, 1977, s. 205-301.

27. Saf İnançlı Muamelelerde Vekalet Sözleşmesine İlişkin Hükümlerin Uygulanması, "Temsil ve Vekalete İlişkin Sorunlar Semineri", 14-16 Haziran 1976, İstanbul, 1977, s. 99-125.

28. Türkiye'de Dernekler Hukukunun Gelişimi Bakımından Medeni Kanunun Derneklere İlişkin Düzenlemesinin Değerlendirilmesi, Ankara Üniversitesi Hukuk Fakültesi, "Medeni Kanunun 50. Yıl Haftası", Ankara, 1977, s. 97-115.

29. Trafik Kazalarında Hukuki Sorumluluk, Mecburi Sorumluluk Sigortası ve Zararın Giderimine İlişkin Yeni Gelişmeler, "Türkiye'de Karayolu Taşıması ve Trafik Güvenliği Toplantısı", 3-5 Kasım 1976, Ankara, 1977, s. 459-485.

30. Türkiye'de Yabancı Hukukun Benimsenmesi Hareketi İçinde Türk Medeni Kanununun Anlamı ve Önemi, İstanbul Üniversitesi Mukayeseli Hukuk Enstitüsü, "Medeni Kanun 50. Yıl Sempozyumu", 1. Tebliğler, İstanbul, 1978, s. 399-414.

31. Trafik Kazalarında Kusur ve "Orta Kusur" Kavramı, Türkiye Trafik Kazaları Yardım Vakfı, "2. Uluslararası Trafik Sorunları ve Trafik Kazaları", 4-7 Mayıs 1978, Ankara, 1978, s.147-156.

32. Türk Hukukunda Gerçek Bir Boşluk: Yapımcının Sorumluluğu (Amerikan ve Alman Çözümleri ile "Strasbourg Sözleşmesi" ve "AET Yönerge Önerisi"nin Işığında Türk Hukukuna İlişkin Düşünceler ve "Oluşacak Hukukumuz"un Yönlendirilmesine İlişkin Öneriler, BATİDET, Haziran 1979, C. X, Sayı: 1, Ankara, 1979, s. 97-158.

33. AET'de Ortaklıklar Hukukunun Antlaşmalar ve Yönergeler Yoluyla Uyumlaştırılması, İktisat ve Maliye, C.XXVI, Sayı: 6, Eylül 1979, s. 244-247.

34. AET'de Ortaklıklar Hukukunun Uyumlaştırılmasına İlişkin Birinci ve İkinci Konsey Yönergeleri, İktisat ve Maliye, C. XXVI, Sayı: 7, Ekim 1979, s. 284-287.

35. AET'de Ortaklıklar Hukukunun Uyumlaştırılmasına Yönelik "Üçüncü ve Dördüncü Konsey Yönergeleri", İktisat ve Maliye, C. XXVI, Sayı: 9, Aralık 1979, s. 369-371.

36. Ortak Pazar Çerçevesinde Düşünülen Yeni Şirket Türleri ve Tekdüzene Ulaşma Çabaları, İTO, "Geleceğin Şirket Tipleri, Yönetim, Finansman ve Denetim Sorunları Semineri", 18-19 Ekim 1979, İstanbul, 1979, s. 49-84.

37. AET'de Hukukların Koordinasyonu, Uyumlaştırılması, Denkleştirilmesi ve Topluluk Hukukunun Belirgin Özellikleri, A.H.A.E.M., I. Avrupa Hukuku Haftası, İstanbul, 1979, s. 53-80.

38. Bankalarda Çocuklar Adına Açılan Hesaplar ve Bu Hesaplara İlişkin Güncel Sorunlar, Türkiye Bankalar Birliği Yayını, Ankara, 1979, 31 s.

39. The Total Adoption of Foreign Codes in Turkey and Its Effects, Universita degli Studi di Bari, Quaderni degli Annali della Facolta di Giurisprudenza, Le Nuove Frontiere del Diritto e Il Problema dell'Unificazione, II, Milano, Dott. A. Giuffre Editore, 1979, s. 801-811.

40. Avrupa Konseyinde ve AET'de Yapımcının Sorumluluğuna İlişkin Gelişmeler: "Yapımcının Sorumluluğuna İlişkin Avrupa Sözleşmesi ve AET Yönerge Önerisi"

Üzerine Bazı Düşünceler, İ.Ü. Hukuk Fakültesi, Avrupa Hukuku Araştırma ve Eğitim Merkezi, İkinci Avrupa Hukuku Haftası, İstanbul, 1980, s. 127-157.

41. AET'de Karteller ve Rekabeti Sınırlayıcı Diğer Uygulamalar, İktisat ve maliye, C. XXVII, Sayı: 2, Mayıs 1980, s. 63 vd.

42. AET'de Pazardaki Egemen Gücün Kötüye Kullanılması, İktisat ve Maliye, C. XXVII, Sayı: 7, Ekim 1980, s. 250 vd.

43. AETA m. 86'nın Uygulanması Bakımından "Pazardaki Egemen Durumun Kötüye Kullanılması"nda "İlgili Pazar" Kavramı, İktisat ve Maliye, C. XXVII, Sayı: 9, Aralık 1980, s. 319 vd.

44. Türk Hukukunda "İşleten"in Sorumluluğu ve Sorumluluktan Kurtulması Bakımından "Kusur"un Etkisi ve Önemi, "Sorumluluk Hukukunda Yeni Gelişmeler I. Sempozyumu", Ankara, 21-22 Ekim 1977, İstanbul, 1980, s. 67-128.

45. AET'de "Pazardaki Durumun Kötüye Kullanılması"na İlişkin İlginç Bir Olay: "Zoja/CSC-ICI Kararı" Üzerine Bazı Düşünceler, İktisat ve Maliye, C. XXVII, Sayı: 10, Ocak 1981, s. 352 vd.

46. "Pazardaki Gücün Kötüye Kullanılması": "Hoffman-La Roche Kararı" Üzerine Bazı Düşünceler, İktisat ve Maliye, C. XXVII, Sayı: 11, Şubat 1981, s. 399 vd.

47. Pazar Ekonomisinde Rekabetin Önemi ve Türkiye'de Karteller, Tekeller, Oligopoller ve "Rekabeti Sınırlayıcı Uygulamalar"a Karşı Alınacak Önlemler, Devlet Planlama Teşkilatı, 2. Türkiye İktisat Kongresi, İzmir, 2-7 Kasım 1981, VII: İç Ticaret ve Hizmetler, Ankara, 1981, s. 79-106.

48. Yabancı Hukukun Benimsenmesi Yoluyla Bir Çağdaşlaşma Modeli: Kemalist Hukuk Devrimi Üzerine Gözlemler ve Değerlendirmeler, Adalet Bakanlığı, Atatürk ve Yargı Reformu, Ankara, 1981, s. 31-60.

49. Produzentenhaftung im türkischen Recht (Probleme/Lösungen/Tendenzen), "Türkisch-Schweizerische Juristenwoche 1980 in Zürich und Bern", Die Verantwortlichkeit im Recht, Band 1, Schulthess Polygraphischer Verlag, Zürich, 1981, s. 63-109.

50. Pazar Ekonomizinde Rekabetin Önemi ve Rekabet Sınırlamalarına Karşı Alınan Önlemler, Banka ve Ekonomik Yorumlar, Şubat 1982, Yıl 19, Sayı: 2, s. 57-64.

51. Türkiye'de Karteller ve "Rekabet Sınırlamaları"na İlişkin Önlemler: Yürürlükteki Hukuk ve Yasal Düzenleme Örnekleri, Banka ve Ekonomik Yorumlar, Mart 1982, Yıl 19, Sayı: 3, s. 311-337.

52. Satıcılara "Yeniden Dışsatım" Yasağı Öngören "Dağıtım Sözleşmeleri"yle AET'deki Rekabet Düzeninin Bozulması: "BMW-Belçika ve Diğerleri/AET Komisyonu Kararı" Üzerine Bazı Düşünceler, İktisat ve Maliye, C. XXVIII, Sayı: 110, Ocak 1982, s. 417 vd.

53. AET'deki Rekabet Düzeni Bakımından "Tercihli Dağıtım Sistemi"ne İlişkin Anlaşmalar, Kararlar ve Uyumlu Davranışlar: "L'Oréal (Brüksel) ve l'Oréal (Paris) v. De Nieuwe AMCK Kararı" Üzerine Bazı Düşünceler, İktisat ve Maliye, C. XXIX, Sayı: 1, Nisan 1982, s. 9 vd.

54. AET'de Rekabet Sınırlamalarıyla "Üye Devletler Arasındaki Ticaret"in Etkilenmesine İlişkin Ölçütler ve Komisyonun Para Cezası Verme Yetkisi: "Tepea B.V./Komisyon Kararı" Üzerine Bazı Düşünceler, İktisat ve maliye, C. XXIX, Sayı: 7, Ekim 1982, s. 274 vd.

55. Kooperatif Üyeleri İçin "Münhasır Satınalma Yükümlülüğü"nün Öngörülmesi Yoluyla AET Rekabet Düzeninin Bozulması: "Cooperative Stremsel-En Kleurselfabrik/Komisyon Kararı" Üzerine Düşünceler, İktisat ve maliye, C. XXIX, Sayı: 9, Aralık 1982, s. 362 vd.

56. AET'nin Serbest Rekabet Düzeninde Ticari Nitelikteki Devlet Tekellerinin Durumu: 2 Haziran 1983 Tarihli "AET Komisyonu/Fransız Cumhuriyeti Kararı" Üzerine Bazı Düşünceler, İktisat ve Maliye, C. XXX, Sayı: 7, Ekim 1983, s. 278 vd.

57. "Tercihli Dağıtım Sistemi"nde "Ayrımcı Uygulamalar"a ve "Pazardaki Egemen Durumun Kötüye Kullanılması"na İlişkin Standartlar: "Firma Demo Studio Schmidt/AET Komisyonu Kararı" Üzerine Bazı Gözlemler, İktisat ve Maliye, C. XXIX, Sayı:8, Kasım 1983, s. 307 vd.

58. Komisyon Tarafından Gönderilen İdari Nitelikteki Yazıların Roma Antlaşmasının 85. Maddesinin Uygulanması Bakımından Ulusal Mahkemeler Üzerindeki Etkisi: "Anne Marty S.A./Estée Lauder S.A. Kararı" Üzerine Gözlemler, İktisat ve maliye, C. XXIX, Sayı: 12, Mart 1983, s. 485 vd.

59. Roma Antlaşmasının 36. ve 85. Maddeleri Arasındaki İlişki: "Sociétés Coditel/Cine Vog Films ve Diğerleri Kararı" Üzerine Görüşler, İktisat ve Maliye, C. XXIX, Sayı: 10, Ocak 1983, s. 394.

60. Alman ve Türk Hukuklarında Hekimin Hastayı Aydınlatma Ödevi ve İstisnaları, "Sorumluluk Hukukunda Yeni Gelişmeler V. Sempozyumu: Türk Hukukunda Hekimin Hukuki ve Cezai Sorumluluğu", Ankara, 12-13 Mart 1982, İstanbul, 1983, s. 31-59.

61. The Liability of Producer in Turkish Law, MHAUM "I. Avusturya/Türk Hukuk Haftası-ı. Austrian/Turkish Lawyers Week), İstanbul, 1983, s. 67-84.

62. Uluslararası Ticaret Hukuku Hakkında Birleşmiş Milletler Komisyonu (UNCITRAL) Tarafından Hazırlanmış Bulunan "Uluslar arası Taşınır Satımı Sözleşmeleri Hakkında Antlaşma Tasarısı" Üzerine Bir İnceleme, MHAD, Yıl 1978, Sayı: 15, İstanbul, 1983, s. 7-22.

63. Cohabitation without Marriage in Turkey: Some Remarks on the Turkish Experience, "Rechtsvergleichung, Europarecht und Staatenintegration", Gedaechtnisschrift für Léontin-Jean Constantinesco, (Herausgegeben von G. Lüke/G. Ress/M.R. Will), Carl Heymanns Verlag, Köln.Berlin.Bonn.München, 1983, s. 545-557.

64. Yetkili Satıcılar Arasında Satış Yasağı Öngören Sözleşmelerin Roma Antlaşmasının m. 85/f.1'e Aykırılığı: "Haselblad (GB) Limited/Komisyon Kararı" Üzerine Görüşler, İktisat ve Maliye, C. XXXI, Sayı: 2, Mayıs 1984, s. 66 vd.

65. AET Rekabet Hukukunda 17 Sayılı Tüzük Uyarınca Komisyonun İhtiyati Önlem Kararı Verebilmesine İlişkin Koşullar: "Ford of Europe Inc. And Ford Werke AG v. AET Komisyonu Kararı" Üzerine Gözlemler, İktisat ve Maliye, C. XXXI, Sayı: 7, Ekim 1984, s. 274 vd.

66. AET Rekabet Hukukunda Paralel İthalatın Kısıtlanmasına İlişkin Anlaşmaların Roma Antlaşmasının 85. Maddesine Aykırılığı: "N.V. I.A.Z. International Belgium S.A ve Diğerleri v. Komisyon Kararı" Üzerine Gözlemler, İktisat ve Maliye, C. XXXI, Sayı: 9, Aralık 1984, s. 355 vd.

67. "Pazardaki Egemen Durum"un "Genel İndirim Sistemi" ile Kötüye Kullanılması ve Üye Devletlerden Birinin Ülkesinin "Ortak Pazarın Esaslı Bir Bölümü" Sayılabileceği Durumlar: 9 Kasım 1983 tarihli "Michelin/Komisyon Kararı" Üzerine Bazı Gözlemler, İktisat ve Maliye, C. XXX, Sayı: 12, Mart 1984, s. 459 vd.

68. Türkisches Internationales Ehe-und Kindschaftsrecht, "Internationales Privatrecht-Internationales Wirtschaftsrecht", Carl Heymann Verlag KG, Köln.Berlin.Bonn.München, 1984, s. 365-383.

69. "AET'de Kartel Yasağı" ve "Pazardaki Gücün Kötüye Kullanılması" Durumlarında Üye Devletler Mahkemelerinin Zararın Giderimine Karar Verebilmeleri, İktisat ve maliye, C. XXX, Sayı: 11, Şubat 1985, s. 459.

70. Participation of the Alien in Public affairs (Political and Associative Life), Council of Europe Directorate of Human Rights, Human Rights of Aliens in Europe, Funchal/ Madeira (Portugal), 17-19 October 1983, Martinus Nijhoff Publishers, 1985, s. 195-254; Discussions, s. 255-288.

71. The Legal Position of Aliens in Turkey, "Max-Planck Institut für Auslaendsiches Öffentliches Recht und Völkerrecht", Die Rechtsstellung von Auslaendern nach staatlichem Recht und Völkerrecht, Kolloquium, Heidelberg, 11-13 September 1985, Laenderberichte, Band 4, 47 s.

72. Nordik Hukukta, Sosyalist Hukukta ve Anglo/Amerikan Hukukunda Evlilik Olmaksızın "Birlikte Yaşama"nın Güncel Sorunları, MHAD, Yıl 1979-81, Sayı: 16, İstanbul, 1985, s. 57-75.

73. Leasing İşlemleri: Hukuksal Yapıları ve Güncel Sorunları, Para ve Sermaye Piyasası Dergisi, Yıl 7, No.: 73, Mart 1985, s. 26-29.

74. 2981 sayılı "İmar Affı Kanunu"nun Uygulanmasında 634 sayılı "Kat Mülkiyeti Kanunu" Bakımından Önem Taşıyan Bazı Sorunlar, İstBD, C. 59, Sayı: 4-5-6, 1985, s. 330-343.

75. GATT Dampinge Karşı Önlemler Koduna İlişkin Bazı Düşünceler, TOBB, "Haksız Rekabete Karşı Önlemler Semineri", İstanbul, 16 Ekim 1986, Yayın No.: 1986/5, İstanbul, s. 67-89.

76. Haftpflicht des Motorfahrzeughalters, obligatorische Haftpflichtversicherung und Garantiefonds im türkischen Recht nach dem neuen Strassenverkehrsgesetz vom 13. Oktober 1983, Institut suisse de droit comparé, L'évolution récente du droit privé en Turquie et en Suisse, Recueil des travaux présentés aux Journées juridique turco-suisse 1985, Schulthess Polygraphischer Verlag, Zürich, 1987, s. 153-167.

77. Some Remarks on the Amenments proposed by the Preliminary Draft of the Turkish Ciivil Code, "Liber Memorialis François Laurent 1810-1887", (Editors: J. Erauw/B. Bouckkaert/H. Bocken/H. Gaus/M. Storme), E. Story-Scientia, Bruxelles, 1989, s. 605-641.

78. The Legal Status of the Real and Personal Property of the Farm Business, CEDR/ABDR, Rapporten van Het XVe Europees Congres voor Agrarisch Recht, Gent, Belgie, 2-6 Oktober 1989, Vol. I, Drukkerij Erasmus NV, Wetteren, 1990, s. 301-311.

79. Gewaehrleistungspflicht des Unternehmers nach der Ablieferung des Werkes im Werkvetrag nach türkischem Recht (mit Prof. Dr. İsmet Sungurnbey), Institut suisse de droiy comparé, Journées juridique turco-suisse 1989, Droit de la personalité(droit de divorce/droit de la construction, Schulthess Polygraphischer Verlag, Zürich, 1990, s. 171-182.

80. Precontractual Liability: Turkey, (Edited by E.H.Hondius), Reports to the XIIIth Congress, International Academy of Comparative Law, Montreal, Canada, 18-24 August 1990, Kluwer Law and Taxation Publishers, Deventer.Boston, s. 323-331.

81.Trade Marks in Turkey, Managing Intellectual Property, No. 15, December 1991, s. 42-47.

82. Know-How in Turkish Law and Practice, Managing Intellectual Property, No. 18, March 1992, s. 38-39.

83. Copyright Law in Turkey, Managing Intellectual Property, No. 24, November 1992, s. 29-32.

84. The Legal Situation of Woman and Child in the Family and Society in Turkey, Centro Internazionale di Richerche e Studi Sociologici, Penali e Penitenziari, I Diritto dell'Uomo nel Mediterraneo, Giappichelli Editore, Torino, 1992, s. 465-491.

85. Medical Liability and Insurance in Turkish Law (Reform of Medical Liability Law), A.I.S.J.and Institut suisse de droit comparé, La responsabilité des prestataires de services/Liability for Services Rendered, Colloque de A.I.S.J., Lausanne, 1-3 septembre 1993, Société de Légslation Comparée, Paris, 1994, s. 109-124.

86. Wettbewerbsbeschraenkungen im türkischen Recht, Bundesstelle für Aussenhandelsinformation, Türkei: Gewerblicher Rechtsschutz und Wettbewerbsrecht, Köln/Berlin, 1993, s. 51-75.

87. Abuse of Rights Under Turkish Civil Law, Grene Fund for Equity Studies, "Aequitas and Equity in Civil Law and Mixed Jurisdictions", (Edited by A.M. Rabello), Second International Conference on Aequitas and Equity, The Faculty of Law, The Hebrew University of Jerusalem, May 1993, s. 645-661.

88. Product Fraud: Counterfeit Goods Suppression: TURKEY: Unfair Competition, Patent Law, Copyright Law, Trademark Law, Enforcement of Foreign Judgments, Arbitration, Civil Procedure, Oceana Publications, New York.London.Rome, Release 94-1, Issued August 1994, 101 s.

89. Extinctive Prescription on the Limitation of Actions: Turkey, Reports to the XIVth Congress, International Academy of Comparative Law, Athens (Vougliagmeni), Greece, 31 July-7 August 1994 (Edited by E. Hondius), Kluwer Law International, The Hague.London.Boston, 1995, s. 345-356.

90. Charitable Giving: Turkey, International Charitable Giving: Laws and Taxation, (Edited by Carole Shelbourn George), Supplement 1/1995, Graham & Trotman/Martnus Nihoff, 10 s.

91. Türk Kartel Hukukunda "Hakim Durumun Kötüye Kullanılması Yasağı", "Rekabetin Korunması, Türkiye ve Avrupa'daki Uygulamalar Semineri", 25 mayıs 1995, İTO Yayın No.: 1996-7, s. 57-69.

92. Milletlerarası Ticaret Odası Tahkim Kuralları Uyarınca Verilen Hakem Kararları ve Bunların Türkiye'de Tenfizi, "Uluslararası Ticari Tahkim Konusunda Son Gelişmeler Semineri", İTO Yayın No.: 1996-15, s. 13-30.

93. Informed Consent for Medical Interventions under Turkish Law (with Prof. Dr. Teoman Akünal), 11. World Congress on Medical Law, Sun City, Northwest Province, South Africa, 28 July – 1 August 1996, Vol. 2, International Centre of Medicine and Law, South Africa, s. 181-186.

94. The New Turkish Trademark Law, Fordham International Law Journal, Vol. 19, April 1996, No. 4, s. 1542-1577.

95. Türk Hukukunda Takma Adın Korunması, "Selahattin Sulhi Tekinay'a Armağan", İstanbul, 1996, s. 479-482.

96. Çeşitli Hukuk Çevrelerinde "Manevi Zarar" Kavramı ve "Manevi Zararın Giderimi"ne İlişkin Çözümler, "Selahattin Sulhi Tekinay'a Armağan", İstanbul, 1996, s. 483-508.

97. Religious Fundamentalism: Turkish Experience, Universidade da Coruna, Nacionalismo en Europa – Nacionalismo en Galicia, La religion como elemento impulsar de la ideologia nacionalista, Simposio internacional celebrado en: Pazo de

Marinan A Coruna, 4-6 Septiembre 1997, NINO Centro de Impresion Digital, 1997, s. 116 vd.

98. Protection of Cultural Heritage in Turkish Private Law, International Journal of Cultural Property, Vol. 6 (1997), No. 2, s. 278-290.

99. Avrupa Birliğinde Markalar Hukukunun Uyumlaştırılması: AT Yönergesi Üzerine Düşünceler, "Selim Kaneti'ye Armağan", İstanbul, 1996, s. 119-129.

100. Hayatın Başlangıç ve Sonuna İlişkin En Önemli Hukuksal Sorunlar, "Bülent Davran'a Armağan", İstanbul, 1998, s. 1-63.

101. The Activism of the Judge, "Halit Kemal Elbir'e Armağan", İstanbul, 1998, s. 406-424.

102. Business Guide to Turkey: Law of Contracts, Distribution Law, Unfair Competition (s. 60-73), Competition Law (s. 75-85), Financial Leasing, Factoring (s. 197-205), Law of Property (s. 277-285), Intellectual Property Rights (s. 287-324), Protection of Consumer (s. 325-337), Enforcement of Foreign Court Judgments (s. 373-378), Civil Procedure-Civil Courts-Arbitration (s. 379-402), (Editors T. Kayacıklı/F. Karakeçili), Universal Dil Hizmetleri ve Yayıncılık AŞ, İstanbul, 1998.

103. Zivilrechtliche Sanktionen im türkischen Kartellrecht, Annales de la Faculté de Droit d'Istanbul, XXXII, No. 49, 2000, s. 189-201.

104. Turkey: Intellectual Property, Suppl. 15, Kluwer Law Int., The hague.London.New York 2001 (in International Encyclopedia of Laws, General Editor: Prof. Dr. R. Blanplain, Vol. 3: Intellectual Property, Editor: Prof. Dr. H. Vanhaes), 183 s.

105. Protection of Persons in Medical Research, General Report, XVth International Congress of Comparative Law, 26 July-1 August 1998, Bristol, England, Council of Europe, CDBI/INF (98) 12, 85 s.

106. Rights of Embryo and Foetus in Private Law, General Report, Topic IV.C. : HUMAN RIGHTS, XVIth International Congress of Comparative Law, 14-20 July 2002, Brisbane, Australia, 126 s.

107. Kurumsal Tahkim Sistemlerinde ve Bazı Ulusal Hukukların "Uluslararası Tahkimle İlgili Düzenlemeler"inde Geçici ve Koruyucu Önlemler, İst.BD, C. 77, Sayı: 2, Haziran 2003, s. 265-290.

108. Uluslararası Ticari Tahkimde Hakem Kararı, İst.BD., C.78, Sayı:2004/1, s. 7-36.

109. Las Acciones Colectivas en El Derecho Turco, (Antonio Gidi/E. Ferrer Mac-Gregor, Coordinadores), Procesos Colectivos-La Tutela de Los Derechos Difusos, Colectivos e Individuales en Una Perspectiva Comparada, Editorial Porrua, México, 2003, s. 403- 408.

## ÇEVİRİLER

1. Anglo-Amerikan Hukukna Giriş,(Introduction to Anglo-*American Law), Alfred F. Conard, İstanbul Hukuk Fakültesi, İstanbul, 1959, VI+115 s.

2. Amerikan Hususi Hukukuna Giriş (Introduction to American Private Law), E. Allan Farnsworth, İstanbul/Columbia/Michigan Exchange Project, İstanbul, 1961, 94 s.

3. Birleşik Devletlerde Şirket Müdürlerinin ve İdarecilerin Sorumluluğu (Liability of Company Directors and Managers in the United States), Alfred F. Conard, BATİDER, C. II, Sayı: 2, Ankara, 1965, s. 226-245.

4. Yirminci Yüzyıldaki Gelişim ve Fransa'da Haksız Fiiler Hukukunun Fonksiyonu (The 20th Century Development and the Function of the Law of Torts in France), André Tunc, MHAD, Yeni Seri, Yıl 1, Sayı: 2, İstanbul, 1968, s. 233-251.

5. Fransız Hukukunda Motorlu Taşıt Araçlarının Sebep Oldukları Zararlardan Dolayı Sorumluluk (Liability for Damages Caused by Motor Vehicles in French Law), Paul Esmein, MHAD, Yeni Seri, Yıl 2, Sayı: 3, İstanbul, 1968, s. 65-77.

6. Alman Hukukuna Göre Kişiliğin Özel Hukuk Yönünden Korunması (Privatrectlicher Schutz der Persönlichkeit im deutschen Recht), Ernst von Caemmerer, MHAD, Yeni Seri, Yıl 7, Sayı: 10, İstanbul, 1973, s. 69-83.

7. Karşılaştırmalı Hukuk ve Günümüzde Hukukun Oluşumu (Rechtsvergleichung und Rechtsfortbidung heute), Konrad Zweigert, İHFM, C. XXXVIII, Sayı: 1-4, İstanbul, 1973, s. 651-665.

8. İsveç'te Hukuki Açıdan Know-How (Know-How from Legal Standpoint in Sweden), Hans bergqvist, İHFM, C. XXXVIII, Sayı: 1-4, İstanbul, 1973, s. 667-690.

9. İsviçre Hukukunda Know-How'ın Korunması (Protection of Know-How in Swiss Law), Alois Troller, BATİDER, C. VII, Sayı: 2, Ankara, 1974, s. 397-409.

## ESER İNCELEMELERİ

Dr. Manfred Heinisch; Beendigung und Nichtigkeit der Adoption, Diss., Frankfurt/M.-Berlin, 1960, 103 s. İHFM, C. XXXIV, Sayı: 1-4, İstanbul, 1969, s. 692-703.

## MAHKEME KARARLARI İNCELEMELERİ

1. Rasyonel Yararlanma Kavramı-Bir Taşınmazdan Yararlanma Biçiminin Değişmesi Halinde Geçit Zaruretinin Doğumu, İHFM, V. XXXIV, Sayı: 1-4, İstanbul, 1969, s. 653-672.

2. Trafik Hukuku Bakımından Sorumlu Şahsın Tespitinde "Maddi Sistem", İHFM, C. XXXV, Sayı: 1-4, İstanbul, 1970, s. 553-564.

3. Trafik Hukukunda Sorumlu Kişi Olarak "İşleten"i (Araç Sahibi) Tayin Bakımından Trafik Sicilinin Rolü, MHAD, Yeni Seri, Yıl 3, Sayı: 6, İstanbul, 1970, s. 87-100.

## KISALTMALAR

**A.I.S.J.**: Association Internationale des Sciences Juridiques/International Association of Legal Science; **A.H.A.E.M.** : Avrupa Hukuku Araştırma ve Eğitim Merkezi; **BATİDER**: Banka ve Ticaret Hukuku Dergisi; **C.** : Cilt; İHFM: İstanbul Hukuk Fakültesi Mecmuası; **İst.BD**: İstanbul Barosu Dergisi; **İTO**: İstanbul Ticaret Odası; **MHAD**: Mukayeseli Hukuk Araştırmaları Dergisi; **s.**: Sayfa; **Vol.**: Volume (Cilt)