Violet Elizabeth Grayson (VEG-2792)
888 Seventh Avenue – 45th Floor
New York, N.Y 10106
(646) 406-1512

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
Theresa Giurlando,                               :     ECF Case
                                                 :     No. 07 Civ. 10266 (RJS)
          Plaintiff,              :
                                                 :     DECLARATION OF
    -against-                                 :     THERESA GIURLANDO
                                                 :
T.C. Ziraat Bankasi A.S.,                        :
                                                 :
                                                 :
          Defendant.              :
---------------------------------------------------------------X

I, Theresa Giurlando, declare:

1. I am the plaintiff in this case. I make this declaration in opposition to Ziraat Bank's motion to dismiss this case and require me to try my case in Turkey.

2. I am 69 years old. I have lived my entire life in Brooklyn and Long Island. I was raised in the Carroll Gardens section of Brooklyn. After graduating from High School, I married Alfred Giurlando, and soon became a stay-at-home mother and homemaker. In about 1970, Alfred and I moved to Port Jefferson on Long Island, where we lived together until his death in 1999.

3. The one month I spent in Turkey in 2007 was the only occasion on which I left the United States. Other than the trip to Turkey, I have left the State of New York on a handful of occasions. I took a trip to Florida with my children, and a few car trips to

Case 1:07-cv-10266-RJS    Document 19    Filed 05/09/2008    Page 2 of 4

Pennsylvania and New Jersey with my late husband, mostly to visit his family. I would not have felt comfortable making these trips by myself.

    4. My month in Adana, Turkey was a terrifying experience. My husband, Mevlut, whom I called Max, repeatedly beat his adult daughter for seeing a man who was not her husband. He picked her up off the ground, slammed her against the wall, and beat her, leaving marks on her head. Max told me that he was going to shoot his daughter, and would only get six months in jail.

    5. Max's brother told me that Max had already killed three people and served eleven years in prison for it. When I confronted Max with this information, he responded that he killed only one person and served only four years. My belief that Max was a violent criminal was also reinforced by a visit from a man who just been released from jail in Brooklyn.

    5. The day that I discovered Max had withdrawn my money from the bank was especially frightening. After I discovered what Max did, I stood in the bank, screaming at him to give me back my money. He forced me out of the bank into his van, and drove back to the house. When he tried to force me into the house, I ran away through the streets of Adana. Max followed me in and out of a police station and in and out of a post office. I eventually found my way to a safe hotel room with the help of my daughter, who I reached in New York by telephone, and who in turn contacted the United States consulate in Adana.

    6. Depositing my check drawn on the Port Jefferson branch of Citibank into Ziraat Bank in Adana, and withdrawing what little was left following Max's withdrawals, were my only financial transactions while I was in Turkey.

2

7. Since returning to New York, I have been subject to severe and frequent panic attacks, for which I take medication. I also suffer from a cardiac condition: a mitral valve leak, which my doctor, Dr. Fishberger, says may require surgery. The panic attacks and the mitral valve leak have a bad interaction, causing me to suffer heart palpitations, dizziness and shortness of breath. On the night of April 19, 2008, these symptoms became so severe that I visited the emergency room of St. Charles Hospital in Port Jefferson.

8. The thought of returning to Turkey is simply more than I can bear. And even if I could physically or emotionally tolerate the trip – which I could not – I still could not afford the trip financially.

9. I have lost my house and my life savings, and cannot meet my on-going living expenses. I receive $1,206 a month in social security, which is almost completely eaten up by my $900 a month rent, and approximately $100 a month car insurance, $75 a month prescription medicines, telephone, etc. In an attempt to make ends meet and put food on the table, I took a job working three and a half hours a day, five days a week, as a hall monitor in a local high school. This job pays $11.66 an hour, but will be over at the end of the school year.

10. Obviously, I cannot afford to travel to Turkey for legal proceedings, much less hire a Turkish lawyer and pay him by the hour. My New York lawyer works on a contingent basis, and paying a lawyer by the hour would be beyond my means.

10. For all of the reasons explained above, I respectfully urge the court to deny the defendant bank's request to send this case to Turkey, and allow me to continue with my case here in New York.

The foregoing facts are true of my personal knowledge. Executed under penalty of perjury of the laws of the United States and the State of New York in Corum, New York on May 8, 2008.

                                              Ss// Signature on File
                                              _____
                                              Theresa Giurlando