Violet Elizabeth Grayson (VEG-2792)
888 Seventh Avenue – 45th Floor
New York, N.Y 10106
(646) 406-1512

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

Theresa Giurlando,                          :      ECF Case
                                            :      No.  07 Civ. 10266 (RJS)
             Plaintiff,                      :
                                            :
        -against-                            :
                                            :
T.C. Ziraat Bankasi A.S.,                    :
                                            :
                                            :
             Defendant.                      :
                                            :
-------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

**INTRODUCTION**                                                                1

**ARGUMENT**                                                                    2

**I. The Complaint Should Not Be Dismissed On Grounds of *Forum
 Non Conveniens***                                                             2

**A. The Court Must Afford Great Deference to An American
Citizen's Choice of a United States Forum**                                    2

**B. Application of Law to This Case -- Ziraat Bank Has Not Made A
Sufficient Showing to Overcome the Presumption in Favor of a
Citizen Plaintiff's Choice of Her Home Forum**                                12

**1. The Turkish Forum**                                                       12

**2. Plaintiff is Absolutely Unable to Litigate in Turkey**                    13

**3. The Comparatively Modest Inconvenience
to Defendant of Litigating in New York**                                       16

**a. Documents Allegedly Located in Turkey**                                   17

**b. Witnesses Located in Turkey**                                             17

**c. Application of Foreign Law**                                              19

**4. Comparative Convenience Analysis**                                        20

**II. The Complaint Should Not Be Dismissed on Grounds
Of Sovereign Immunity**                                                        22

**III. Defendant's Rule 12(b)(6) Motion is Moot**                             23

**CONCLUSION**                                                                 24

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Aguinda v. Texaco,* 303 F.2d 470 (2d Cir. 2002)                                                     3

*Assicurazioni Generali Sp.A Holocaust Litigation,*
228 F. Supp.2d 384 (S.D.N.Y. 2002)                                                                  15, 19

*Barbara v. New York Stock Exch.,* 99 F.3d 29 (2d Cir. 1996)                                         23

*BFI Divino v. JSC Russian Alum.,* 481 F.Supp.2d 274 (S.D.N.Y. 2007)                                 3

*Calavo Growers v. Generali Belgium,* 632 F.2d 963 (2d Cir. 1980)                                    5

*Carey v. Bayerische Hypo-Und Vereinsbank AG,* 370 F.3d. 234 (2d Cir. 2004)                          7-9, 11, 14

*Commercial Bank of Kuwait v. Rafidain Bank,* 15 F.3d 238 (2d Cir. 1994)                             22

*Corporacion Tim, S.A. v. Schumacher,* 418 F. Supp. 529 (S.D.N.Y. 2006)                              3

*Duha v. Agrium*, 448 F.3d 867 (6th Cir. 2006)                                                     7

*Guidi v. Intercontinental Hotels,* 225 F.3d 142 (2d Cir. 2000)                                      1-7

*Gross v. British Broadcasting Corporation*, 386 F.3d 224 (2d Cir. 2004)                             7-11

*Gulf Oil v. Gilbert,* 330 U.S. 501 (1947)                                                           5

*Henderson v. Met. Bank and Trust Co.,* 470 F.Supp.2d 294 (S.D.N.Y. 2006)                            3

*Human Rights in China v. Bank of China,* 2003 WL 22170648 (S.D.N.Y. 2003)                           22

 *Iragorri v. United Technologies,* 274 F.3d 65 (2d Cir. *en banc* 2001)                             6-8, 12

*Irish Nat'l Ins. Co. v. Aer Lingus,* 739 F.2d 90  (2d Cir. 1994)                                    15

*Kolar v. New York-Presbyterian Hospital.,* 455 F.3d 118 (2d Cir. 2006)                              23

*Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524 (1947)                                       1-7

*Manu Int'l S.A. v. Avon Products, Inc.,* 641 F.2d 62 (2d Cir. 1981)                                 19

*Mercier v. Sheraton,* 981 F.2d 1345 (1st Cir. 1992)                                               9, 14

*Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64 (2d Cir. 2003)                            3

**Cases Cont.**                                                                   **Page(s)**

*Rahl v. Bande,* 328 B.R. 387 (S.D.N.Y. 2005)                                      19

*Reid- Walen v. Hansen,* 933 F.2d 1390 (8th Cir. 1991)                          7, 18

*Republic of Argentina v. Weltover,* 504 U.S. 607                                 22

*Saud v. PIA Investments, Ltd.,* 2007 WL 4457441 (S.D.N.Y. Dec. 14, 2007)         3

*Seales v. Panamanian Aviation,* 2008 U.S. Dist. LEXIS 14429
(E.D.N.Y. decided February 25, 2008)                                              19

*Turedi v. Coca Cola*, 460 F.Supp.2d 507 (S.D.N.Y. 2006)                          3

*Wiwa  v. Royal Dutch Shell*, 226 F.3d 88 (2d Cir. 2000)                          4-8


**Statutes**                                                                      **Page(s)**

Federal Rules of Civil Procedure, Rule 12(b)(6)                                   1, 23-24

Federal Rules of Civil Procedure, Rule 15(a)                                      24

28 U.S.C. section 1605(a)(2)                                                       1, 22-23

# INTRODUCTION

Under controlling Second Circuit and United States Supreme Court precedent, an America plaintiff's choice of a home forum may be disturbed on *forum non conveniens* grounds only where the moving party can "establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience. . ." (*Guidi v. Intercontinental Hotels,* 225 F.3d 142 (2d Cir. 2000)*, quoting Koster v. Lumbermens Mut. Cas. Co*., 330 U.S. 518, 524 (1947)) As demonstrated  below, the vexation and oppressiveness associated with Plaintiff, a physically and emotionally fragile elderly lady scraping by on social security, litigating in Turkey, vastly exceeds any possible inconvenience associated with Defendant, a leading multi-national bank with a midtown Manhattan branch, litigating in New York. Defendant's *forum non conveniens* motion should therefore be denied.

Defendant's sovereign immunity argument likewise fails, because its actions fall within the commercial activity exception to sovereign immunity defined by 28 U.S.C. section 1605(a)(2)(3).

Defendant's Rule 12(b)(6) motion, seeking dismissal for failure to state a claim, is mooted by Plaintiff's filing of an amended complaint based upon new factual information and new information concerning Turkish law contained in Defendant's motion to dismiss.

# ARGUMENT

## I.

### The Complaint Should Not Be Dismissed On Grounds of *Forum Non Conveniens*

#### A. The Court Must Afford Great Deference to An American Citizen's Choice of a United States Forum

As demonstrated below, controlling recent Second Circuit precedent, based upon controlling United States Supreme Court precedent, holds that where a natural person who is a United States citizen brings suit in a United States District Court against a defendant over whom the Court has jurisdiction, the action may be dismissed on *forum non-conveniens* grounds only where the moving party can "establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or non-existent . . . In any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in her home forum will normally outweigh the inconvenience the defendant may have shown." (*Guidi v. Intercontinental Hotels,* 225 F.3d 142 (2d Cir. 2000), quoting *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524 (1947))

Defendant Ziraat Bank perfunctorily acknowledges that this Court has jurisdiction over it for all purposes because it maintains a branch in midtown Manhattan, and further acknowledges that Theresa Giurlando is American citizen suing in her home forum, who has made a real showing of convenience.[1] Nonetheless, Ziraat Bank takes the Court on an extended tour of cases which do

---

[1] See Defendant's Brief at 5, 13.

not involve a living, breathing United States citizen plaintiff,[2] thereby inaccurately implying that the "sliding scale" of deference which applies to miscellaneous foreigners and juridical entities also applies to human beings who are United States citizens or residents. For example, in the case of *Turedi v. Coca Cola*, 460 F.Supp.2d 507 (S.D.N.Y. 2006), upon which Defendant heavily relies, the numerous plaintiffs were all Turkish citizens residing in Turkey.[3] The cases cited by Defendant, brought by foreign plaintiffs or multi-national corporations in various jurisdictions, are not on point. The most critical cases, controlling here, are the five twenty-first century Second Circuit *forum non-conveniens* opinions involving individual American citizen or resident plaintiffs. They are discussed below, in chronological order.

### Five Controlling Second Circuit Cases

1. *Guidi v. Inter-Continental Hotel,* 224 F.3d 142 (2d Cir., February 14, 2000)

In *Guidi,* victims of a terrorist attack at an Inter-Continental hotel in Egypt sued in the Southern District. The Honorable Loretta Preska granted defendant's motion to dismiss on *forum non-conveniens* grounds, noting that: 1) a view of the premises would be possible in Egypt, 2) defendant hotelier would be able to implead the Egyptian government in Egypt, 3)

---

[2] See illustrative list in following footnote.
[3] By way of further example, Defendant also cites to *Aguinda v. Texaco,* 303 F.2d 470 (2d Cir. 2002) (Ecuadorian plaintiffs complain of events occurring in Ecuador); *Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64 (2d Cir. 2003) (plaintiffs, Liberian corporations "serving as personal investment vehicles for wealthy Greeks," deserve less deference in choice of forum than do American citizens); *Corporacion Tim, S.A. v. Schumacher,* 418 F.Supp. 529 (S.D.N.Y. 2006) (plaintiff is Dominican corporation controlled by German principal); *Saud v. PIA Investments, Ltd.,* 2007 WL 4457441 (S.D.N.Y. Dec. 14, 2007) (plaintiff is member of Saudi royal family with no connection to New York); *Henderson v. Metropolitan Bank and Trust Co.,* 470 F.Supp.2d 294 (S.D.N.Y. 2006) (plaintiff is estate of American citizen to whom claim was transferred by Philippinos to artificially gain access to U.S. forum); *BFI Divino Group v. JSC Russian Aluminum,* 481 F.Supp.2d 274 (S.D.N.Y. 2007) (plaintiff is multi-national mining corporation competing with Russian corporation in Nigeria); various LaSala cases (plaintiffs are trustees of liquidating trust of global scope.)

3

the case called for application of Egyptian law, 4) there were two closely related cases pending in Egypt, and 5) Egypt had a greater interest in the litigation.

The Second Circuit reversed Judge Preska's decision and reinstated the case. Quoting the controlling language from the United States Supreme Court's opinion in *Koster* cited above, Judge Oakes, writing for a unanimous panel, found error in the District Court's failure to "even mention *Koster*" and the extraordinarily high bar it set for a defendant seeking *forum non-conveniens* dismissal of an action brought by an individual American citizen plaintiff in Federal District Court:

> Plaintiff's decision to sue in New York should not be disturbed unless the balance of factors is strongly in favor of ICH. . . We conclude ICH has not met its burden of showing that the aggregate of relevant factors weigh heavily on the side of dismissal: ICH is a corporate defendant . . . Plaintiffs, by contrast, are ordinary American citizens for whom litigating in Egypt presents an obvious and significant inconvenience, especially considering their adverse experience with that country to date. This is not a case where the plaintiff is a corporation doing business abroad and can expect to litigate in foreign courts. [Citation to cases from other circuits.] Under the circumstances presented here, we can see no reason, to make an exception to the presumption that a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown. [Citing *Koster*]

(*Guidi, supra,* 224 F.3d at 146-148)

### 2. *Wiwa et al. v. Royal Dutch Shell Petroleum Company et al., 226 F.3d 88 (2d Cir. decided September 14, 2000)*

The plaintiffs in *Wiwa*, United States residents, sued defendant foreign oil companies in the Southern District for colluding with the government of Nigeria in retaliating against people who opposed their oil exploration activities and related pollution and land expropriation. The Honorable Kimba Wood granted defendants'

4

*forum non-conveniens* dismissal motion, opining that England was a more appropriate

forum. The Second Circuit reversed.

The Honorable Pierre Leval, joined by Judges Oakes and Pooler, quoted *Gulf*

*Oil v. Gilbert,* 330 U.S. 501, 508 (1947)*,* for the proposition that a "plaintiff's choice

of forum should rarely be disturbed," and went on hold that the District Court showed

inadequate deference to the U.S. residents' choice of forum, and the hardship which

would be visited upon plaintiffs if they were forced to litigate in England:

> [O]nly if the defendant can establish "such oppressiveness and vexation . . . as
> to be out of all proportion to plaintiff's convenience [should the plaintiff's
> choice of forum be disregarded] [citing *Guidi* and *Koster*] In deciding whether
> to dismiss a case brought by lawful U.S. residents for *forum non conveniens,*
> the district court should consider whether, in view of the plaintiff's U.S.
> residence, such a dismissal would cause plaintiff significant hardship. . . .
> [T]he district court gave no consideration to the very substantial expense and
> inconvenience (perhaps fatal to the suit) that would be imposed on the
> impecunious plaintiffs by dismissal in favor of a British forum . . .

> In arguing that England is a more appropriate forum, defendants rely upon
> arguments such as the inconvenience of shipping documents from England to
> the United States and the additional cost for a Nigerian witness of flying to
> New York rather than London. These considerations are indeed a legitimate
> part of the *forum non conveniens* analysis, but (a) the defendants have not
> demonstrated that these costs are excessively burdensome, especially in view
> of the defendants' vast resources, cf. *Calavo Growers of California v.*
> *Generali Belgium,* 632 F.2d 963, 969 (2d Cir. 1980) (Newman, J. concurring)
> ("It will often be quicker and less expensive to transfer a witness or a
> document than to transfer a lawsuit."), and (b) the additional cost and
> inconvenience to the defendants of litigating in New York is fully
> counterbalanced by the cost and inconvenience to the plaintiffs of requiring
> them to reinstitute the litigation in England – especially given the plaintiffs'
> minimal resources in comparison to the vast resources of the defendants.
> These considerations cannot justify overriding the plaintiffs' choice of forum.

(*Wiwa, supra,* 226 F.2d at 107)

In a footnote, the Second Circuit further elucidated:

> The plaintiffs have already obtained . . . counsel to litigate this matter in the
> courts of the United States: there is no guarantee that they will be able to

> obtain equivalent representation in England without incurring substantial expenses. Two of the plaintiffs lived in the United States when the action was brought. The cost and difficulties of relocating themselves to England for the duration of the litigation is likely to be onerous. Finally, the plaintiffs and their attorneys have already made substantial investments of time, money and energy in pursuing this litigation in U.S. courts. Requiring the plaintiffs to replicate them in the British courts would substantially increase their burden. For these reasons, we believe that the [District Court] should have given greater consideration to the burden on the impecunious plaintiffs, rather than focusing . . . consideration of the convenience factors almost entirely on the convenience of the defendants.

(*Wiwa, supra,* 226 F.3d 88, fn.13)

*3. Iragorri v. United Technologies, 274 F.3d 65 (2d Cir. en banc, decided December 4, 2001)*

In *Iragorri v. United Technologies,* an American citizen and domiciliary of Florida fell down an elevator shaft and died in Columbia, South America. His survivors sued in the District of Connecticut where they could obtain jurisdiction over the corporation responsible for the elevator. After the District Court dismissed on *forum non conveniens* grounds, the Second Circuit reversed and remanded. (*Iragorri v. International Elevator,* 243 F.3d 678 (2d Cir. 2001)) Subsequently, the Second Circuit reheard the case *en banc*, "not out of dissatisfaction with the panel's disposition [citation], but because we believed that it would be useful for the full court to review the relevance of plaintiff's residence in the United States but outside the district in which the action is filed when the defendants seek dismissal for *forum non conveniens.*" (*Iragorri, supra,* 274 F.3d at 65)

A unanimous *en banc* court held that United States citizen plaintiff's choice of a United States forum deserves the same high degree of deference regardless of whether the citizen plaintiff resides in the same district where he sues. The unanimous *en banc* opinion, jointly authored by Judges Leval and Cabranes, further noted that

Plaintiffs' fear of returning to Columbia was a relevant factor, and that their

temporary residence in Columbia at the time of the accident was not relevant:

"Heightened deference to a plaintiff's chosen forum usually applies even where a

plaintiff has temporarily or intermittently resided in the foreign jurisdiction."

(*Iragorri, supra,* at 75)

The *en banc* Court also cautioned that "Courts should be mindful that just as

plaintiffs sometimes choose a forum for forum-shopping reasons, defendants may

also move for dismissal under the doctrine of *forum non conveniens,* not because of

genuine concern with convenience, but because of similar forum-shopping reasons.

District Courts should therefore arm themselves with an appropriate degree of

skepticism in assessing whether the defendant has demonstrated genuine

inconvenience and clear preferability of the foreign forum." (*Ibid.*) [4]

*4. Carey v. Bayerische Hypo-Und Vereinsbank AG, 370 F.3d. 234 (2d Cir. decided June 1, 2004)*

*Carey* is the sole recent Second Circuit case in which that Court affirmed

dismissal of a suit brought by an individual United States citizen on *forum non*

*conveniens* grounds. Defendant Bank places great emphasis on this case, but,  as

explained below, it constitutes a narrow exception to the general  rule, based, in

---

[4] Defendant Bank, in its briefing seeking dismissal, urges that *Iragorri* somehow dilutes the "oppressiveness and vexation" standard enunciated in both *Guidi* and *Wiwa.* This is not so. The oppressiveness and vexation standard set forth in both *Guidi*  and *Wiwa* is a direct quote from the United States Supreme Court's opinion in *Koster,* and therefore not subject to reversal or dilution by the Second Circuit *en banc* or otherwise.

Plaintiff further notes that *Koster's* "oppressiveness and vexation standard" is cited with approval by the Sixth Circuit in *Duha v. Agrium*, 448 F.3d 867, 874 (6th Cir. 2006), and by the Eighth Circuit in *Reid-Walen v. Hansen*, 933 F.2d 1390, 1395 (8th Cir. 1991). The Second Circuit, speaking in *Gross v. BBC,* discussed *infra,* also reiterates that a defendant seeking to overcome the strong presumption in favor of an American plaintiff's choice of a domestic forum must demonstrate "oppressiveness." *Gross v. British Broadcasting System,*  386 F.3d 224, 232 (2d Cir. 2004)

essence, on *in rem* jurisdiction, and a forum selection clause in the contract signed by plaintiff.

In 1992, Plaintiff Carey took out a mortgage to purchase, as an investment, an apartment in Germany, where she lived and worked for a years. After ten years, she stopped paying the mortgage, and sued, ***first in Germany*** and then in the Southern District of New York, seeking rescission and other remedies. Judge Preska of this district granted the Defendant's motion to dismiss on *forum non conveniens* grounds. The Second Circuit affirmed, per Judge Leval, while emphasizing that ***"[w]e in no way retreat from our emphasis in Iragorri and Wiwa on the presumptive validity of a United States resident's choice of a United States forum for litigation."*** (*Carey,* 370 F.3d at 238. Emphasis added.) The Court explained:

> Plaintiff stresses that she, unlike the defendant bank, is an individual of modest means for whom the obligation to litigate in a foreign land would represent a major difficulty.
>
> Plaintiff contends her case is . . . like *Wiwa,* 226 F.3d at 108*, and Iragorri v. United Technologies,* 274 F.3d 65, 75 (2d Cir. 2001) (*en banc*), in which we set aside *non conveniens* dismissals that would have required individuals resident in the United States to bring litigation in foreign countries. In *Wiwa* and *Iragorri,* we stressed the presumptive validity of a United States resident's choice of a United States forum.
>
> We agree in part with plaintiffs' argument. For an individual of modest means, the obligation to litigate in a foreign country is likely to present a considerably greater obstacle than for a large business organization – especially one maintaining a business presence in foreign countries. For this reason, such an individual's choice of the home forum may receive greater deference than the similar choice made by a large organization that can easily handle the difficulties of engaging in litigation abroad.
>
> Nonetheless, we find in the particular circumstances that the district's court's decision to require plaintiff to bring her suit in Germany was not unreasonable. At the time of the events in question, plaintiff was living in Germany. While living in Germany, she voluntarily entered into a contract to purchase and finance an apartment unit in Germany, representing a long-term

8

investment in German real property. Such transactions in Germany reasonably give rise to the expectation on all sides that any litigation arising from them will be conducted in Germany. ***Indeed, the contracting papers provided that the German courts would have jurisdiction in the event of any dispute.***[5]

 (*Ibid.* Emphasis added)

*5. Gross v. British Broadcasting Corporation, 386 F.3d 224 (2d Cir. decided October 8, 2004)*

*Gross v. British Broadcasting Corporation* is the most recent and  most closely on point of the five twenty-first century Second Circuit *forum non conveniens* cases involving individual United States citizens or residents. Plaintiff Pat Gross, a documentary film-maker, travelled repeatedly to England to negotiate a contract with defendant British Broadcasting Corporation ("BBC") for production of an animal rights documentary. Eventually, BBC produced the documentary without Gross's participation and aired it in England. Gross sued in the Southern District alleging that BBC misappropriated her concept.

Defendant BBC moved for dismissal on *forum non conveniens* grounds, urging that the case should be tried in England because most of the witnesses and documents were in England, and the court trying the case would need to apply English law. Gross countered that she was an individual of modest means, and could afford to litigate the case only with contingent fee counsel which would not be available in England. The Honorable Alvin Hellerstein granted BBC's motion, and the Second Circuit reversed.

---

[5] The First Circuit case of *Mercier v. Sheraton,* 981 F.2d 1345 (1st Cir. 1992)*,* cited by Defendant, also involved a forum selection clause specifying a foreign jurisdiction, as well as the American plaintiff's extensive international business activities which included operating a cruise ship casino and entering into a partnership with Turks to operate a casino in Istanbul. By contrast, in the case at bar, Ziraat Bank's form contract contained a space for selection of a forum, but the space was left blank. (See Exhibit D to Declaration of Michael T. Sullivan, paragraph 13) Moreover, as discussed, *infra,* Therese Giurlando did not conduct business in Turkey.

Noting that "Pat Gross is an American citizen who has lived and worked in New York for 22 years," the Circuit Court opined that "a plaintiff's choice of her home forum is ordinarily entitled to great deference because it is presumed to be convenient," and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." (*Gross, supra*, 386 F.3d at 227, 230) The Second Circuit further elucidated the deference owed to a  citizen plaintiff in the factual context of the case:

> Here there are somewhat conflicting considerations. Appellant flew to England in hopes of making a deal with the companies located there. She should not therefore be surprised that most of the witnesses and relevant documents are there. By seeking out business in that country, Gross could reasonably expect that disputes arising from those contacts might be litigated in the courts of Great Britain. Conversely, the BBC knew Ms. Gross was an American who lived in New York, and that much of her research on the project had been performed in the United States. ***The BBC's own presence in New York is reason for the BBC to expect that circumstances may arise that would require it to litigate here. . .***

> This case . . . presents a situation in which courts should initially be most deferential: a U.S. plaintiff suing at home for valid reasons. This conclusion does not foreclose a dismissal for *forum non conveniens*, since the forum may prove to be excessively burdensome to the defendant [citation], but the starting point will be one that substantially favors the plaintiff.

> The district court recognized this by noting that "[appellant] is entitled to the protection and the rights and vindication of the rights from a New York forum, at least on a *prima facie* basis." But that deference should have been very great indeed, and the fact that the trial court so readily ruled in favor of the defendant's choice of forum leads us to question whether the district court in fact gave appropriate deference to plaintiff's choice.

(*Gross, supra,* 386 F.3d at 231. Emphasis added.)

Having so emphasized the applicable standard of deference, the Second Circuit concluded that BBC's showing of inconvenience fell "far short of the level of oppressiveness the defendant required to overturn a U.S plaintiff's choice of her

home forum." (*Gross, supra,* 386 F.3d 232) The Second Circuit was not persuaded by the considerations that: 1) the law to be applied was English, 2) "the relevant probative evidence and essential witnesses, aside from appellant, were located in England, and 3) BBC wished to implead a third party which could only be sued in England. Instead, the Circuit court observed that "[i]f appellant is correct, and she cannot obtain counsel [on a contingency basis] in England, then the balance tips in favor of New York." (*Gross, supra,* 386 F.3d at 233) The Second Circuit also went on to explain:

> We note, in addition, two further considerations that support retaining the case in New York. First, appellant is an individual who claims to be of modest means; the burden of litigating abroad is likely a greater obstacle to an individual than to a large business corporation. (*See Carey v. Hypo-Und Vereinsbank, AG,* 370 F.3d 234, 238, (2d Cir. 2004)) Second, the subject of this suit is not like a real property action with a physical connection to a particular location. Rather, the subject matter is creative work – intellectual property – and so the suit itself has less natural connection to any particular forum, leaving the convenience of the parties to be the primary consideration. . .

(*Ibid.*)

11

**B. Application of Law to This Case -- Ziraat Bank Has Not Made A Sufficient Showing to Overcome the Presumption in Favor of a Citizen Plaintiff's Choice of Her Home Forum**

In order to obtain dismissal of this action on *forum non conveniens* grounds, Defendant Bank must both demonstrate the existence of an available and adequate alternative forum, ***and*** demonstrate inconvenience, oppression and vexation out of all proportion to plaintiff's inconvenience. "A defendant does not carry the day simply by showing the existence of an adequate alternative forum." (*Iragorri, supra,* 274 F.3d at 74) As discussed below, Turkey may, in the abstract, be an adequate forum, but Ziraat Bank has not come close to demonstrating the lop-sided and oppressive balance of inconvenience needed to overcome an American plaintiff's choice of a domestic forum.

*1. The Turkish Forum*

According to Defendant's Turkish legal expert, Dr. Ergun Ozsunay, Turkey is available as an alternative forum for this case because Ziraat Bank is prepared to waive the sovereign immunity which it ordinarily enjoys in that country, jurisdiction over the Bank could be obtained in either Adana or Ankara, and Turkish law provides Mrs. Giurlando with appropriate causes of action and remedies. In particular, Dr. Ozsunay opines that Turkish Banking law requires Turkish banks to deal with customers in a just, honest, socially responsible manner (Ozsunay Declaration ("OD") paragraph 44), imposes a "duty" on banks to "offer clear, comprehensible, and correct information to their customers" (OD paragraph 45), and further requires banks to "inform their customers in an open, easily understandable way regarding the rights and responsibilities, benefits and risks, attached to the services offered to them,"

12

consistent with principles of "honesty, impartiality, reliability, and transparency." *(Ibid.)* Where a bank fails to meet its obligations, "Turkish law permits bank customers to bring claims against banks for breach of contract (duty of care) and negligence." (OD paragraph 4) If Ms. Giurlando prevailed on such claims, according to Dr. Ozsunay, she would be entitled, under Turkish law,  to compensatory damages for the amount withdrawn from the joint account by Cicek, "plus legal interest if she proves Ziraat Bankasi's breach of covenant of good faith, due care, and fair dealing (negligence on the part of the bank under the agreement.)" (OD paragraph 61) She would also be entitled to damages for psychological distress subject to proof pursuant to Article 49 of the Turkish Code of obligations. (OD at 62)

While Dr. Özsunay's declaration, taken at face value,[6] establishes that the Turkish courts would entertain Ms. Giurlando's action against Ziraat Bank, and that Turkish law provides Ms. Giurlando with appropriate causes of action and remedies, it has no bearing whatever on the balance of inconvenience discussed below.[7]

### 2. Plaintiff Is Absolute Unable to Litigate in Turkey

It would be a gross misnomer to describe the consequences of requiring Mrs. Giurlando  to litigate in Turkey as mere "inconvenience." Mrs. Giurlando is emotionally, physically and financially absolutely incapable of litigating in Turkey. As a consequence of her experience in Turkey, she suffers from severe Post-

---

[6] Dr. Özsunay's declaration will have to be taken substantially at face value for purposes of this motion because Plaintiff has not, to date, been able to locate an affordable Turkish law expert. (See Grayson Declaration re cost of Turkish law expert and Giurlando Declaration re Plaintiff's financial condition.)

[7] The Court may also safely assume that Ziraat Bank is forum shopping because it either: 1) expects more favorable treatment in a Turkish Court, or 2) knows that plaintiff cannot, for personal and financial reasons, pursue an action in Turkey. Otherwise, Ziraat would not have incurred legal fees for this *forum non conveniens* motion which undoubtedly exceed the cost of flying few employees to New York for these proceedings.

Traumatic Stress Disorder, and frequent panic attacks for which she takes medication. (Giurlando Declaration paragraph 7; Atwood Declaration paragraphs 3-9) Mrs. Giurlando also suffers from a cardiac condition, mitral valve leakage, which, in interaction with the panic attacks, causes severe heart palpitations, dizziness, and shortness of breath. (Giurlando Declaration paragraph 7; Fishberger Declaration paragraph 2) Mrs. Giurlando's personal physician has opined that a trip to Turkey would be medically harmful because of her cardiac condition. (Fishberger Declaration paragraph 2) A well-qualified psychotherapist, who examined Mrs. Giurlando, has opined that another trip to Turkey would likely cause Mrs. Giurlando to suffer an emotional break down. (Atwood Declaration paragraph 10)

Furthermore, Mrs. Giurlando simply cannot afford to litigate in Turkey. She receives $1,206 a month in social security, and earns $11.66 an hour working part time as a high school hall monitor. After rent, food and other basic expenses, she has nothing left over. (Giurlando Declaration paragraph 9) Unlike her present counsel of record, Turkish lawyers do not work on a contingent fee basis, and the only suitable Turkish lawyer her present counsel was able to interest in the case demanded a retainer of $17,700, just for working on an opposition to the *forum non conveniens* motion. (Grayson Declaration paragraph 4) What is more, Turkish Courts demand a deposit against costs, generally in the vicinity of 15% of the amount in controversy. (Grayson Declaration paragraph 5) And, in addition to these legal costs, Mrs. Giurlando would also incur transportation and hotel costs associated with a trial in Turkey. All of this is absolutely beyond her means.[8]

---

[8] It also bears emphasis that Mrs. Giurlando lacks the higher education, sophistication, and life experience to manage litigation abroad. Unlike the plaintiffs in certain other cases (e.g. *Carey* and *Mercier, supra*), she is not

In its totality, Mrs. Giurlando's situation bears a remarkable resemblance to the situation of the elderly plaintiffs of modest means in *Assicurazioni Generali Sp.A Holocaust Litigation*, 228 F. Supp.2d 384, 364-366 (S.D.N.Y. 2002), where Judge (now Attorney General) Michael Mukasey, denied a motion to dismiss for *forum non conveniens,* observing:

> Defendants' motion to dismiss may not be based so much on the increased convenience dismissal would offer them, but rather based on the severe inconvenience it would work on plaintiffs in this case. While defendants have offices in the United States and are quite familiar with this forum, plaintiffs have no connections with the relevant European jurisdictions. *See Bodner,* 114 F.Supp.2d at 132 (denying *forum non conveniens* motion where "plaintiffs live within the jurisdiction and would have difficulty travelling to France," but defendants were "large banking institutions that maintain offices and transact business in the United States and specifically in New York City." Trial in Europe would force plaintiffs, many of whom are elderly, and many of whom likely will be witnesses, to travel to Europe to prosecute their claims – a great burden even assuming that plaintiffs could afford such an effort.
>
> Plaintiffs would also have to hire new lawyers [if their claims were moved to Europe.  .  . Many of the skills of plaintiffs' current lawyers would be wasted in European civil law systems which do not provide for pretrial discovery. . . The need to rely on local counsel is also significant because . . . contingency fees are not found in most foreign jurisdictions.
>
> **In light of the above factors, plaintiff's contentions that being forced to litigate in Europe would be a death knell for their claims may not be an exaggeration. *See Irish Nat'l Ins. Co. v. Aer Lingus,* 739 F.2d 90, 91 (2d Cir. 1994) (holding that *forum non conveniens* dismissal is inappropriate where trial in an alternative forum will realistically never occur.)**

(Emphasis added.)

---

a person experienced in residing and conducting business abroad. She is a high school graduate and life-long homemaker, who has scarcely left the state of New York, except for her one month trip to Turkey. (Giurlando Declaration, paragraph 3) Moreover, the banking transaction complained of in this case was Mrs. Giurlando's only financial transaction in Turkey. (Giurlando Declaration, paragraph 6)

### 3. The Comparatively Modest Inconvenience to Defendant of Litigating in New York

While *forum non conveniens* dismissal would be a death knell to plaintiff's case, continued litigation of this case in the Southern District would inconvenience Defendant as a fly inconveniences an elephant. Ziraat Bank, backed by the Turkish state itself, is, according to its First Legal Counsel, Yurdagul Ruzgar, "the biggest and oldest bank in Turkey" with "1,145 branches, 70 special operational centers, 27 bureaus, and over 20,872 employees serving more than 20 million customers." (Ruzgar Declaration, paragraphs 1-3)  Ziraat's English-language website, www.ziraatnewyork.com, further boasts: "As well as leading the Turkish banking sector in Turkey, T.C. Ziraat Bankasi acts as the flagship bank for Turkey's penetration of the global market." The website reflects that Ziraat Bank maintains branch offices and representative offices in New York, London, Macedonia, Bulgaria, Georgia, and Cyprus. It also lists subsidiary and affiliated banks in Kazakhstan, Uzbekistan, Russia, Bosnia, Azerbaijan, France, and the Netherlands. The German Ziraat Bank, Ziraat Bank Internacional AG, maintains offices in five different German cities. (Grayson Dec. paragraph 8)

Yet notwithstanding its global reach and the New York branch which renders it jurisdictionally present in the Southern District for all purposes, Ziraat Bank complains that permitting Mrs. Giurlando to proceed against it here is unduly inconvenient. The particulars of Ziraat Bank's inconvenience argument, and the reasons why the argument is not persuasive, are discussed below.

a. Documents Allegedly Located In Turkey

Ziraat Bank makes much of documents allegedly in the Turkish language and located in Turkey. Plainly, this is not a big document case. Paralegals will not be pouring through warehouses of paper. It would appear that the key documents (e.g. documents used to open the Ziraat bank account) have already been translated into English and placed before this Court as exhibits. It is difficult to imagine that there could be as much as one additional inch of paper involved in this case. Therefore, the production of documents in not a significant consideration.

b. Witnesses Located In Turkey

The witnesses with testimony relevant to liability in this case, particularly as the complaint is now amended to reflect information supplied by Ziraat in connection with this motion, are those people present at the opening of the bank account, and perhaps, to a lesser degree, people present when Cicek withdrew funds, when plaintiff discovered that Cicek had withdrawn the funds, and when plaintiff made her final visit to the bank with a United States consular officer. This is a relatively small pool of witnesses. It includes: 1) plaintiff, 2) the bank employees who dealt with her (Ziraat says there were three or four such people); 3) Mevlut Cicek, and 4) perhaps Eric Green, the consular officer. Witnesses testifying with respect to plaintiff's emotional distress damages would be plaintiff herself, and psychotherapists, friends and family, all found in the New York Metropolitan area.

The bank employees are party witnesses and Ziraat has the means to produce them in New York for trial. As far as depositions are concerned, the Bank can choose between producing the employees in New York for deposition, or voluntarily

17

arranging for depositions in Turkey. Such arrangements can be quite flexible, perhaps utilizing an international conference center. Plaintiff's counsel has participated in a video-taped deposition where plaintiff's principal and his counsel were in Manila while defense counsel, the translator, and the court reporter were in New York. She also participated in a deposition where the court reporter was in New York and everyone else was in Rotterdam. Both arrangements worked quite well. (Grayson Dec. paragraph 7)  It might even be possible for the Bank here to use such videotaped deposition testimony in lieu of live testimony at trial if it so desired. "[A]s a number of courts have discussed, the time and expense of obtaining the presence and testimony of foreign witnesses is greatly reduced by commonplace modes of communication and travel. [citation] Any foreign witness testimony may be taken, if possible by deposition or other means." (*Reid-Walen v. Hansen,* 933 F.2d 1390, 1397 (8th Cir. 1991))[9]

The testimony of Mevlut Cicek is another matter. Mr. Cicek may well have relevant evidence, but we cannot presume that his testimony would be available if this case were tried in Turkey. The Bank has not represented that Mr. Cicek is still in Adana, much less that he would be in Adana when the case went to trial. For all we know, Mr. Cicek could already have departed Turkey for Europe or even the United States. Moreover, even if Cicek were in Turkey at the time of trial, he could not be compelled to testify. Under Article 245 of the Turkish Code of Civil Procedure, the

---

[9] The Bank also complains of possible language difficulties in involving Bank employees. The bank employees who spoke to Mrs. Giurlando in English obviously do speak this language -- although the Bank may supply a translator for them if desired. Conversely, if Mrs. Giurlando were required to sue in Turkey, she would not be able to effectively participate in trial of her own case because the proceedings would be conducted in Turkish.

husband or wife of a party may refuse to testify. (OD paragraph 69) Cicek might well decline to testify concerning his own despicable conduct.[10]

As for Eric Green, he is a comparatively minor witness, and does, as a United States consular officer, travel to the East Coast of this country from time to time.

c. Application of Foreign Law

Defendant asserts, with cursory citation to authority,[11] that this case is governed by Turkish law rather than New York law. Assuming *arguendo* that this is so, "the task of deciding foreign law is a chore that the federal courts are called upon to perform with regularity," and does not mandate dismissal. (See *Assicurazioni Generali, supra,* per Mukasey, J., 228 F.Supp.2d at 369, and authorities cited therein.) Indeed, the Second Circuit has counseled that "the need to apply foreign law is not in itself a reason to apply the doctrine of *forum non conveniens,* and [district courts] must guard against an excessive reluctance to undertake the task of deciding foreign laws." (*Manu Int'l S.A. v. Avon Products, Inc.,* 641 F.2d 62, 67-68 (2d Cir. 1981)) In particular, the need to apply foreign laws does not overcome the deference due a citizen plaintiff's choice of a domestic forum. (*Seales v. Panamanian Aviation,* 2008 U.S. Dist. LEXIS 14429 (E.D.N.Y. decided February 25, 2008). Accord *Rahl v. Bande,* 328 B.R. 387, 412 (S.D.N.Y. 2005))[12]

---

[10] Indeed, it is possible that he would be able to exercise a privilege against self-incrimination.
[11] See Defendant's Brief in support of motion to dismiss at 17.
[12] Ziraat also argues offers a perfunctory "public interest" argument to the effect that a New York jury should not waste its time on a case which is not local, and that if a case began at the same time in Turkey and S.D.N.Y., it might finish a bit sooner in Turkey. Plainly, a New York jury would have a legitimate interest in protecting Mrs. Giurlando, who has lived in the metropolitan area for her entire life. And given that this case is already filed, it would undoubtedly wrap up sooner than a case filed in Turkey on some future date.

### *4. Comparative Inconvenience Analysis*

Without a doubt, continuation of this action in the Southern District would impose far less burden on Ziraat Bank than dismissal of this action in favor of a Turkish forum would impose upon Therese Giurlando. If this action continues here, a few bank employees will need to travel to New York, or arrangements will need to be made for their deposition in Turkey. It may be necessary for the parties to obtain translations of a few more Turkish statutes and/or Turkish documents. This is a manageable burden for a state-owned bank, which maintains branches and subsidiaries around the globe, including a midtown Manhattan branch, and describes itself as "leading the Turkish banking sector in Turkey, [and] act[ing] as the flagship bank for Turkey's penetration of the global market." It is not an unreasonable burden to impose upon a bank which accepted for deposit, a quarter million dollar check payable to a United States citizen drawn on a New York bank, and handled the transaction in the highly questionable manner described by the Amended Complaint herein. What is more, as the account agreement prepared by the Bank contained a choice of forum clause 'blank' which the bankers did not trouble to fill in, the Bank should not now be heard to complain of plaintiff's choice of forum. (See Exhibit D to Declaration of Michael T. Sullivan, paragraph 13)

Conversely, the burden dismissal in favor of a Turkish forum would impose upon Mrs. Giurlando would amount to a death knell for her case. As previously set forth, she is psychologically, physically, and financially incapable of going forward in Turkey.

Plainly then, Ziraat Bank has not borne its burden of overcoming the strong presumption in favor of an American citizen's choice of her home forum by demonstrating such "oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience." If it was an abuse of discretion for a district court to require documentary film  producer Pat Gross to litigate in England, it would be, *a fortiori,* an abuse of discretion for this court to require housewife and hall monitor Therese Giurlando to litigate in Turkey.

The motion to dismiss for *forum non conveniens* should accordingly be denied.

21

## II.

### The Complaint Should Not Be Dismissed on Grounds of Sovereign Immunity

This lawsuit falls within the commercial activity exception to the Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C section 1605(a)(2), which provides:

> A foreign state shall not be immune from the jurisdiction of the Courts of the United States or any of the states in any case . . . in which the action is based on [1] a commercial activity carried on in the United States by a foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with the commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

Clause three above is applicable to this case. As the United States Supreme Court explained, interpreting 28 U.S.C section 1605(a)(2)(3) in *Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 618 (1992), "an effect is 'direct' if it follows 'as an immediate consequence of the defendant's activity.'" There is ***no*** further requirement of forseeability or substantiality, so long as the effect is not trivial. (*Ibid.*)  Thus, for example, failure to make a payment contractually required to be made into a United States bank account has a direct effect in the United States. (*Republic of Argentina, supra.* Accord, *Commercial Bank of Kuwait v. Rafidain Bank,* 15 F.3d 238 (2d Cir. 1994)) Similarly, a wire transfer from a bank in the United States to a state-owned bank in China falls within the ambit of 28 U.S.C. section 1605(a)(2)(3). (See *Human Rights in China v. Bank of China,* 2003 WL 22170648 (S.D.N.Y. 2003) (state-owned bank may be sued for misconduct in handling U.S. to China wire transfer, but not for misconduct with respect to Chinese bank account after account is credited.))

In this case, Ziraat Bank's actions and omissions in: 1) falsely informing plaintiff that she could not open her own bank account without a Turkish tax

identification number, 2) failing to inform her that there was a standard form of joint account available in which both signatures were required for withdrawals, and 3) instead offering the disjunctive ownership joint account as the only available alternative, caused Giurlando to open  a disjunctive ownership account and deposit into it the check payable to her, drawn on Citibank in Port Jefferson, New York. Ziraat Bank's acts set forth above had a "direct effect" in the United States because they had the "immediate consequence" of causing the Port Jefferson, New York Citibank branch  to pay approximately a quarter million dollars of plaintiff's money into the newly established disjunctive ownership Ziraat Bank account. This direct and distinctively non-trivial "effect" in the United States, resulting from Ziraat Bank's actions in Turkey, brings this case within the commercial activity exception to the Foreign Sovereign Immunities Act.

### III.

### Defendant's Rule 12(b)(6) Motion is Moot

Substantially contemporaneously with its filing of this opposition to Defendant's motion, Plaintiff is also filing an Amended Complaint as authorized by Federal Rule of Civil Procedure 15(a) (complaint may be amended once, "as a matter of course," without court approval, prior to filing of a responsive pleading.) (See *Barbara v. New York Stock Exch.,* 99 F.3d 29, 56 (2d Cir. 1996) (motion to dismiss is not "responsive pleading" for purposes of Rule 15(a)). The Amended Complaint, which incorporates important new factual and legal information contained in Defendant's motion papers, moots the pending Rule 12(b)(6) motion. (See *Kolar et al. v. New York-Presbyterian Hospital et al.,* 455 F.3d 118 n. 2 (2d Cir. 2006))

Defendant may, of course, file a new Rule 12(b)(6) motion in response to the Amended Complaint. In this connection, it would be useful to promptly reach some determination as to whether this case is governed by Turkish law or New York law. As matters stand, Defendant has asserted, with virtually no citation to authority, that this case is governed by Turkish law, and urges the need to apply foreign law in support of its *forum non conveniens* motion. Yet Defendant simultaneously argues that the Complaint should be dismissed for failure to state a claim under New York law. It would undoubtedly be helpful to resolve choice of law issues prior to any further briefing under Rule 12(b)(6).

## Conclusion

Defendant has failed to make the showing of vexation and oppression out of all proportion to plaintiff's convenience, necessary to prevail on a *forum non conveniens* motion where the plaintiff is an American citizen suing at home. This case is not barred by sovereign immunity because it falls within the commercial activity exception to that doctrine. Defendant's Rule 12(b)(6) motion is now moot.

For all of these reasons, Defendant's motion to dismiss should be denied.

Respectfully submitted,

Violet Elizabeth Grayson (VEG 2792)
Counsel for Plaintiff

24