SULLIVAN & WORCESTER LLP
Michael T. Sullivan (MS 3158)
Karin Klapper Orenstein (KO 1274)
1290 Avenue of the Americas, 29th Floor
New York, New York 10104
(212) 660-3000

*Attorneys for Defendant*
*T.C. Ziraat Bankasi A.Ş.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
Theresa Guirlando,                                  :
                                                    :        07 Civ. 10266 (RJS)
                          Plaintiff,                :
                                                    :
            - against -                             :
                                                    :
T.C. Ziraat Bankasi A.Ş.                             :
                                                    :
                          Defendant.                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .........................................................................................1

ARGUMENT ......................................................................................................................2

I.     The FSIA Commercial Activity Exception Does Not Apply ...............................2

       A.     The movement of funds *from* a U.S. bank
             account is not a direct effect in the United States ......................................2

       B.     Mere financial loss is not a direct effect in the United States..................4

II.    Plaintiff's New Witnesses and Information
       Do Not Affect the Forum Non Conveniens Analysis .........................................5

       A.     Plaintiff ignores Second Circuit precedent providing the Court
             with a roadmap for determining forum non conveniens motions ...........5

       B.     Plaintiff's newly disclosed witnesses and information about her
             inability to litigate in Turkey are insufficient to avoid dismissal ...........6

III.   Defendant's Motion for Failure to State a Claim
       Should Be Decided Based on its Moving Papers.................................................9

     CONCLUSION....................................................................................................10

## TABLE OF AUTHORITIES

### Federal Cases

Antares Aircraft, L.P. v. Fed. Republic of Nigeria, 999 F.2d 33 (2d Cir. 1993) ........................ 3-4

Carey v. Bayerische Hypo-Und Vereinsbank AG, 370 F.3d 234 (2d Cir. 2004) ................ 8 & n.4

Commercial Bank of Kuwait v. Rafidain Bank, 15 F.3d 238 (2d Cir. 1994) .................................3

Feinstein v. Curtain Bluff Resort, 1998 WL 458060 (S.D.N.Y. Aug. 5, 1998) ...................... 7 n.3

Goodman v. Schmalz, 80 F.R.D. 296 (E.D.N.Y. 1978) ...................................................9

Guidi v. Intercont'l Hotels, 224 F.3d 142 (2d Cir. 2000) ................................................5

Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947) ........................................................ 5-6

Hanil Bank v. Pt. Bank Negara Indonesia, 148 F.3d 127 (2d Cir. 1998) ......................................3

Henderson v. Metro. Bank & Trust Co., 502 F. Supp. 2d 372 (S.D.N.Y. 2007)............................8

Human Rights in China v. Bank of China,
    2003 WL 22170648 (S.D.N.Y. Sept. 18, 2003)............................................... 2 & n.2

Iragorri v. United Techs. Corp., 274 F.3d 65 (2d Cir. 2001)........................................ 5-6

Irwin v. World Wildlife Fund, Inc., 448 F. Supp. 2d 29 (D.D.C. 2006) .......................................9

Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518 (1947)........................................... 5-6

LaSala v. UBS, AG, 510 F. Supp. 2d 213 (S.D.N.Y. 2007)...........................................10

Lee v. Bankers Trust Co., 166 F.3d 540 (2d Cir. 1999) .............................................10

Murray v. BBC, 81 F.3d 287 (2d Cir. 1996) ..................................................8

Neewra, Inc. v. Manakh Al Khaleej Gen. Trading and Contracting Co.,
    2004 WL 1620874 (S.D.N.Y. July 20, 2004) ....................................................7

Piper Aircraft v. Reyno, 454 U.S. 235 (1981) ...................................................5

Republic of Argentina v. Weltover, Inc., 504 U.S. 607 (1992)........................................3

Rudetsky v. O'Dowd, 660 F. Supp. 341 (E.D.N.Y. 1987) .............................................8

Ugarte v. Johnson, 40 F. Supp. 2d 178 (S.D.N.Y. 1999)..................................................7

Van Der Velde ex rel. Van Der Velde v. Philip Morris Inc.,
    2004 WL 48891 (S.D.N.Y. Jan. 9, 2004) ....................................................................7

Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230 (2d Cir. 2002) ................... 3-4

**State Cases**

Cousins v. Instrument Flyers, Inc., 44 N.Y.2d 698 (1978) ...........................................................10

**Federal Statutes**

28 U.S.C. § 1605(a)(2) (commercial exception to Foreign Sovereign Immunities Act)................2

**Federal Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................................................10

**Other Authorities**

Mitral Valve Prolapse: Prognosis and Treatment, The Merck Manuals Online Medical
    Library, available at <http://www.merck.com/mmpe/sec07/ch076/ch076d.html> ............7 n.3

**Preliminary Statement**

Defendant T.C. Ziraat Bankasi A.Ş. ("Ziraat Bankasi" or the "Bank") predicated its motion to dismiss on three bases: forum non conveniens, the Foreign Sovereign Immunities Act ("FSIA"), and Plaintiff's failure to state a claim. Nothing in Plaintiff's opposition papers, including her surprising introduction of new witnesses, rebuts any argument that the Bank advanced. In reply, the Bank makes three points.

First, Ziraat Bankasi is immune from the jurisdiction of U.S. courts under the FSIA. Plaintiff's interpretation of the FSIA's commercial exception is not supported by case law. Accordingly the Court has no subject-matter jurisdiction over this litigation or personal jurisdiction over the Bank. (Point I.)

Second, at a late date, and despite the Court's request for such disclosures at the January pre-motion conference, Plaintiff introduced new witnesses and new information, ostensibly relevant to the forum non conveniens motion. Plaintiff's argument that this evidence conclusively swings the balance of factors in her favor is contrary to case law. (Point II.)

Third, Plaintiff's opposition refers to an amended complaint, which Plaintiff asserts moots Defendant's motion to dismiss for failure to state a claim. As Plaintiff has not filed its proposed amended complaint, we rest on our earlier arguments and do not belabor Plaintiff's decision not to respond to this motion.[1] (Point III.)

---

[1] At Defendant's request, Plaintiff provided the Bank with an electronic version of an unexecuted amended pleading on Monday, May 12, 2008. It is not filed with the Court and it is not attached to Plaintiff's opposition papers. To avoid any further confusion or delay that would follow in the event Plaintiff files the amended complaint during the two week period allocated for Defendant's reply, Defendant files this reply one week early.

**Argument**

I.    <u>The FSIA Commercial Activity Exception Does Not Apply</u>

The commercial activity exception to the Foreign Sovereign Immunities Act ("FSIA") does not apply.  The third clause of 28 U.S.C. § 1605(a)(2), on which Plaintiff relies, provides:

> A foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case . . . in which the action is based . . . upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere <u>and that act causes a direct effect in the United States</u>.

<u>Id.</u> (emphasis added).  (Pl. Br. at 22.)  Plaintiff asserts that the Bank's actions in Turkey had the requisite direct effect in the United States "because they had the 'immediate consequence' of causing the Port Jefferson, New York Citibank branch to pay approximately a quarter million dollars of plaintiff's money into the newly established disjunctive ownership Ziraat Bank account."  (Pl. Br. at 23)[2]  The transfer of money from a New York bank, however, does not meet the direct effect element of the FSIA commercial activity exception.

A.    The movement of funds *from* a U.S. bank
         <u>account is not a direct effect in the United States</u>

Each of the three cases that Plaintiff cites -- and FSIA case law is replete with further examples -- involved the failure to transfer funds <u>into</u>, rather than <u>from</u>, U.S. bank accounts.  (Pl. Br. at 22.)  In <u>Human Rights in China v. Bank of China</u>, 2003 WL 22170648 (S.D.N.Y. Sept. 18, 2003), the defendant bank's alleged bad act was its "failure to <u>rescind</u> the wire transfer and <u>return</u> the funds" to a New York account before crediting a Beijing account.  <u>Id.</u> at *6 (emphases

---

[2]    In this context the only relevant allegations are those concerning Bank actions that preceded the deposit of Plaintiff's funds in the Turkish account.  As Plaintiff acknowledges in her parenthetical description of <u>Human Rights in China v. Bank of China</u>, misconduct by a foreign state with respect to a foreign bank account <u>after</u> the account has been credited is not a valid basis for lifting sovereign immunity.  <u>See</u> <u>Human Rights in China</u>, 2003 WL 22170648, at *7 (S.D.N.Y. Sept. 18, 2003). (Pl. Br. at 22.)

added).    Similarly, <u>Republic of Argentina v. Weltover, Inc.</u>, 504 U.S. 607 (1992), and <u>Commercial Bank of Kuwait v. Rafidain Bank</u>, 15 F.3d 238 (2d Cir. 1994), involved failures to make payments <u>into</u> U.S. bank accounts.    See <u>Weltover</u>, 504 U.S. 607 at 618-19 ("Argentina's unilateral rescheduling of [bond] maturity dates . . . had a 'direct effect' in the United States" because it failed to make payments on the bonds to accounts in New York); <u>Commercial Bank of Kuwait</u>, 15 F.3d at 241 ("The failure of the Iraqi Banks to remit funds in New York, as they were contractually bound to do, had a direct effect in the United States under <u>Weltover</u>.").    <u>See also</u> <u>Virtual Countries, Inc. v. Republic of South Africa</u>, 300 F.3d 230, 239-40 (2d Cir. 2002) (collecting cases in which the defendants failed to remit funds to U.S. accounts or perform some other required act in the United States).    Indeed the Supreme Court's decision in <u>Weltover</u> was clear as to the reason it found a direct effect in the United States:    "<u>Money that was supposed to have been delivered to a New York bank for deposit was not forthcoming</u>."    504 U.S. at 618-19 (emphasis added).

    The commercial activity exception is not satisfied, however, where funds are wrongfully transferred <u>from</u> a U.S. bank account.    Under the Second Circuit's "legally significant acts" test, the direct effect in the United States must be a legally significant aspect of the alleged wrong. <u>See</u>  <u>Antares Aircraft, L.P. v. Fed. Republic of Nigeria</u>, 999 F.2d 33, 36 (2d Cir. 1993) (concluding that the "legally significant acts" test survived <u>Weltover</u>); <u>see also</u> <u>Virtual Countries</u>, 300 F.3d at 240-41 (noting the circuit's endorsement of the test); <u>Hanil Bank v. Pt. Bank Negara Indonesia</u>, 148 F.3d 127, 133 (2d Cir. 1998) (noting that <u>Antares</u> reaffirmed the test).    Where a foreign tort involves the wrongful of transfer of a plaintiff's money, the fact that the transferred funds were drawn on a U.S. account is considered "fortuitous" and therefore not a legally significant fact.    <u>Antares</u>, 999 F.2d at 36 (viewing the fact that the funds came from New York as

"entirely fortuitous and entirely unrelated to the liability of [the Nigerian defendants]").  The Second Circuit explicitly stated this rule in Antares, holding that the fact that "money came from a bank account in New York is a fact . . . without legal significance to the alleged tort."  Antares, 999 F.2d at 36.  Here, the fact that Plaintiff presented a check drawn on a New York bank was likewise insignificant; for purposes of Defendant's alleged misconduct, it could have been drawn on any bank in the world.

B.     Mere financial loss is not a direct effect in the United States

Even if Plaintiff could recast her (voluntary) deposit in Turkey as an act causing a financial loss in the United States to a U.S. citizen, she would not demonstrate the required direct effect.  Second Circuit case law is clear that "the fact that an American individual or firm suffers some financial loss from a foreign tort cannot, standing alone, suffice to trigger the exception."  Antares, 999 F.2d at 36 (finding no "direct effect" on the basis of financial loss involving a check being fortuitously drawn on a New York bank); see Virtual Countries, 300 F.3d at 240 (discussing Antares with approval).  The Antares court reasoned that a contrary holding would largely eviscerate the FSIA's provision of immunity for foreign states in tort cases because "[m]any commercial disputes . . . can be pled as torts of conversion or fraud and would . . . result in litigation concerning events with no connection with the United States other than the citizenship or place of incorporation of the plaintiff."  999 F.2d at 36.

Application of these standards to this case makes perfect sense.  Plaintiff voluntarily liquidated her U.S. possessions, voluntarily abandoned her U.S. residence and moved to Turkey to join her Turkish husband, voluntarily opened a bank account at a Turkish bank in Turkey and voluntarily caused a U.S. bank to transfer her funds to that Turkish bank.  Without exception, and however framed as claims in her Complaint (or amended complaint), these activities occurred solely in Turkey.  There is no impact, direct or indirect, on or in the United States.

II.    Plaintiff's New Witnesses and Information
       Do Not Affect the Forum Non Conveniens Analysis

       A.    Plaintiff ignores Second Circuit precedent providing the Court
             with a roadmap for determining forum non conveniens motions

       <u>Iragorri v. United Techs. Corp.</u>, 274 F.3d 65 (2d Cir. 2001), provides a three-part test --

essentially, a road map -- to guide a district court's determination of forum non conveniens

motions.  In its moving brief, Defendant diligently applied the <u>Iragorri</u> test, including the private

and public interest factors discussed by the Supreme Court in <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S.

501 (1947), and <u>Piper Aircraft v. Reyno</u>, 454 U.S. 235 (1981).  (Def. Br. at 3-19.)  Plaintiff, on

the other hand, focused on <u>Guidi v. Intercontinental Hotels</u>, 224 F.3d 142 (2d Cir. 2000), and

<u>Koster v. Lumbermens Mutual Casualty Co.</u>, 330 U.S. 518 (1947), to the virtual exclusion of

<u>Iragorri</u>.

       There are two notable deficiencies with Plaintiff's approach.  First, as <u>Iragorri</u> notes,

<u>Gilbert</u> and <u>Koster</u> are companion cases which should be read as a "single balancing test."

<u>Iragorri</u>, 274 F.3d at 74 n.6.  While <u>Koster</u> is vague as to the private and public factors to be

balanced, <u>Gilbert</u> enumerates them "[t]o guide trial court discretion."  <u>Piper</u>, 454 U.S. at 241.

Thus, by focusing exclusively on <u>Guidi</u>'s and <u>Koster</u>'s "oppressiveness and vexation" language,

Plaintiff offers the Court an incomplete standard.

       Second, Plaintiff conveniently omits the second half of the <u>Koster</u> test.  Under <u>Koster</u>, a

plaintiff's choice of her home jurisdiction should not be disturbed

             except upon a clear showing of facts which <u>either</u> (1) establish
             such oppressiveness and vexation to a defendant as to be out of all
             proportion to plaintiff's convenience, which may be shown to be
             slight or nonexistent, <u>or</u> (2) <u>make trial in the chosen forum</u>
             <u>inappropriate because of considerations affecting the court's own</u>
             <u>administrative and legal problems</u>."

<u>Koster</u>, 330 U.S. at 524.  Reading <u>Koster</u> and <u>Gilbert</u> as a single balancing test, as <u>Iragorri</u>

5

prescribes, the first part of the <u>Koster</u> standard suggests analysis of private interest factors, while the second invites the application of public interest factors. Courts following <u>Iragorri</u> balance both types of <u>Gilbert</u> factors. (Def. Br. at 10 & n.7.)

       B.     Plaintiff's newly disclosed witnesses and information about her
            <u>inability to litigate in Turkey are insufficient to avoid dismissal</u>

Plaintiff opposes dismissal because she is "emotionally, physically and financially absolutely incapable of litigating in Turkey." (Pl. Br. at 13.) In support of her argument, she states for the first time that "psychotherapists, friends and family, all found in the New York metropolitan area" will be witnesses on the subject of emotional distress. (Pl. Br. at 17.) She includes a remarkably barren declaration from a cardiologist relating his advice that Plaintiff not travel to Turkey (Fishberger Decl. ¶ 2), and a therapist's declaration reciting a "diagnosis" of Post-Traumatic Stress Disorder ("PTSD") coupled with a prediction that a return to Turkey would cause Plaintiff to suffer an "emotional breakdown." (Atwood Decl. ¶¶ 2-3, 8, 10.) In her own declaration, Plaintiff relates that she "visited" a hospital emergency room because of a cardiac condition and panic attacks, (Guirlando Decl. at ¶ 7), and that she is unable to finance litigation in Turkey. (Id. ¶¶ 8-10.) Lastly, Plaintiff's counsel's declaration states that litigation in Turkey is too expensive. (Grayson Decl. ¶¶ 4-5.) In aggregate, Plaintiff contends, these facts mean that dismissal in New York will be the "death knell" for her claims. (Pl. Br. at 20).

These arguments, despite their emotional mass, are wholly improper as Plaintiff has not met her burden of making a "clear showing of facts" as required by <u>Koster</u>. 330 U.S. at 524. First, while Plaintiff argues that she will have an emotional break-down if she returns to Turkey, she does not claim to be under the care of a psychologist or therapist for PTSD. Rather, a Licensed Social Worker and Licensed Marriage and Family Therapist (a "well-qualified psychotherapist") diagnosed "severe" PTSD and "clinical depression" pursuant to what appears

to be a one-time evaluation, based on Plaintiff's self-serving representations. (Atwood Decl. ¶¶ 1-3, 5; Pl. Br. at 14.)

Second, a leaking mitral valve is not necessarily a life-threatening condition.[3] In his thin declaration, Dr. Fishberger fails to provide any details about the severity, nature or cause of Plaintiff's condition. Nor does he state the basis for his opinion that it is "medically dangerous for [Plaintiff] to travel to Turkey," such as, difficulty traveling by plane, medical facilities in Turkey, or Plaintiff's anticipated emotional reaction to being in Turkey. (Fishberger Decl. ¶ 2.)

Third, Ms. Grayson's assertions about litigation in Turkey are without value. She is not competent to comment on Turkish law and she cites no authorities for her opinions other than referring to an unnamed Turkish lawyer's demand for a retainer. Because her declaration contains factual arguments that are not based upon personal knowledge and makes legal arguments it should be struck. See, e.g., Neewra, Inc. v. Manakh Al Khaleej Gen. Trading and Contracting Co., 2004 WL 1620874, at *2 n.3 (S.D.N.Y. July 20, 2004); Ugarte v. Johnson, 40 F. Supp. 2d 178, 179 n.1 (S.D.N.Y. 1999) (collecting cases).

Fourth, Plaintiff has not made a sufficient showing that she is unable to find affordable Turkish counsel or secure a loan to cover litigation expenses. See Van Der Velde ex rel. Van Der Velde v. Philip Morris Inc., 2004 WL 48891, at *3 (S.D.N.Y. Jan. 9, 2004). Ms. Grayson only reported on her efforts to secure a Turkish lawyer "to assist with plaintiff's opposition to the pending motion," not for litigation in Turkey. (Grayson Decl. ¶ 4)

---

[3]    See Mitral Valve Prolapse: Prognosis and Treatment, The Merck Manuals Online Medical Library, available at <http://www.merck.com/mmpe/sec07/ch076/ch076d.html> ("[Mitral Valve Prolapse] is usually benign . . . and does not usually require treatment . . . . Treatment of [Mitral Regurgitation] depends on severity and associated left atrial and [left ventricle] changes."); see also Feinstein v. Curtain Bluff Resort, 1998 WL 458060, *6 (S.D.N.Y. Aug. 5, 1998) (describing the Merck Manual as "an authoritative medical text").

Fifth, Plaintiff presents no evidence of her "severe and frequent panic attacks" other than her own self-serving representations to Dr. Atwood and in her own declaration. Notably Plaintiff's PTSD symptoms and cardiac condition only led her to the hospital on April 19, 2008, three weeks before her opposition brief was due (including the two-week extension later granted by the Court) and just in time for inclusion in her therapist's evaluation. Further, the term "visited" does not clearly show that she was admitted to the hospital for evaluation or treatment.

Even if the Court accepts Plaintiff's assertions as true, dismissal of the Complaint remains appropriate given the case's strong connection to Turkey and Turkish law. First, Plaintiff's "modest means" and asserted inability to hire a lawyer on a contingency basis in Turkey are simply factors to be included in the balancing test; they are not dispositive. See Murray v. BBC, 81 F.3d 287, 292-94 (2d Cir. 1996) (finding that financial burden on plaintiff did not render forum unavailable and dismissing case despite lack of contingency fee arrangements in foreign forum because plaintiff had some income and was credit-worthy); Rudetsky v. O'Dowd, 660 F. Supp. 341, 346 (E.D.N.Y. 1987) (noting that the "lack of a contingency fee system" does not render a foreign forum "clearly unsatisfactory"); see also Carey v. Bayerische Hypo-Und Vereinsbank AG, 370 F.3d at 238 (noting plaintiff's "modest means," but concluding that the balance of public and private interests favored trial in Germany).[4]  The same is true for the deposit requested by Turkish courts. See Henderson v. Metro. Bank & Trust Co., 502 F. Supp. 2d 372, 377-78 (S.D.N.Y. 2007) (noting that "it is well established that a forum is not inadequate as a matter of law merely because it requires a filing

---

[4]     One factor favoring dismissal in Carey was a forum selection clause. Plaintiff speculates that the blank forum selection clause in the bank agreement means that no forum was selected. (Pl. Br. at 9 n.5, 20.) As Prof. Özsunay explained, the form provided an opportunity for Plaintiff to specify a forum other than the default one -- Turkey. Her failure to select a forum

fee proportionate to the damages that the plaintiff seeks, <u>even if the plaintiff cannot pay the filing fee</u>"; emphasis added).  In addition, Plaintiff's emotional and physical inability to attend trial in Turkey does not require this litigation to proceed forward in the United States.  <u>See, e.g.</u>, <u>Goodman v. Schmalz</u>, 80 F.R.D. 296, 301-02 (E.D.N.Y. 1978) (defendants' "advanced ages and, in certain cases, illnesses and infirmities" affecting their ability to travel were not "dispositive"); <u>Irwin v. World Wildlife Fund, Inc.</u>, 448 F. Supp. 2d 29, 33 (D.D.C. 2006) (granting forum non conveniens motion despite plaintiff's position that traveling to the foreign forum put her "at serious risk of medical complications, and even death").  In <u>Irwin</u>, the District of Columbia court noted that an infirm plaintiff could be deposed at home.  448 F. Supp. 2d at 33.  Plaintiff (and her New York witnesses) can likewise be deposed in New York using the technology described by her attorney.  (Grayson Decl. ¶ 7)

Plaintiff's remaining forum non conveniens arguments are unavailing.[5]  Plaintiff did not counter Defendant's expert declaration with an expert declaration of her own nor does she challenge any of Dr. Özsunay's credentials or conclusions.  Defendant has therefore met its burden of proving that Turkey is an available and adequate forum in which Plaintiff's rights as a litigant will be duly protected.

III.   Defendant's Motion for Failure to State a Claim
       <u>Should Be Decided Based on its Moving Papers</u>

Plaintiff refuses to address Defendant's arguments that the Complaint fails to state a claim under either Turkish or New York law.  First, she criticizes Defendant for only citing the

---

does not nullify or detract from Turkey's jurisdiction.  (Özsunay Decl. ¶¶ 49-53.)

[5]   We also note that Plaintiff repeatedly refers to Ziraat Bank as a large bank able to afford litigation abroad and suggests that the Bank is acting in bad faith by failing to acquiesce to her litigation strategy.  (<u>See, e.g.</u>, Pl. Br. at 13 n.7, 16)  However, as a public bank, Ziraat Bank has a duty to Turkey and Turkish taxpayers to prudently preserve its resources.

three <u>La Sala</u> cases in support of the position that the applicable law is Turkey's. (Pl. Br. at 19, 24.) <u>LaSala</u> properly applies New York's choice of law rules which favor the law of the state with the greatest interest in the litigation, especially when it is also the situs of the alleged wrongdoing. See <u>LaSala v. UBS, AG</u>, 510 F. Supp. 2d 213, 230-33 (S.D.N.Y. 2007); <u>see also</u> <u>Lee v. Bankers Trust Co.</u>, 166 F.3d 540, 545 (2d Cir. 1999) (discussing New York choice of law rules); <u>Cousins v. Instrument Flyers, Inc.</u>, 44 N.Y.2d 698 (1978) (holding that "<u>lex loci delicti</u> remains the general rule in tort cases to be displaced only in extraordinary circumstances.").

Second, Plaintiff asserts that Defendant's Rule 12(b)(6) motion is mooted by her "substantially contemporaneous[]" filing of an amended complaint. If and when Plaintiff files an amended complaint, Defendant will seek a conference to request that the Court decide the unaffected FSIA motion before setting a schedule for any further briefing. At this time, Defendant rests on its unopposed arguments to dismiss Plaintiff's claims under Rule 12(b)(6).

## Conclusion

For the reasons stated above, we respectfully request that the court grant the Bank's motion to dismiss on the grounds of forum non conveniens, lack of personal and subject-matter jurisdiction, and failure to state a claim and dismiss the Complaint with prejudice.

Dated:      New York, New York
             May 15, 2008

                                  Respectfully submitted,
                                  SULLIVAN & WORCESTER LLP

                            By:    _s/ Michael T. Sullivan_____
                                    Michael T. Sullivan (MS 3158)
                                    Karin Klapper Orenstein (KO 1274)
                                    1290 Avenue of the Americas, 29th Floor
                                    New York, New York 10104
                                    (212) 660-3000

                                    *Attorneys for Defendant T.C. Ziraat Bankasi A.Ş.*