Violet Elizabeth Grayson (VEG-2792)
888 Seventh Avenue – 45th Floor
New York, N.Y 10106
(646) 406-1512
vegrayson@gmail.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| Theresa Giurlando, | : | ECF |
| | : | Case No. 07 CV 10266 |
| Plaintiff, | : | |
| | : | FIRST AMENDED |
| | ; | COMPLAINT |
| -against- | : | |
| | : | JURY TRIAL DEMANDED |
| T.C. Ziraat Bankasi A.S., | : | |
| | : | |
| | : | |
| Defendant. | : | |

---

## Introduction

1. This is a diversity action brought by an American widow against a Turkish bank, which is, as set forth below, legally responsible for loss of the widow's life savings.

## Parties, Jurisdiction and Venue

2. Plaintiff, Theresa Giurlando, is a natural person, and a citizen and resident of the State of New York, United States of America.

3. Defendant T.C. Ziraat Bankasi A.S. ("Ziraat Bank") is a bank organized under the laws of the nation of Turkey, and a citizen of Turkey. Ziraat Bank is the largest Turkish bank and maintains a fully operational branch in Manhattan.

4. Plaintiff invokes this Court's diversity jurisdiction as there exists diversity of citizenship between plaintiff and defendant, and the amount in controversy exceeds $75,000.

5. This Court has personal jurisdiction over Ziraat Bank because Ziraat Bank is present and doing business in Manhattan.

6. Southern District of New York venue is proper because Ziraat Bank is found within the Southern District.

Facts

7. In October of 2006, Theresa Giurlando married Mevlut Cicek in Port Jefferson, Long Island, New York. Mrs. Giurlando was a 67 year old widow and United States citizen. Mr. Cicek was over 50 years of age, a Turkish national and illegal immigrant to the United States.

8. In March of 2007, Cicek disappeared from Long Island. Not long thereafter, Cicek telephoned Giurlando from Turkey and told her that he had been deported. Cicek implored Giurlando to sell her house and car and join him in Turkey. She did so, and in May of 2007, flew to Turkey with a certified check for $251,156.63, representing the proceeds from the sale of her house and car, as well as the entire balance in her bank account; i.e. her life savings. The check was drawn on a branch of Citibank located in the State of New York, and payable to "Theresa Giurlando."

9. After Mrs. Giurlando arrived in Cicek's home town of Adana, Turkey, Cicek took her to the Adana branch of Ziraat Bank, where Cicek was well known to the Manager and other executive level personnel. Mrs. Giurlando explained to Ziraat Bank's English-speaking employees that she was an American citizen and wished to open an individual account and deposit the $251,156.63 dollar check payable to her and drawn on Citibank in New York. She brought her United States passport with her to Ziraat Bank, and bank employees made a photocopy of the passport.

10. Two English-speaking employees of Ziraat Bank, believed to be Adana branch Manager Hidir Gursoy and Director Sureyya Bargu, informed Mrs. Giurlando that she could not open an account because she lacked a Turkish identification number. This statement was false. Although a Turkish citizen is not permitted to open a bank account without a Turkish identification number, Turkish banking law explicitly provides that a foreign citizen with a valid passport may open an individual bank account in Turkey.

11. Having falsely informed Mrs. Giurlando that she could not open an individual bank account because she lacked a Turkish identification number, the English-speaking employees then suggested that she open a joint account with Cicek, using Cicek's Turkish identification number, and deposit the check into that account. Ziraat Bank's English-speaking employees failed to inform Mrs. Guirlando that such a joint account was available in either: a) a form where funds could be withdrawn only with both parties' signatures, or b) a form where funds could be withdrawn with *either* party's signature. Instead, Ziraat's employees simply presented Mrs. Guirlando with the latter form of "disjunctive" joint account agreement, and filled out account signature cards on which they ticked the box allowing funds to be withdrawn with only one signature instead of the

3

box requiring both signatures for withdrawal of funds. Mrs. Guirlando remained unaware of the disjunctive character of the joint account and signature cards because, as the Ziraat employees were well aware, Mrs. Guirlando could not read either the account agreement or the signature cards, both of which were written in Turkish.

12. As a further inducement for Mrs. Giurlando to open the joint account, the Ziraat Bank employees promised to telephone her as soon as the deposited funds became available.

13. Mrs. Giurlando relied upon the Ziraat Bank employees' false representations, omissions and promises, as set forth above, and their presentation of the disjunctive form joint account agreement and signature cards without proffered alternative or explanation, by signing the Turkish language agreement and disjunctive ownership signature cards, and depositing her check drawn on a New York State Citibank into said unsafe disjunctive ownership joint bank account

14. Had Mrs. Giurlando been offered the safer alternative of the individual bank account she originally requested, or the safer alternative of a joint account requiring two signatures for withdrawal, she certainly would have availed herself of said alternative.

15. As an immediate consequence of Mrs. Guirlando's opening the disjunctive ownership joint bank account, and depositing her New York Citibank check into said account, the Citibank branch located in New York State paid $251,156.63 into the newly established unsafe disjunctive ownership joint account in Turkey. In other words, the commercial banking activities in Turkey produced a direct effect in the United States – to wit, transference of more than a quarter of a million dollars of Plaintiff's money from a

4

Citibank in New York where the funds were safely under Plaintiff's control, to Ziraat Bank in Turkey where the funds were subject to depredation by Cicek.

16. Although Ziraat Bank promised to contact Mrs. Giurlando as soon as the deposited funds became available, in fact they did not do so. Instead, Ziraat Bank contacted Cicek. This substantially compounded the consequences of Ziraat Bank's prior misdeeds, because Cicek promptly went to Ziraat Bank and withdrew more than $200,000 from the joint account in a series of transactions over a single day. No one at Ziraat Bank either stopped Cicek or contacted Giurlando to inform her of these transactions.

17. While Cicek was at Ziraat Bank withdrawing the funds, Cicek's adult daughter informed Giurlando that Cicek had gone to the bank to steal her money. Giurlando then went to Ziraat Bank and was informed that the money had been withdrawn by Cicek. The following day, she returned to Ziraat Bank with a United States Consular Officer, and was allowed to withdraw the approximately $50,000 which remained on deposit.

18. Mrs. Guirlando has now returned to the United States where she lives in much reduced circumstances as an immediate consequence of Ziraat Bank's wrongful acts and omissions in Turkey.

19. Ziraat Bank has failed and refused to take any action to make Mrs. Giurlando whole. Additionally, Mrs. Giurlando is informed and believes that at the time when she opened her Ziraat Bank account, the manager and executive personnel at Ziraat Bank knew that Cicek was a criminal and a swindler, and that his marriage to Giurlando was bigamous and void because Cicek was already married to a Turkish woman when he

5

married Giurlando. The Ziraat employees expected to profit from Cicek defrauding Giurlando. In light of these facts, Ziraat Bank's conduct was outrageous in character and so extreme in degree as to go beyond all bounds of decency. It was conduct which is not tolerated in a civilized community.

First Cause of Action for Negligence and Breach of Duty of Care

20. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1-19 herein.

21. Defendant Ziraat Bank owed Plaintiff Giurlando a duty of care as a prospective customer and depositor. Broadly speaking, this duty of care subsumed the duty to offer clear, comprehensible, and correct information, and to inform Mrs. Guirlando in an open, easily understandable way regarding the rights and responsibilities, benefits and risks, attached to the services being offered to her, consistent with principles of honesty, impartiality, reliability, and transparency. In particular, Ziraat Bank had a duty to provide Mrs. Giurlando with accurate information concerning the availability of the individual account she requested, to an American citizen carrying a United States passport. And in the event that Mrs. Giurlando *was* going to open a joint account, Ziraat Bank had a duty to accurately and fully inform Mrs. Giurlando concerning the types of joint accounts and joint account signature cards available, and the risks associated with such accounts.

22. Defendant Ziraat Bank breached the duty of care described above by: a) falsely stating that Mrs. Giurlando could not open the individual account she desired because she lacked a Turkish identification number, b) recommending a joint account as

6

the only alternative when it was nothing of the sort, c) failing to inform Mrs. Giurlando that she could open a joint account which required both co-depositors signatures for a withdrawal, d) failing to explain how the disjunct ownership operated, and e) failing to warn Mrs. Giurlando of the risks associated with such an account.

23. As a consequence of Ziraat Bank's negligence and breach of duty of care as set forth above, Mrs. Giurlando's life savings were transferred from an account in New York State where they were safe, to an unsafe account where they were subject to depredation by her co-depositor. Due to Ziraat Bank's negligence and breach of duty of care, Mrs. Giurlando sustained economic damages subject to proof at trial in the amount of approximately $200,000 plus applicable interest, and has also suffered severe emotional distress.

Second Cause of Action for Negligent Misrepresentation and Negligent Omission

24. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1-23 herein.

25. When Mrs. Giurlando visited the Ziraat Bank branch in Adana, she relied upon the English-speaking executive-level employees' specialized knowledge concerning the requirements of Turkish law with respect to a United States citizen opening an account, and their unique knowledge of the types of accounts Ziraat Bank offered and the risks associated with said accounts. Because Mrs. Guirlando was unfamiliar with Turkish banking practices, and signing legally binding documents in a language she could not read, she was entirely at the mercy of Defendant's employees to provide her with appropriate guidance and truthful explanations. These circumstances created a special relationship of trust.

7

26. Defendant's English-speaking employees misrepresented the legal requirements for opening an individual bank account by telling Mrs. Guirlando that she could not open such an account without a Turkish identification number. They also omitted to tell her that she could open a joint bank account requiring two signatures for withdrawal, and that this kind of joint account would be safer for her

27. When Defendant's employees made the foregoing misrepresentations and omissions, they knew that Mrs. Giurlando was seeking information from them for the serious purpose of opening a bank account into which she would deposit a quarter of a million dollars, constituting her life-savings.

28. The misrepresentation and omissions described above were made by Ziraat's employees with, at the very least, reckless disregard for the truth and for Mrs. Guirlando's financial safety.

29. As set forth above, Mrs. Guirlando relied to her detriment on Defendant's misrepresentations and omissions, and as a consequence, sustained economic damages of more than $200,000 plus interest, and severe emotional distress.

<u>Third Cause of Action for Intentional Misrepresentation and Omission</u>

30.  Plaintiff repeats and incorporates by reference, the allegations of paragraphs 1-29 herein.

30. Based upon the character of the greeting which Cicek received from Defendants' employees when he entered the Adana branch of Ziraat Bank, Plaintiff believes that the misrepresentation and omissions set forth in the preceding cause of action were made intentionally, for the purpose of benefitting Cicek (and themselves in the form of a "kick-back") at Guirlando's expense,

31. As set forth in paragraph 36 above, Mrs. Giurlando sustained serious damages as a consequence of the misrepresentations and omissions.

### Fourth Cause of Action for Negligence and Breach of Duty of Care

32. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1-31 herein.

33. After Ziraat Bank entered into the account agreement with Mrs. Guirlando and accepted her New York Citibank check for deposit, it owed Mrs. Guirlando a duty of care in the handling of her funds.

34. When Ziraat Bank accepted Mrs. Giurlando's check for deposit, it was aware that the check was Giurlando's separate property which she wished to deposit in a separate bank account. Defendant was also aware that Giurlando opened a joint account with Cicek only because Ziraat Bank personnel advised her (falsely) that using Cicek's national identity number to open a disjunctive ownership joint account was the only way to deposit the check. When Cicek appeared at Ziraat Bank alone and withdrew more than $200,000 from the account immediately upon its becoming available, Defendant knew or should have known that Cicek was stealing Giurlando's savings.

35. Ziraat Bank was negligent not only in inducing Giurlando to open a disjunctive ownership joint account with Cicek, and failing to warn Giurlando of the risks associated such an account, but also in telephoning Cicek rather than Giurlando to say that the funds had become available, in permitting Cicek to withdraw more than $200,000 from the bank account without Giurlando's knowledge and consent, and in failing to take any steps whatsoever to recover the funds after they were wrongfully withdrawn.

36. As a consequence of Ziraat Bank's negligence and breach of duty of care as set forth above, Giurlando has suffered economic and emotional injury as previously set forth.

<u>Fifth Cause of Action for Breach of Covenant of Good Faith and Fair Dealing</u>

37. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1-36 herein.

38. The contract of deposit between Giurlando and Ziraat Bank contained a covenant of good faith and fair dealing implied by law.

39. Defendant Ziraat Bank breached this covenant of good faith and fair dealing by, *inter alia,* failing to inform her when the funds became available and informing Cicek instead, permitting Cicek to withdraw more than $200,000 without Giurlando's knowledge or consent, and making no effort to restore the funds to Giurlando.

40. As a consequence of Ziraat Bank's breach of the covenant of good faith and fair dealing, Giurlando has been injured as previously set forth.

<u>Cause of Action for Breach of Fiduciary Duty</u>

41. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1-40 herein.

42. As a consequence of accepting Giurlando's check for deposit under the circumstances previously set forth, Ziraat Bank placed itself in a fiduciary relationship with Giurlando.

43. As previously set forth in paragraph 25 above, Mrs. Guirlando, who was not familiar with Turkish banking practices, Turkish law, or the Turkish language, was obliged to rely upon the expertise of Defendant's employees in these matters, and repose

trust and confidence in their exercise of discretion in selecting an appropriate type of Ziraat Bank account into which she could deposit her check drawn on New York Citibank. This created a fiduciary relationship between Mrs. Giurlando and Ziraat Bank

44. Ziraat Bank breached its fiduciary duty to Mrs. Guirlando by steering her into the type of bank account where her funds would be most at risk, and then handling the account in a manner which maximized the harm eventuating from the wrongful selection of account type.

45. As a consequence of this breach of fiduciary duty, Mrs. Giurlando sustained damage as previously set forth herein.

WHEREFORE PLAINTIFF PRAYS FOR JUDGMENT AGAINST DEFENDANT AS FOLLOWS:

On all causes of action:

Awarding compensatory damages for Mrs. Guirlando's loss of her bank deposit according to proof in an amount not less than $200,000 plus applicable interest;

Awarding damages for emotional distress according to proof;

Awarding punitive damages according to proof , and if allowed by law;

Awarding attorney's fees and costs, if and as allowed by law;

      Awarding such other and further and such other and further relief as this Court may deem just and proper.

Dated: May 12, 2008

                                      Respectfully submitted,

                    By:   _____
                            Violet Elizabeth Grayson (VG-2792)
                            888 Seventh Avenue – 45th Floor
                            New York, New York 10106
                            (646) 406-1512
                            Attorney for Plaintiff

## ATTORNEY'S AFFIRMATION OF SERVICE

STATE OF CALIFORNIA          )
                             )ss:
COUNTY OF SAN FRANCISCO      )

    I, Daniel Operman declare that I am over eighteen years of age and not a party to this action. My business address is 888 Seventh Avenue – 45th Floor, New York, N.Y. 10106. I am a member of the Bar of the State of New Jersey, and anticipate admission to the Bar of the State of New York and the Bar of this Court within a short time.

    On May 21, 2008, I served the foregoing, First Amended Complaint, via United States Mail (First Class) to the following addresses:

> Karin Klapper Orenstein, Esq.
> Sullivan & Worcester, LLP
> 1290 Avenue of the Americas -29th Floor
> New York, N.Y. 10104

    This affirmation was executed under penalty of perjury of the laws of the United States of America on May 21, 2008.

_____
Daniel Operman